

FILED
LODGED
ENTERED
RECEIVED

AUG 2 0 2008    IlK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUNE ROBINSON, by her attorney in fact,
LYNNE POLIQUIN, Individually and on
Behalf of all Others Similarly Situated,

                                Plaintiffs,

        v.

WASHINGTON MUTUAL, INC., WM
TRUST I, WM TRUST II, WM STRATEGIC
ASSET MANAGEMENT PORTFOLIOS,
LLC, WM FINANCIAL SERVICES, INC.,
WM ADVISORS, INC., WM FUNDS
DISTRIBUTOR, INC., EDGE ASSET
MANAGEMENT, INC., PRINCIPAL
FINANCIAL GROUP, INC., PRINCIPAL
INVESTORS FUND, INC., PRINCIPAL
FUNDS DISTRIBUTOR, INC.,

                                Defendants.

No. **C 08-1251** mJP

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL
SECURITIES LAWS

**JURY TRIAL DEMANDED**

08-CV-01251-CMP

Plaintiff Lynne Poliquin as attorney in fact for June Robinson ("Plaintiffs"), by and

through counsel, allege the following based upon the investigation of counsel, which included,

inter alia, a review of United States Securities and Exchange Commission ("SEC") filings, other

regulatory filings, reports, and advisories, press releases, and media reports about Washington

Mutual, Inc., ("WAMU, Inc.") and Principal Financial Group, Inc. ("Principal") and their related

entities also named herein as defendants. Plaintiffs believe that substantial additional evidentiary

support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 1
Case No.

010074-11 258370 V1

**ORIGINAL**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

# I.    INTRODUCTION

1.     This is a federal class action that seeks to recover damages under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act")[1] for defendants' failure to disclose payments by the WM Group of Funds'[2] investment advisor to broker/dealers selling the WM Group of Funds' (the "WAMU Funds") as required by law. Such undisclosed payments were part of a comprehensive "steering" program devised by defendants' highest management that was intended to, and did, compromise the objectivity of broker/dealers in their dealing with customers and created insurmountable, undisclosed conflicts of interest.

2.     Defendants WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios, LLC (collectively the "Registrants") are the issuers of the WAMU Funds. Each year during the relevant time period, the Registrants jointly filed a registration statement with the SEC that failed to disclose the above payments and resulting conflicts of interest.

---

[1] Plaintiffs allege violations of Section 11 of the Securities Act (15 U.S.C. § 77k, *material misrepresentation or omission in registration statement*) against the Registrants and Principal Investors Fund; Section 12(a) of the Securities Act (15 U.S.C. § 77(l), *untrue statement or omission in prospectus*) against the Registrants, the WAMU Distributor, WMFS and Principal Defendants; and Section 15 of the Securities Act (15 U.S.C. § 77o, *control person liability Securities Act*) against WAMU, Inc. and WAMU Advisor. Plaintiffs also allege violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5, *manipulative / deceptive artifice to defraud - false / misleading statement*) by the Registrants and Principal Investors Fund; and violations of Section 10(b) and Rule10b-10 promulgated thereunder (17 C.F.R. § 240.10b-10, *failure by dealer to disclose remuneration*) against WMFS; and violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t, *control person liability Exchange Act*), by WAMU, Inc., the WAMU Advisor, and WAMU Distributor.

[2] **Error! Main Document Only.**The WAMU Funds, as described in this complaint are: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth, International Growth, Small Cap Growth, Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

---

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

016074-11 258370 V1

3.     Each month during the relevant time period, Plaintiffs and the Class[3] paid "management fees" that were debited from their investment principal in the WAMU Funds to the Funds' investment advisor, defendant WM Advisors, Inc. (the "WAMU Advisor"). Such "management fees" were ostensibly to compensate the WAMU Advisor for its expertise in making investment decisions for the WAMU Funds, and provide value to Plaintiffs and the Class by increasing investment returns. Undisclosed to Plaintiffs and the Class, from at least March 1, 2000 through January 2007, greater than fifty percent of such "management fees" were then diverted from the WAMU Advisor to all broker/dealers (including defendant WM Mutual Financial Services, Inc., *i.e.*, "Brokers") to sell those WAMU Funds most profitable to the Advisor.

4.     The WAMU Advisor annually paid each respective Broker an undisclosed "Advisor Paid Fee" calculated as 75 basis points (0.75 percent) of such WAMU Funds' assets sold/managed by the particular Broker. Specifically, each Broker was paid 75 basis points ("BP") of such WAMU Fund assets sold in a particular year, plus a 75 BP residual commission of the *market value of* all such WAMU Fund assets sold in previous years. The Advisor Paid Fee was paid to Brokers *in addition to* and *separate from* an ongoing 25 BP Rule 12b-1[4] commission. The resulting incentive was enormous and created undisclosed material conflicts of interest for the Registrants, the WAMU Advisor, and Brokers selling the WAMU Funds.

5.     The existence of the Advisor Paid Fee was highly material. For example, in fiscal year 2004 alone, the WAMU Advisor paid Brokers approximately $67,000,000 in Advisor Paid

---

[3] As detailed in paragraph 86 of this Complaint, the Class is defined as: All persons or entities that purchased or otherwise acquired shares, units or like interests in any of the WAMU Funds (including through the reinvestment of Fund dividends), within the applicable statute of limitations, or such other class, classes or periods of time as the Court deems appropriate.

[4] A "12b-1 fee" is an extra fee charged mutual fund investors for marketing and selling fund shares, including compensating brokers and paying for advertising. 12b-1 fees are authorized by SEC Rule 12b-1, which provides that an investment company may "engage[] directly or indirectly in financing any activity which is primarily intended to result in the sale of shares" **only** pursuant to a Rule 12b-1 plan. 17 C.F.R. § 270.12b-1.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    Fees for which Plaintiffs and the Class received no benefit. If not improperly deducted from the

2    WAMU Funds, the money representing the Advisor Paid Fee would have remained in the

3    WAMU Funds' respective investment pools to grow and compound over time. Regardless of

4    whether the WAMU Funds increased or decreased in value, Plaintiffs and the Class' investment

5    principal was continuously drained to pay conflicted Brokers the Advisor Paid Fee.

6        6.    The Registrants' deceived Plaintiffs and the Class into believing that the

7    "management fees" paid to the WAMU Advisor were for actual investment advice or similar

8    valuable services. In fact, such fees were merely a cover to funnel the Advisor Paid Fees to

9    incurably biased Brokers. Absent the hundreds of millions of dollars in Advisor Paid Fees,

10   Plaintiffs and the Class' total amount of "management fees" deducted from their investment, and

11   thus the resulting diminution of the WAMU Funds' Net Asset Value ("NAV"), would have been

12   substantially less.

13       7.    In addition to the Advisor Paid Fee, the Registrants' relevant Prospectuses and

14   statements of additional information ("SAI") failed to disclose that the WAMU Advisor and/or

15   defendant WM Funds Distributor, Inc. (the "WAMU Distributor") paid Brokers to place the

16   WAMU Funds on "preferred list(s)" of mutual funds. These "preferred list(s)" caused Brokers

17   to principally recommend to clients only those listed funds, regardless of their appropriateness or

18   the availability of superior alternatives.

19       8.    The undisclosed Advisor Paid Fee and "preferred list(s)" (jointly the "Steering

20   Programs") caused Brokers to give predetermined, biased recommendations to the detriment of

21   Plaintiffs and the Class. The Registrants' hid the existence and true nature of the Steering

22   Programs, knowing that if the truth were revealed, no reasonable investor would invest in the

23   WAMU Funds.

24       9.    While promoting the WAMU Funds to Plaintiffs and the Class, Brokers

25   (including defendant WM Financial Services, Inc., the "WMFS") benefitting from the Steering

26   Programs represented them as being better than other funds available. Plaintiffs and the Class

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 4
Case No.



010074-11 258370 V1

1   were led to believe that Brokers were recommending the WAMU Funds based on objective

2   criteria indicating that such Funds would perform better than other investment alternatives.

3   However, Brokers' advice and services relative to the WAMU Funds was neither objective nor

4   its basis properly disclosed.

5       10.     The Registrants' annual Prospectuses from, at least, 2000 to 2005[5] completely

6   failed to disclose that "management fees" deducted from all WAMU Funds were used to pay

7   Brokers the Advisor Paid Fee. The Registrants' 2000 through at least, 2005 Prospectuses also

8   failed to disclose that "preferred lists" existed and were similarly used to steer Plaintiffs and the

9   Class into the WAMU Funds. The relevant Prospectuses provided inadequate, fragmentary and

10  incomplete disclosure, representing only that unspecified compensation "may." "from time to

11  time" be made to Brokers. In truth, the WAMU Advisor and Distributor had *already* entered

12  into formulated, specific, negotiated arrangements with Brokers providing for payment of the

13  Advisor Paid Fee and use of "preferred list(s)."

14      11.     WAMU's practices as described herein were particularly egregious given the

15  nature of clients that were defrauded. A typical mutual fund investor is an unmarried, middle-

16  class individual in his or her forties with a median household income of $55,000. Approximately

17  98% of mutual fund shareholders state their investments constitute their long-term savings and

18  about 77% cite retirement savings as their primary financial goal.[6] **A 1% annual fee, by way of**

19  **example, reduces an ending account balance by 17% on an investment held for 20 years.**[7]

20  The Registrants duty to state *all* facts necessary to make their affirmative statements not

21

22
    _____

23  [5] The relevant prospectuses had effective dates of March 1, 2000; March 1, 2001; March 1,
    2002; March 1, 2003; March 1, 2004, and March 1, 2005 (collectively the "Prospectuses").

24      [6] David J. Carter, *Mutual Fund Board and Shareholder Action*, 3 VILL. J. & INV. MGM'T at 8.

25      [7] *Testimony of Arthur Levitt, Chairman U.S. Securities and Exchange Commission, before
    House Subcommittee on Finance and Hazardous Materials, Committee on Commerce,
    Concerning Transparency in the United States Debt Market and Mutual Fund Fees and
26  Expenses,* Sept. 29, 1998, available at 1998 WL 717068 at 7.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 5
Case No.

**HB**
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  misleading was accordingly all the more compelling because the mutual fund market requires

2  very clear disclosure understandable to the layman.

3      12.   The SEC has long recognized that partial or non-disclosure of incentive

4  arrangements with Brokers for the sale of select mutual funds create conflicts of interest and

5  violate the anti-fraud provisions of the federal securities laws.[8]  The Deputy Director of the

6  SEC's Division of Enforcement recently stated that "undisclosed receipt of revenue sharing

7  payments from a select group of mutual fund families create[s] a conflict of interest.  When

8  customers purchase mutual funds, they should be told about the *full nature and extent* of any

9  conflict of interest that may affect the transaction."[9]  (Emphasis added.)

## II.   SUBSTANTIVE ALLEGATIONS

### A.   Rule 12b-1 Plans

12      13.   Section 12(b) of the Investment Company Act of 1940 (the "1940 Act") outlawed

13  open-ended investment companies such as the Registrants from acting as their own broker-

14  dealers, but authorized the SEC to prescribe rules and regulations governing the circumstances

15  mutual funds may bear the expenses of selling, marketing and advertising shares. 15 U.S.C.

16  § 80a-12(b). By 1980, the mutual fund industry prevailed on the SEC to make an important

17  exception to this restriction, found in SEC Rule 12b-1. 17 C.F.R. § 270.12b-1.

18      14.   Rule 12b-1 reflected a sharp change in SEC policy by permitting mutual funds to

19  bear distribution-related expenses under *limited circumstances* provided certain conditions are

20  met. The requirements of the Rule are triggered whenever a mutual fund engages in financing

21  "any activity which is primarily intended to result in the sale" of its shares, including

22  "advertising, **compensation of** underwriters, **dealers, and sales personnel,** the printing and

---

23      [8] *See* Confirmation Requirements and Point of Sale Disclosure Requirements for
24  Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation
    Requirement Amendments, and Amendments to the Registration Form for Mutual Funds, 69
25  Fed.Reg. 6438, at 6440 (Feb. 10, 2004).

26      [9] SEC Press Release, Edward Jones to Pay $75 Million to Settle Revenue Sharing Charges, at
    http://www.sec.gov/news/press/2004-177.htm.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 6
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    mailing of prospectuses to other than current shareholders, and the printing and mailing of sales

2    literature." 17 C.F.R. § 270.12b-1(a)(2) (emphasis added).

3        15.    Rule 12b-1 allows distribution related expenses, *i.e.*, payments to Brokers, only

4    pursuant to a "12b-1 Plan." Any other payments to Brokers are outlawed by Section 12(b) of the

5    1940 Act. The 12b-1 Plan must be written, and describe "all material aspects of the proposed

6    financing and distribution" of the mutual fund's shares. 17 C.F.R. § 270.12b-1(b). Such Plan

7    must be approved by a majority of the fund's board of directors, including a majority of the

8    disinterested directors. *Id*. at § 270.12b-1(b), (c). The Plan must also be approved by a majority

9    of the fund's outstanding voting shares. *Id*. The plan may be implemented or continued "only if

10   the directors who vote to approve such implementation or continuation conclude, in the exercise

11   of reasonable business judgment and in light of their fiduciary duties under state law and under

12   sections 36(a) and (b)(15 U.S.C. 80a-35 (a) and (b)) of the [1940] Act, that there is a reasonable

13   likelihood that the plan will benefit the company and its shareholders." *Id*. at § 270.12b-1(e).

14       16.    SEC Form N1-A sets forth the requirements for information that must be

15   contained in offering prospectuses and statements of additional information. Form N1-A requires

16   mutual fund companies to disclose in their prospectuses all fees paid pursuant to 12b-1 Plans,

17   including a description of all principal activities for which payments are made, and an itemized

18   list of amounts paid to Brokers. Form N1-A requires additional 12b-1 data to be supplied in a

19   fund's SAI. Copies of 12b-1 Plans must be exhibits to the registration statements.

20       17.    Although Rule 12b-1 does not limit the amount that a fund's shareholders may be

21   charged under such a plan, the National Association of Securities Dealers ("NASD", now the

22   Financial Industry Regulatory Authority "FINRA") has limited Rule 12b-1 fees to a maximum of

23   **one quarter of 1%** of a fund's average daily net assets per year. NASD Rule 2830(d)(5).

24   **B.    The Registrants' 12b-1 Plan**

25       18.    The Registrants enacted a 12b-1 Plan that continued from year to year. During the

26   relevant time period, the Registrants' ratified the Plan on March 6, 2001, filed as an exhibit to the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 7
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    Registrants' December 28, 2001 registration statement, and again on February 20, 2003 as

2    exhibit to the March 1, 2003 WAMU Funds' registration statement.

3        19.    Pursuant to the 12b-1 Plan, the Registrants charged "12b-1 fees" against the assets

4    of all WAMU Funds. The amount and purpose of such 12b-1 fees were listed in the WAMU

5    Funds' Prospectuses and SAIs during all relevant times.

6        20.    Pursuant to the Registrants' 12b-1 Plan, the WAMU Distributor paid Brokers a 25

7    BP, 12b-1 commission (the *maximum allowed* by NASD Rule 2830(d)(5)) on all sales of the

8    WAMU Funds, as well as a 25 BP residual 12b-1 commission on all past sales.

9    **C.    The Advisor Paid Fee**

10        21.    In addition to "12b-1 fees", Plaintiff and the Class had "management fees" and

11    separately, "other expenses" charged against their interests in the WAMU Funds. However,

12    neither the Registrants, nor the WAMU Advisor or Distributor could use such "management

13    fees" or "other expenses" for compensation to Brokers without being in violation of Section

14    12(b) of the 1940 Act, because such fees were not within the scope of the Registrants' 12b-1

15    Plan. In addition, since the Registrants 12b-1 commissions to Brokers were already 25BP, no

16    additional compensation could be paid to Brokers without being in violation of NASD Rule

17    2830(k).

18        22.    However, as detailed below, the Registrants, with material assistance from the

19    WAMU Advisor and/or Distributor sought to, and did circumvent the limitations of Section

20    12(b) of the 1940 Act, and Rule 12b-1 promulgated thereunder, by making payments to Brokers

21    of 75 BP, *in addition to* and *separate* from the Registrants' 12b-1 Plan.

22        23.    During the relevant time period there were 24 WAMU Funds issued by the

23    Registrants pursuant to joint Prospectuses. Registrants WM Trust I and WM Trust II issued 18 of

24    the 24 WAMU Funds;[1] Registrant WAMU Portfolio issued the remaining six (a subset of the

25

26    [1]    The 18 WAMU Funds issued by WM Trust I and WM Trust II are: Money Market, Tax-
Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond,



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   WAMU Funds denominated herein the "WAMU Portfolio Funds").[2] The WAMU Portfolio

2   Funds invest exclusively in securities of the other 18 WAMU Funds. Mutual funds that invest in

3   other mutual funds are commonly called "fund-of-funds".

4       24.     Because the WAMU Portfolio Funds invest directly in other WAMU Funds, the

5   WAMU Advisor is essentially paid twice to do the same investment management. Specifically,

6   the Portfolio Funds' shareholders directly pay "management fees" (and other fees) to the

7   WAMU Advisor, and indirectly pay "management fees" against the underlying WAMU Funds

8   comprising the Portfolio. For the WAMU Portfolio Funds, the WAMU Advisor is permitted to

9   "double-dip" on fees, and investment in Portfolio Fund shares correspondingly increases

10  investment in all WAMU Funds.

11      25.     The WAMU Advisor paid the undisclosed 75BP Advisor Paid Fee to Brokers as

12  described above for selling WAMU *Portfolio* Funds because such Funds generated the most

13  profit for the WAMU Advisor, Distributor and ultimately, control person defendant WAMU Inc.

14  However, the Portfolio Funds paid *65* BP to the WAMU Advisor in "management fees", 10BP

15  *less* than the Advisor Paid Fee. In essence, the WAMU Advisor improperly inflated its

16  "management fees" for *all* WAMU Funds as a scheme to channel investors into the WAMU

17  Portfolio Funds, increase assets under management, and therefore increase fee income. Plaintiffs

18  and the Class all paid inflated "management fees" to the Advisor, and received nothing for their

19  money.

20      26.     Payment of the Advisor Paid Fee was not made pursuant to the Registrants'

21  March 6, 2001, or February 20, 2003 12b-1 Plan even though such Advisor Paid Fee fell within

22  the scope of Rule 12b-1. In addition, payment of the Advisor Paid Fee was not "approved by a

---

23  REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock,
24  California Money, Short Term Income, California Municipal, California Insured Intermediate
    Municipal, Growth, International Growth, Small Cap Growth.

25  [2] The six WAMU Portfolio Funds issued by WAMU Portfolio are: Conservative Growth,
26  Balanced, Conservative Balanced, and Flexible Income.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    vote of at least a majority of the outstanding voting securities" of the WAMU Funds. *See* 17

2    C.F.R. § 270.12b-1(b)(1). **In short, the Advisor Paid Fee was illegal under Section 12(b) of**

3    **the 1940 Act.**

4         27.    The WAMU Advisor is responsible for formulating the WAMU Funds'

5    investment policies, analyzing economic trends, monitoring each WAMU Fund's investment

6    performance and reporting to the Registrants' Board of Trustees. The Registrants authorized the

7    WAMU Advisor to debit "management fees" from WAMU Funds assets, ostensibly for

8    managing the day-to-day investment decisions of the WAMU Funds. However, the WAMU

9    Advisor was merely a conduit for passing the preponderant part of such "management fees" to

10    Brokers.

11         28.    The WAMU Advisor owes fiduciary duties to Plaintiffs and the Class concerning

12    the receipt of compensation from the WAMU Funds. This fiduciary duty requires, at least, that

13    the WAMU Advisor not charge "management fees" to create a kickback slushfund that

14    compromises Brokers' investment advice.

15         29.    Plaintiffs and each of the Class members purchased shares or other ownership

16    units in the WAMU Funds pursuant to a registration statement and Prospectus. The registration

17    statements and Prospectuses pursuant to which Plaintiffs and the other Class members purchased

18    their shares or other ownership units in the WAMU Funds had effective dates of: March 1, 2000,

19    March 1, 2001, March 1, 2002, March 1, 2003, March 1, 2004, and/or March 1, 2005.

20    **D.    Misleading Statements and Omissions**

21         30.    Prospectuses and their Statements of Additional Information ("SAI"s) are

22    required to disclose <u>all</u> material facts in order to provide investors with information that will

23    assist them in making an informed decision about whether to invest in a mutual fund. The law

24    requires that such disclosures be in straightforward and easy to understand language such that it

25    is readily comprehensible to the average investor.

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 10
Case No.

**HB**
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

31.    In the March 1, 2000, March 1, 2001, March 1, 2002 and March 1, 2003 WAMU

Funds Prospectuses, the Registrants made the following materially false and misleading

statements:

> The Distributor may, from time to time, pay to other dealers, in
> connection with retail sales or the distribution of shares of a
> Portfolio or Fund, material compensation in the form of
> merchandise or trips. Salespersons, including representatives of
> WM Financial Services, Inc. (a subsidiary of Washington Mutual),
> and any other person entitled to receive any compensation for
> selling or servicing Portfolio or Fund shares may receive different
> compensation with respect to one particular class of shares over
> another, and **may receive** additional compensation or other
> **incentives for selling Portfolio or Fund shares.**

(Emphasis added.)

32.    Plaintiffs and/or members of the Class were entitled to and did receive the

Registrants' March 1, 2000, March 1, 2001, March 1, 2002 and March 1, 2003 Prospectuses,

each of which failed to disclose the following material facts:

a.    WAMU Inc., the Registrants, the WAMU Advisor and WAMU

Distributor had adopted the Steering Programs to incent Brokers to aggressively push the

WAMU Funds on unsuspecting investors;

b.    the Steering Programs described herein created insurmountable conflicts

of interest between Registrants, the WAMU Advisor and WAMU Distributor and Brokers;

c.    Brokers in fact received 75BP payments in the form of Advisor Paid Fees,

and fees for placing the WAMU Funds on "preferred lists";

d.    the Advisor Paid Fee was paid not only when Brokers made an initial sale

of the WAMU Portfolio Funds, but was paid every year as a residual commission on past sales as

well;

e.    the "management fees" paid out of all WAMU Funds to the WAMU

Advisor were the source of the Advisor Paid Fee;



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1        f.      the Advisor Paid Fee was **illegal** under Section 12(b) of the 1940 Act

2 because not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. §

3 270.12b-1);

4        g.      the Advisor Paid Fee was ***three times*** the allowable commission to

5 Brokers under NASD Rule 2830(d)(5), and was in addition to the maximum 25 BP 12b-1

6 commission paid to Brokers;

7        h.      Brokers selling the WAMU Funds were <u>in fact</u> paid valuable consideration

8 for placing the WAMU Funds on "preferred lists";

9        i.      Brokers selling the WAMU funds were <u>in fact</u> paid valuable compensation

10 tied to the length of time Plaintiffs and the Class hold their WAMU Funds;

11        j.      the Steering Programs created undisclosed incentives to push shares or

12 other ownership units of the WAMU Funds to the exclusion of other investment alternatives;

13        k.      the only investment advantage associated with WAMU Funds was almost

14 always an advantage to the Registrants, the WAMU Advisor, WAMU Distributor and Brokers,

15 all at the expense of Plaintiffs and the Class; and

16        l.      pursuant to the wrongful Steering Programs described herein, defendants

17 benefitted financially at the expense of Plaintiffs and members of the Class.

18       33.     In the March 1, 2002, and March 1, 2003 WAMU Funds' Statement of Additional

19 Information, filed with the registration statement containing the March 1, 2002, and March 1,

20 2003 WAMU Funds' Prospectuses, the Registrants made the following materially false and

21 misleading statements:

22                          **In determining to approve the most recent annual extension of**
                            **the Trusts' investment advisory agreement with the Advisor**

23                          **(the "Advisory Agreement") ... the Trustees met over the**
                         **course of the Trusts' last fiscal year with the relevant**

24                          **investment advisory personnel and considered information**
                         provided by the Advisor and the Sub-advisors relating to the

25                          education, experience and number of investment professionals and
                         other personnel providing services under the Advisory Agreement

26                          and each Sub-advisory Agreement.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 12
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

* * *

The Trustees evaluated the records of the Advisor and Sub-advisors with respect to regulatory compliance and compliance with the investment policies of the Portfolios and Funds. **The Trustees also evaluated the procedures of the Advisor and each Sub-advisor designed to fulfill their fiduciary duties to the Portfolios and Funds with respect to possible conflicts of interest, including the codes of ethics of the Advisor** and each of the Sub-advisors (regulating the personal trading of its officers and employees (see "Codes of Ethics" above under "Management")) the procedures by which the Advisor allocates trades among its various investment advisory clients, **the integrity of the systems in place to ensure compliance with the foregoing and the record of the Adviser and the Sub-advisors in these matters.**

* * *

**Based on the foregoing, the Trustees concluded that the fees to be paid the Advisor and the Sub-advisors under the Advisory Agreement and each Sub-advisory Agreement were fair and reasonable,** given the scope and quality of the services rendered by the Advisor and the Sub-advisors.

34.    Plaintiffs and/or members of the Class were entitled to and did receive the Registrants' March 1, 2002, and March 1, 2003 Prospectuses, each of which failed to disclose the following material facts:

a.    The WAMU Advisor had material conflicts of interest with Plaintiffs and the Class as to its receipt of "management fees" because such fees were used to fund the Advisor Paid Fee;

b.    The Registrants' "evaluat[ion] of the procedures of the Advisor ...designed to fulfill their fiduciary duties to the Portfolios and Funds with respect to possible conflicts of interest" was inadequate, non-existent and/or contrived;

c.    The "fees paid to the Advisor ... under the Advisory agreement" were not fair nor reasonable because such fees were materially inflated due to the Advisors' payment of the illegal Advisor Paid Fee.

35.    In the March 1, 2004 WAMU Funds SAI, the Registrants made statements identical to those described in paragraph 33 above, which were materially false and misleading

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 13
Case No.

**H** B
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  because they omitted the material facts described in paragraph 34 above. Plaintiffs and members

2  of the Class were entitled to and did receive the Registrants' March 1, 2004 WAMU Funds SAI.

3       36.    In the March 1, 2004 WAMU Funds Prospectus, the Registrants made the

4  following materially false and misleading statements:

> **WM Advisors may make payments, at its expense, to dealers or
> other financial intermediaries at an annual rate of up to 0.50%
> of the average daily net assets of shares of the Portfolios.[ ¶ ]**
>
> The Distributor, at its expense, may provide additional
> compensation to dealers. These payments generally represent a
> percentage of a qualifying dealer's sales and/or the value of shares
> of the Portfolios or Funds within a qualifying dealer's client
> accounts. ... [¶]
>
> Salespersons, including representatives of WM Financial Services,
> Inc. (a subsidiary of Washington Mutual), and any other person
> entitled to receive any compensation for selling or servicing
> Portfolio or Fund shares ... **may receive additional compensation
> or other incentives for selling Portfolio or Fund shares.**
> (emphasis added).

13       37.    Plaintiffs and/or members of the Class were entitled to and did receive the

14  Registrants' March 1, 2004 Prospectus, which failed to disclose the following material facts:

15       a.    WAMU Inc., the Registrants, the WAMU Advisor and WAMU

16  Distributor had adopted the Steering Programs to incent Brokers to aggressively push the

17  WAMU Funds on unsuspecting investors;

18       b.    the Steering Programs described herein created insurmountable conflicts

19  of interest between Registrants, the WAMU Advisor, WAMU Distributor and Brokers;

20       c.    the statement that Brokers received "up to 0.50% of the average daily net

21  assets of shares of the Portfolios" was false as Brokers received **75BP** (0.75%) payments in the

22  form of Advisor Paid Fees;

23       d.    the Advisor Paid Fee was paid not only when Brokers made an initial sale

24  of the WAMU Portfolio Funds, but was paid every year as a residual commission on past sales as

25  well;

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1          e.     the "management fees" paid out of all WAMU Funds to the WAMU

2    Advisor were the source of the Advisor Paid Fee;

3          f.     the Advisor Paid Fee was **illegal** under Section 12(b) of the 1940 Act

4    because not authorized or paid for pursuant to the Registrants 12b-1 Plan (17 C.F.R. § 270.12b-

5    1);

6          g.     the Advisor Paid Fee was *three times* the allowable commission to

7    Brokers under NASD Rule 2830(d)(5)), and was in addition to the maximum 25 BP 12b-1

8    commission paid to Brokers;

9          h.     Brokers selling the WAMU Funds were <u>in fact</u> paid valuable consideration

10   for placing the WAMU Funds on "preferred lists";

11         i.     Brokers selling the WAMU funds were <u>in fact</u> paid valuable compensation

12   tied to the length of time Plaintiffs and the Class hold their WAMU Funds;

13         j.     the Steering Programs created undisclosed incentives to push shares or

14   other ownership units of the WAMU Funds to the exclusion of other investment alternatives;

15         k.     the only investment advantage associated with WAMU Funds was almost

16   always an advantage to the Registrants, the WAMU Advisor, WAMU Distributor and Brokers,

17   all at the expense of Plaintiffs and the Class; and

18         l.     pursuant to the wrongful Steering Programs described herein, defendants

19   benefitted financially at the expense of Plaintiffs and members of the Class.

20       38.    The disclosures above lead a reasonable investor to believe, at best, that the

21   Steering Programs *may* or *may not* exist, when in truth, the WAMU Advisor and/or WAMU

22   Distributor had *already* entered into pre-determined, specific, and negotiated arrangements with

23   Brokers to steer Plaintiffs and the Class into the WAMU Funds pursuant to the Advisor Paid Fee

24   and "preferred list(s)". The Registrants had the duty to state *all* facts that were necessary to make

25   their affirmative statements not misleading.

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 15
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    39.    The Registrants' March 1, 2005 prospectus filed with the SEC was unlike

2  previous years. The Registrants' March, 1, 2005 registration contained separate prospectuses for

3  the WAMU Portfolio Funds and other 18 WAMU Funds. The March 1, 2005 WAMU *Portfolio*

4  Funds' prospectus contained in the December 30, 2004 filing stated:

5           OTHER PAYMENTS TO INTERMEDIARIES. WM ADVISORS
             ALSO OFFERS REVENUE SHARING PAYMENTS,
6           REFERRED TO AS "ADVISOR PAID FEES" TO ALL
             FINANCIAL INTERMEDIARIES WITH ACTIVE SELLING
7           AGREEMENTS WITH THE DISTRIBUTOR. THE ADVISOR
             PAID FEES ARE PAID AT AN ANNUAL RATE OF UP TO
8           0.50% OF THE AVERAGE NET ASSETS OF CLASS A AND
             CLASS B SHARES OF THE PORTFOLIOS SERVICED BY
9           SUCH INTERMEDIARIES AND AN ANNUAL RATE OF UP
             TO 0.25% OF THE AVERAGE NET ASSETS OF CLASS C
10          SHARES OF THE PORTFOLIOS SERVICED THROUGH
             SUCH INTERMEDIARIES. THESE PAYMENTS ARE MADE
11          FROM WM ADVISORS' PROFITS AND MAY BE PASSED ON
             TO YOUR INVESTMENT REPRESENTATIVE AT THE
12          DISCRETION OF HIS OR HER FINANCIAL INTERMEDIARY
             FIRM. THESE PAYMENTS MAY CREATE AN INCENTIVE
13          FOR THE FINANCIAL INTERMEDIARIES AND/OR
             INVESTMENT REPRESENTATIVES TO RECOMMEND OR
14          OFFER SHARES OF THE PORTFOLIOS OVER OTHER
             INVESTMENT ALTERNATIVES.
15
             ... In some cases, financial intermediaries will include the WM
16           Group of Funds on a "preferred list." The Distributor's goals
             include making the Investment Representatives who interact with
17           current and prospective investors and shareholders more
             knowledgeable about the WM Group of Funds so that they can
18           provide suitable information and advice about the Portfolios and
             related investor services.
19
             IF ONE MUTUAL FUND SPONSOR MAKES GREATER
20           DISTRIBUTION ASSISTANCE PAYMENTS THAN
             ANOTHER, YOUR INVESTMENT REPRESENTATIVE AND
21           HIS OR HER FINANCIAL INTERMEDIARY MAY HAVE AN
             INCENTIVE TO RECOMMEND ONE FUND COMPLEX OVER
22           ANOTHER. SIMILARLY, IF YOUR INVESTMENT
             REPRESENTATIVE OR HIS OR HER FINANCIAL
23           INTERMEDIARY RECEIVES MORE DISTRIBUTION
             ASSISTANCE FOR ONE SHARE CLASS VERSUS ANOTHER,
24           THEN THEY MAY HAVE AN INCENTIVE TO RECOMMEND
             THAT CLASS. (emphasis added).
25

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

40.    The Registrants' March 1, 2005 WAMU *Portfolio* Funds registration statement did not contain similar disclosures in the prospectus for the other 18 WAMU Funds. The registration statement failed to disclose the following material facts:

a.    the Advisor Paid Fee was not made from the WAMU Advisor's profits as the inflated "management fees" paid out of **all** WAMU Funds were *actually* the source of the Advisor Paid Fee;

b.    Brokers *actually* received 75 BP (not "UP TO 0.50%") in the form of Advisor Paid Fee for sales of *all* WAMU Portfolio Fund shares;

c.    the Steering Programs in fact created insurmountable conflicts of interest between the Registrants, WAMU Advisor, WAMU Distributor and/or WMFS;

d.    The Advisor Paid Fee is **illegal** under Section 12(b) of the 1940 Act because not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

e.    The Registrants did not amend their 12b-1 Plan to account for payment of the Advisor Paid Fee;

f.    the Advisor Paid Fee was *three times* the allowable commission to Brokers under NASD Rule 2830(d)(5)), and was in addition to the maximum 25 BP 12b-1 commission paid to Brokers;

41.    The Registrants' March 1, 2005 Portfolio Funds prospectus did not actually or constructively put Plaintiffs or the Class on notice that the Registrants, the WAMU Advisor and Distributor were *in the past* engaged in the Steering Programs, as purported "disclosures" prior to March 1, 2005 were unclear and intended by the Registrants to be vague and ambiguous. The March 1, 2005 Portfolio Funds prospectus made no remedial disclosures of past activity, and contained no statement that its purported disclosures applied retroactively to amend previous prospectuses, and Plaintiffs and the Class reasonably believed that such purported disclosures represented a change in practice by the Registrants, the WAMU Advisor and Distributor.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    42.    The Registrants' registration statements after March 1, 2005, including the March

2    1, 2006 WAMU Funds registration statement, the Registrants made statements identical to those

3    described in paragraph 39 above, which were materially false and misleading because they

4    omitted the material facts described in paragraph 40 above. Plaintiffs and/or members of the

5    Class were entitled to and did receive the Registrants' March 1, 2006 WAMU Funds

6    prospectus(es). The Registrants continued the Advisor Paid Fee until the sale of the WAMU

7    Funds (as well as the WAMU Advisor and WAMU Distributor) to the Principal Defendants.

8    **However, while the Advisor Paid Fee was discontinued for new sales, it was**

9    **"grandfathered" to Brokers with then existing arrangements to receive the Advisor Paid**

10   **Fee.** Plaintiffs believe to be true and believe there will be substantial evidentiary basis that the

11   Principal Investors Fund continues to pay such "grandfathered" Advisor Paid Fees for WAMU

12   Fund Sales occurring up the WAMU Funds' sale to the Principal Defendants.

13   43.    The Registrants, the WAMU Advisor and WAMU Distributor have not been the

14   subject of news reports concerning their Steering Programs, nor been publicly reprimanded by

15   the SEC, NASD/FINRA, or similar enforcement body for their concerted efforts to "steer"

16   clients into the WAMU Funds. Accordingly, Plaintiffs and members of the Class did not have

17   actual or constructive knowledge that the undisclosed activities complained of herein were taking

18   place.

19   44.    Plaintiffs are certain that, as the evidence develops, testimony from WMFS

20   "Investment Professionals" (*i.e.*, "Salesmen") will confirm systematic inducements and rigid

21   requirements that Salesmen neglect their duties to clients, and instead sell proprietary products

22   laden with excessive and improper fees, commissions and other incentives.

23   **E.    Scienter Allegations**

24   45.    The Registrants the WAMU Advisor and Distributor, led by William Papesh,

25   instituted the Advisor Paid Fee and "preferred list(s)" in 1997. Thereafter, in the Registrants'

26   March 1998 prospectus, the Registrants' stated that the WAMU Distributor "may" pay

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 18
Case No.

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    "additional compensation or other incentives for selling [WAMU Fund] shares." As

2    demonstrated above, the Registrants utilized essentially identical language through 2003, with

3    minimal additional detail in 2004 until finally revealing in 2005 that WMFS and its Salesmen

4    were in fact involved in the Steering Programs. The Registrants' purported "disclosures" were

5    not drafted in the abstract, but were created in response to the Steering Programs. The fact that

6    the disclosures came after the Steering Programs were put in place, and evolution of the

7    purported disclosures over time demonstrate that the Registrants intentionally sought to disclose

8    as little information as possible about the Steering Programs.

9         46.    The prohibitions on payments to Brokers by Section 12(b) of the 1940 Act, as

10   well as the limitations on legitimate payments contained in SEC Rule 12b-1 are common

11   knowledge in the mutual fund industry. The Registrants' knowledge and/or reckless disregard of

12   these limitations as they relate to the Advisor Paid Fee raises a strong inference of scienter.

13        47.    The Registrants' false statements that the "Advisor[] may make payments ... at an

14   annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios", when the

15   Registrants' that such payment was actually 75 BP (0.75%), raises a strong inference of scienter.

16        48.    The fact that the Registrants have the Steering Program(s) in place indicates that

17   the Registrants know and believe such Programs drive and increase sales. By virtue of the

18   descriptions of the Steering Program(s) contained in purported disclosures after March 1, 2005,

19   defendants recognized the existence and nature of such Program(s) to be material to a reasonable

20   investor. By virtue of the existence of the Steering Program(s), the Registrants' directors knew

21   about the already in place Advisor Paid Fee and "preferred list(s)," but drafted, authorized and

22   thereafter left in place intentionally vague disclosures. The Steering Programs are not analogous

23   to a financial result the existence or significance of which can be overlooked at the time of initial

24   disclosure, but were instead a deliberate *marketing program* orchestrated and executed for the

25   purpose of driving sales and increasing the WAMU Fund Companies' revenue to the detriment

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 19
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

of Plaintiff and the Class. Defendants cannot seriously contend they did not know what was going on when they crafted the relevant registration statements/prospectuses.

49.    The fact that the Registrants s false statements in the March 1, 2005 prospectus, including *inter alia*, that WAMU Advisor and WAMU Distributor make payments "at its expense", when in reality those payments were derived directly from Plaintiffs and the Class' "management fees", and "other expenses", indicates that the Registrants' knew the programs were improper and were attempting to limit their exposure for engaging in the Shelf-Space Programs. The Registrants'

50.    The Registrants', the WAMU Advisor and WAMU Distributor reaped huge profits from the Steering Programs and had an incentive to keep them secret. Increasing sales of the WAMU Funds infused more assets and therefore more fees to the WAMU Advisor and WAMU Distributor in the form of "management fees", loads, commissions, and 12b-1 fees. As the Registrants, the WAMU Advisor, WAMU Distributor and WMFS were all wholly owned entities of WAMU, Inc., they were working under a common scheme to increase profits for the common benefit of WAMU, Inc.

51.    The Registrants disclosed the Steering Programs only after the illegal activities and scandals in the mutual fund industry were finally revealed to the public in 2004. The Registrants took these actions in a transparent and belated attempt to "clean up" their disclosures and minimize their potential liability. The Registrants therefore knew the Steering Programs regarding WAMU Fund sales were wrong and improper. In light of this conscious strategy, the failure to disclose the full extent of the Steering Programs even in the March 1, 2005 registration statement (and after) raises a strong inference of scienter.

52.    While the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78) establishes a safe harbor to protect individuals and companies giving investment advice, the safe harbor does not apply here. The safe harbor provision does not apply where defendants, as here,

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 20
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1  knew at the time they were issuing statements that the statements contained false and misleading

2  information and thus lacked any reasonable basis for making them.

3  **F.    Damages Allegations**

4      53.    A mutual fund company is very different from a traditional corporation, in that a

5  mutual fund is a mere shell, a pool of assets consisting mostly of portfolio securities that belongs

6  to the individual investors holding shares in the fund. The management of this asset pool is

7  largely in the hands of an investment advisor, an independent entity which generally organizes

8  the fund and provides it with investment advice, management services, office space and staff.

9      54.    Unlike a traditional corporation, if those in charge of a mutual fund engage in

10 wrongful activities negatively impacting the mutual fund, investors are directly impacted because

11 a mutual fund is nothing more than a collection of the investors' money. When a cost is imposed

12 on a traditional corporation, that cost impacts the book value of the corporation, but it does not

13 necessarily impact the market price of the corporation's shares. Thus, there is no direct impact

14 of those costs on the shareholder. In contrast, costs imposed on a mutual fund directly reduce the

15 price at which the fund's shares are bought and sold, and do directly and immediately impact

16 fund shareholders.

17     55.    In addition, mutual fund shares do not trade at a price set by the public market.

18 Rather, they are bought from, and sold back to the fund at net asset value ("NAV") per share in a

19 method provided by statute. Opened ended mutual funds such as the WAMU Funds are required

20 to issue redeemable securities, which are defined as "any security... under the terms of which the

21 holder, upon its presentation to the issuer... is entitled... to receive approximately his

22 proportionate share of the issuer's current net assets, or the cash equivalent thereof." 15 U.S.C. §

23 80a-2(a)(32). The value of an investor's mutual fund is determined by subtracting a fund's

24 liabilities from its assets to arrive at the fund's NAV. When paid, the undisclosed fees and

25 charges at issue here immediately reduced that WAMU Funds' NAV per share, decreasing the

26 amount for which Plaintiffs and the Class are entitled to redeem their shares.

---

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 21
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

56.    Although the various fees charged to mutual fund investors may seem small for each individual investor, mutual funds are long-term investment vehicles where compounded expenses have a significant impact on returns. Seemingly small, yet compounding, fees create drastic erosion on returns over time.

57.    Plaintiffs and the Class accepted, as an integral aspect of purchasing shares of the WAMU Funds, that they would be required to pay fees and expenses against their ownership interests therein, with the understanding that those charges were legitimate outlays for services that would benefit the Funds and contribute positively to their value. In truth, a significant portion of those expenses were not being used to provide the services promised, but rather to increase the profits of the Registrants, the WAMU Advisor, WAMU Distributor and Brokers by financing the Steering Programs challenged in this lawsuit.

58.    Plaintiffs and the Class assumed wrongly – as a direct and proximate result of the Registrants' non-disclosure and misrepresentation – that they would be paying out of their principal only fees for services that accrued to the benefit of Plaintiffs and members of the Class. In reality, Plaintiffs and the Class' principal was funding the Steering Programs which were being used to induce Plaintiffs and the Class members to hold their shares of the WAMU Funds, purchase additional shares of the WAMU Funds, and induce third parties to purchase shares of the WAMU Funds, all of which provided no benefit to Plaintiffs and the Class, and in fact actually dissipated the NAV of their assets in the WAMU Funds.

59.    The Steering Programs system of payments caused Plaintiffs and the Class an economic loss: absent those payments, Plaintiffs and the Class' total amount of fees, and thus the resulting diminution of their investment's NAV, would have been smaller.

60.    The Registrants did not adequately disclose the Steering Programs as such, nor did their disclosure state sufficient facts about such Programs for Plaintiffs and the Class to appreciate the dimension of the conflicts of interest inherent in them. Plaintiffs and members of the Class would not have purchased the WAMU Funds, nor paid the related commissions and

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 22
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  fees used to finance the Steering Programs had the existence or nature of the Steering Programs

2  been disclosed.

3      61.    As a result of the Registrants' conduct alleged above, Plaintiffs and the Class have

4  suffered damages. The damages suffered by Plaintiffs and the Class were a foreseeable

5  consequence of WAMU's misleading statements, omissions and misconduct. By investing in the

6  WAMU Funds, Plaintiffs and the Class received a return on their investment that was

7  substantially less than the return on investment they would have received had the Registrants,

8  WAMU Advisor and Distributor not engaged in the asset dissipating Steering Programs.

9      62.    Plaintiffs and the Class have also suffered damages through commissions paid by

10  them for their purchase of WAMU Funds shares. Had Plaintiffs and the Class known about the

11  practices alleged above, they would not have paid such commissions. Plaintiffs and the Class'

12  damages as a result of the commissions, fees and other charges paid for shares of the WAMU

13  Funds were a foreseeable consequence of Defendants' false and misleading statements and

14  omissions.

15  **G.    Unity of Interest Between the Registrants, WAMU Advisor, WAMU Distributor, WMFS and WAMU, Inc.**

16
17      63.    The Registrants, the WAMU Advisor, WAMU Distributor and WMFS are wholly

18  owned entities of control person defendant WAMU Inc. The ownership, management and

19  operation of such entities are inextricably intertwined giving such entities a unity of interest for

20  purposes of liability as alleged herein.

21      64.    The Registrants (WM Trust I, WM Trust II, and WAMU Portfolios) are governed

22  by a common Board of Trustees that oversees the Registrants' activities. The officers of the

23  Registrants are also officers and/or employees of the WAMU Advisor and/or WAMU

24  Distributor.

25      65.    For example, the Chairman of the Registrants' common Board of Trustees,

26  William G. Papesh, is also the President, Chief Executive Officer ("CEO") and Director of the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 23
Case No.

010074-11 258370 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   WAMU Advisor and Distributor. Monte D. Calvin, who served as First Vice President ("VP"),

2   Chief Financial Officer ("CFO") and Treasurer of the Registrants also served as First VP and

3   Director of the WAMU Advisor and Distributor. Sandy Cavanaugh served as Senior VP to the

4   Registrants and President, Director and Senior VP to the WAMU Distributor and Director of the

5   WAMU Advisor. Alex Ghazanfari served as VP and Assistant Compliance Officer to the

6   Registrants and VP and the Distributor as well as senior level positions at WMFS. Sharon L.

7   Howells served as First VP of the Registrants and First VP, Secretary and Director of the

8   WAMU Advisor and Distributor. Gary J. Pokrzywinski served as First VP and VP of the

9   Registrants, and First VP of the WAMU Advisor. Stephen Q. Spencer served as First VP of the

10  Registrants and First VP to the WAMU Advisor. John Q. West served as First VP, Secretary and

11  Officer of the Registrants and First VP of the WAMU Advisors and Distributor. Randall L.

12  Yokum served as Senior VP and First VP of the Registrants and Senior VP, Chief Investment

13  Strategist and Director of the WAMU Advisor and Director of the Distributor.

14  **H.    Successor Liability for the Principal Defendants**

15          66.    On July 25, 2006, Principal and its subsidiary, Principal Management Corporation

16  entered into an agreement with WAMU to acquire all of the outstanding stock of the following

17  subsidiaries: WAMU Advisors, WAMU Distributor, and WM Shareholder Services, Inc. (the

18  "Acquisition"). On August 11, 2006, the Registrants' common Board of Trustees approved the

19  proposed Acquisition pursuant to which each of the WAMU Funds would combine with and into

20  the corresponding separate acquiring fund of Principal Investors Fund (the "Acquiring Funds").

21  The Acquisition was approved by the WAMU Fund shareholders on December 15, 2006. By

22  January 2007, the Acquisition was instantiated.

23          67.    Under the Acquisition, (i) all the assets and certain stated liabilities of the WAMU

24  Funds were transferred to its corresponding Acquiring Fund in exchange for Class A, Class B,

25  Class C and Institutional Class ("Class I") shares of the Acquiring Fund; (ii) holders of Class A,

26  Class B, Class C and Class I shares of the WAMU Funds received, respectively, that number of

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 24
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1 Class A, Class B, Class C and Class I shares of the corresponding Acquiring Fund equal in value

2 at the time of the exchange to the value of the holder's WAMU Fund shares; and (iii) the WAMU

3 Funds were liquidated and dissolved.

4      68.    The WAMU Advisor became investment advisor to the Principal Investors Fund.

5 WAMU Advisor was renamed defendant Edge Asset Management, Inc. ("Edge"), but remains

6 in Seattle and employs many of WAMU Advisors' officers and employees listed in paragraph 65,

7 above. The officers and employees of WAMU Funds Distributor formed the management and

8 staff of Principal Funds Distributor, the distributor to the Principal Investors Fund. Four

9 members of the Board of Trustees for the Registrants were elected to the board of Principal

10 Investors Fund. This group includes Richard Yancey, Daniel Pavelich, Kristianne Blake and

11 William G. Papesh.

12      69.    The Principal defendants and the WAMU defendants thus share a unity of interest

13 with respect to the issues of this lawsuit and are the alter ego of their corresponding WAMU

14 entity. Such unity dictates that the Principal defendants be held jointly and severably liable for

15 the misconduct of the WAMU entities as alleged in this complaint. The Principal entities have

16 acquired the WAMU entities liabilities for the conduct as alleged in this lawsuit. The

17 Registrants' board members are now board members of Principal Investors Fund.

18               **III.    JURISDICTION AND VENUE**

19      70.    This Court has jurisdiction over the subject matter of this action pursuant to

20 section 22 of the Securities Act (15 U.S.C. § 77v); section 27 of the Exchange Act (15 U.S.C. §

21 78aa); and 28 U.S.C. §§ 1331, 1337.

22      71.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15

23 U.S.C. § 78aa) and 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged fraud,

24 including the preparation and dissemination of materially false and misleading information,

25 occurred within this District. Defendants WAMU Inc., WMFS, WM Advisors, and WM

26 Distributor, at all relevant times were headquartered in Seattle Washington.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 25
Case No.

010074-11 258370 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

72.    In connection with the acts alleged herein, Defendants directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## IV.    PARTIES

73.    Plaintiff Lynne Poliquin is the daughter and attorney-in-fact for Plaintiff June Robinson. Plaintiff Poliquin has durable power of attorney for Plaintiff Robinson, which confers upon Plaintiff Poliquin all legal and beneficial rights of ownership and control in Plaintiff Robinson's WAMU Funds, including all rights to sue on her mother's behalf in the instant lawsuit. Plaintiffs are, and at all relevant times were, residents of the state of Washington. Plaintiff Poliquin made at least the following transactions in the WM Tax Exempt Bond Fund (CMTEX) issued by defendant WM Trust I: Purchased 3045.067 shares on 7/5/2005; Sold 3045.067 shares on 9/1/2005; Purchased 2518.703 shares on 11/1/2005; and Purchased 635.91 shares on 11/25/2005. Plaintiffs paid "management fees" debited from their shares of WAMU Funds that were diverted to fund the illegal Advisor Paid Fee and were damaged thereby.

74.    Defendant Washington Mutual, Inc. ("WAMU, Inc.") is a financial services company organized as a Washington corporation, that at all times material maintained its corporate headquarters at Seattle, Washington. During the Class Period WAMU, Inc. was the sole owner of defendants WM Trust I, WM Trust II, WM Strategic Asset Management Portfolios, LLC, WM Financial Services, Inc., WM Funds Distributor, Inc., and WM Advisors, Inc.

75.    Defendant WM Trust I is an open-end management investment company, organized as a Massachusetts business trust. WM Trust I issued the following WAMU Funds during the Class Period: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, and Mid Cap Stock.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 26
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

76.    Defendant WM Trust II is an open-end management investment company organized as a Massachusetts business trust. WM Trust II issued the following WAMU Funds during the Class Period: California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth, International Growth, and Small Cap Growth.

77.    Defendant WM Strategic Asset Management Portfolios, LLC (the "WAMU Portfolio") is an open-end management investment company, organized as a Massachusetts limited liability company. WAMU Portfolios issued the following WAMU Funds during the Class Period: Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

78.    Defendant WM Financial Services, Inc. ("WMFS") is a financial services company organized as a Washington corporation, that at all times material maintained its corporate headquarters at Seattle, Washington, and during the Class Period, acted as broker/dealer for WAMU and the WAMU Funds.

79.    Defendant WM Advisors, Inc. ("WAMU Advisors") is a financial services company organized as a Washington corporation, and during the Class Period, acted as the investment advisor for the Registrants and the WAMU Funds.

80.    Defendant WM Funds Distributor, Inc. ("WAMU Distributor") is a financial services company organized as a Washington corporation, and during the Class Period, acted as the distributor for the Registrants and the WAMU Funds.

81.    Defendant Principal Financial Group, Inc., ("Principal") is a financial services company organized as a Delaware corporation, that at all times material maintained its corporate headquarters at Des Moines, Iowa. As of January 2007, Principal acquired and became the parent company of the WAMU Funds, now merged into Principal Investors Fund, Inc.

82.    Defendant Principal Investors Fund, Inc. ("Principal Investors Fund") is the successor in interest to WM Trust I, WM Trust II, and WM Portfolios, registrants for the WAMU Funds. Principal Investors Fund is a management investment company organized as a

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 27
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   Maryland corporation, that at all times material maintained its corporate headquarters at Des

2   Moines, Iowa.

3       83.    Defendant Edge Asset Management, Inc. ("Edge") is the successor in interest to

4   some or all of the liabilities of WAMU Advisors complained of herein and is investment advisor

5   to some or all of the former WAMU Funds in the Principal Investors Funds. Edge is a financial

6   services company organized as a Washington corporation, that at all times material maintained

7   its corporate headquarters at Seattle, Washington.

8       84.    Defendant Principal Funds Distributor, Inc. ("Principal Distributor") is the

9   successor in interest to some or all of the liabilities of the WAMU Distributor as complained of

10  herein, and is the distributor for some or all of the former WAMU Funds in the Principal

11  Investors Funds. Principal Distributor is organized as a Washington corporation, with its

12  principal place of business in Sacramento County California.

13      85.    Principal, Principal Investors Fund, Principal Distributor, and Edge are

14  collectively referred to herein as the "Principal Defendants."

15                    **V.    CLASS ALLEGATIONS**

16      86.    Plaintiffs bring this action as a class-action pursuant to Federal Rules of Civil

17  Procedure 23 on behalf of a Class consisting of: All persons or entities that purchased or

18  otherwise acquired shares, units or like interests in any of the WAMU Funds (including through

19  the reinvestment of Fund dividends) within the applicable statute of limitations, or such other

20  class, classes or periods of time as the Court deems appropriate. Excluded from the Class are

21  defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

22  with any defendant.

23      87.    The members of the Class are so numerous that joinder of all members is

24  impracticable. While the exact number of Class members is unknown to Plaintiffs at this time

25  and can only be ascertained through appropriate discovery, Plaintiffs believe that there are

26  thousands of members in the proposed Class. Record owners and other members of the Class

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 28
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1  may be identified from records maintained by defendants, and may be notified of the pendency

2  of this action by mail, using the form of notice similar to that customarily used in securities class

3  actions.

4      88.    Plaintiffs' claims are typical of the claims of the members of the Class as all

5  members of the Class are similarly affected by Defendants' wrongful conduct complained of

6  herein in violation of federal law. Plaintiffs do not have interests adverse to the Class.

7      89.    Plaintiffs will fairly and adequately protect the interests of the members of the

8  Class and has retained counsel competent and experienced in class action and securities

9  litigation.

10     90.    Common questions of law and fact exist as to all members of the Class and

11 predominate over any questions wholly affecting individual members of the Class. Among the

12 questions of law and fact common to the Class are:

13     (a)    whether statements made by the Registrants to the investing public before, at

14 least, March 1, 2005 concerning the existence of, source of funding for, purpose and effect of

15 the Steering Programs misstated, omitted or concealed material facts;

16     (b)    whether the Registrants' false and misleading statements and omissions are

17 material as a matter of law;

18     (c)    whether Plaintiffs and the Class' WAMU Funds assets were dissipated by the

19 Steering Programs and the fees deducted therefore;

20     (d)    whether the Registrants acted with scienter when issuing the false and misleading

21 statements and omissions;

22     (e)    whether the Steering Programs created insurmountable conflict(s) of interest

23 for the Registrants, the WAMU Advisor, WAMU Distributor and/or Brokers;

24     (f)    whether the federal securities laws were violated by defendants' acts as alleged

25 herein; and

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 29
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   (g)    to what extent Plaintiff and members of the Class have sustained damages and

2   the proper measure of damages.

3   91.    A class action is superior to all other available methods for the fair and efficient

4   adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

5   the damages suffered by individual Class members may be relatively small, the expense and

6   burden of individual litigation make it virtually impossible for members of the Class to

7   individually redress the wrongs done to them. There will be no difficulty in the management of

8   this action as a class action.

9   92.    Defendants have acted on grounds generally applicable to the entire Class with

10  respect to the matters complained of herein, thereby making appropriate the relief sought herein

11  with respect to the Class as a whole.

12                          **COUNT I**
                **Against the Registrants and Principal Investors Fund**
13          **For Violations Of Section 11 Of The Securities Act**

14  93.    Plaintiffs repeat and re-allege each and every allegation contained above as if

15  fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and

16  disclaim any allegation that could be construed as alleging fraud or intentional or reckless

17  misconduct.

18  94.    This claim is brought pursuant to Section 11 of the Securities Act (15 U.S.C. §

19  77k) against the Registrants on behalf of Plaintiffs and the Class.

20  95.    The Registrants were the registrant(s), and Principal Investors Fund is the

21  successor in interest to the Registrants, for one or more of the respective WAMU Funds' shares

22  sold to Plaintiffs and the Class. The Registrants issued, caused to be issued and participated in

23  the issuance of the materially false and misleading written statements and/or omissions of

24  material fact that were contained in the respective Prospectus(es) and are statutorily liable under

25  Section 11.

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 30
Case No.

010074-11 258370 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

96.    Prior to purchasing ownership units of the WAMU Funds, Plaintiffs were provided the appropriate Prospectus(es) and, similarly, prior to purchasing the ownership units of each of the other WAMU Funds, all Class members likewise received the appropriate Prospectus(es). Plaintiffs and other Class members purchased shares of the WAMU Funds traceable to the false and misleading Prospectus(es).

97.    As set forth above, the statements contained in the Prospectuses were materially false and misleading for a number of reasons, including that they failed to disclose, and actively concealed, that it was the practice of the Registrants, the WAMU Advisor and Distributor to reward Brokers for selling the WAMU Funds, while discouraging selling products offered by competitors not on the "preferred list" or otherwise participating in the Steering Programs. The Prospectuses failed to disclose and misrepresented material and adverse facts as described in paragraphs 31 through 42 of this complaint.

98.    Plaintiffs and the Class have sustained damages as a result of the Registrants' violations.

99.    At the time they purchased the WAMU Funds shares traceable to the defective Prospectuses, Plaintiffs and the Class were without knowledge of the facts concerning the false and misleading statements or omissions alleged herein and could not reasonably have possessed such knowledge.

100.    This claim was brought within the applicable statute of limitations.

**COUNT II**
**Against the Registrants, the WAMU Distributor, WMFS and Principal Defendants**
**For Violations of Section 12(a) Of The Securities Act**

101.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 31
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

102.    This claim is brought pursuant to Section 12(a) of the Securities Act (15 U.S.C. § 77l(a)), against the Registrants, the WAMU Distributor and WMFS, for their failure to disclose the Steering Programs that created insurmountable conflicts of interest and the Principal Defendants as successors in interest to the Registrants, the WAMU Distributor and WMFS.

103.    The Registrants, the WAMU Distributor and WMFS, were the "offeror" and/or "seller", and the Principal Defendants are the successor in interest to the "offeror" and/or " seller", within the meaning of the Securities Act, for one or more of the respective WAMU Fund shares sold to Plaintiffs and the Class members because they either: (a) transfer title to shares of the WAMU Funds to members of the Class; (b) transfer title to shares of the WAMU Funds to the WAMU Funds distributors that in turn sold shares of the WAMU Funds as agent for the Registrants; and/or (c) solicited the purchase of shares in the WAMU Funds by members of the Class, motivated in part by payment of the monies pursuant to the Steering Programs to the detriment of Plaintiffs and the Class.

104.    Before at least March 1, 2005, the Registrants, the WAMU Distributor and WMFS failed to disclose the existence of the Steering Programs payments Brokers received in exchange for pushing clients into the WAMU Funds.  These incentives created insurmountable conflicts of interest that were never disclosed to Plaintiffs and the Class.

105.    The WAMU Fund Companies also caused to be issued to members of the Class the Prospectuses that failed to disclose that fees, commissions, and other charges from the purchase and maintenance of the WAMU Funds were used to pay Brokers for directing Plaintiffs and the Class into the WAMU Funds, and the existence of the conflicts of interest described herein for Brokers including WMFS and its Salesmen.

106.    As set forth above, when they became effective, the WAMU Funds' Prospectuses were misleading as they omitted or insufficiently disclosed the material facts alleged in, at least, paragraphs 31 through 42 of this complaint.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ■ SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ■ FACSIMILE (206) 623-0594

010074-11  258370 V1

1    107.    Plaintiffs and the other members of the Class have sustained damages as a result

2    of the Registrants, WAMU Distributor, WMFS and Principal Defendants' violations.

3    108.    At the time they purchased the WAMU Fund shares traceable to the defective

4    Prospectuses, Plaintiffs and the Class were without knowledge of the facts concerning the

5    material misleading statements and omissions alleged herein and could not reasonably have

6    possessed such knowledge.

7    109.    This claim was brought within the applicable statute of limitations.

8                                    **COUNT III**
                          **Against WAMU, Inc. and WAMU Advisor**
9                  **for Violation of Section 15 of the Securities Act**

10    110.    Plaintiffs repeat and re-allege each and every allegation contained above as if

11    fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and

12    disclaim any allegation that could be construed as alleging fraud or intentional or reckless

13    misconduct.

14    111.    This claim is brought pursuant to Section 15 of the Securities Act (15 U.S.C. §

15    77o), against WAMU, Inc. and WAMU Advisor as control persons of the Registrants, the

16    WAMU Distributor and WMFS. It is appropriate to treat these defendants as a group for

17    pleading purposes and presume that the false, misleading, and incomplete information

18    complained about herein are the collective actions of WAMU, Inc., the WAMU Advisor,

19    Registrants, WAMU Distributor and WMFS.

20    112.    The Registrants violated Section 11 of the Securities Act. And the Registrants, the

21    WAMU Distributor and WMFS violated Section 12(a) of the Securities Act by their acts and

22    omissions as alleged in this complaint. By virtue of their positions as controlling persons,

23    WAMU, Inc., and the WAMU Advisor are liable pursuant to Section 15 of the Securities Act.

24    113.    WAMU, Inc. and the WAMU Advisor are and were "control person(s)" of the

25    Registrants, the WAMU Distributor and WMFS within the meaning of Section 15 of the

26    Securities Act, by virtue of their positions of operational control and/or stock ownership in the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 33
Case No.

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11 258370 V1

1    Registrants, the WAMU Distributor and WMFS. At the time the Registrants, the WAMU

2    Distributor and WMFS sold one or more shares of the WAMU Funds to Plaintiffs and the Class

3    – by virtue of their positions of control and authority over the Registrants, the WAMU

4    Distributor and WMFS – WAMU, Inc. and the WAMU Advisor, directly and indirectly, had the

5    power, authority, influence and control, and exercised same, over the decision making and

6    actions of the Registrants, the WAMU Distributor and WMFS to engage in the wrongful conduct

7    complained of herein. WAMU, Inc. and the WAMU Advisor had the ability to prevent the

8    issuance of the statements alleged to be false and misleading or could have caused such

9    statements to be corrected.

10    114.    In particular, WAMU, Inc. had direct supervisory involvement in the operations

11    of the Registrants, the WAMU Distributor and WMFS by virtue of total stock ownership in those

12    defendants, and is presumed to have had the power to control or influence the particular acts,

13    misleading statements, and omissions giving rise to violations of the Securities Act as alleged

14    herein, and to have exercised same.

15    115.    As a direct and proximate result of WAMU, Inc. and the WAMU Advisor's

16    wrongful conduct, Plaintiffs and the Class suffered damages in connection with their purchases

17    and/or sales of interests in the WAMU Funds before, at least, March 1, 2005.

18                                              **COUNT IV**
      **Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder**
19                       **Against the Registrants and Principal Investors Fund**

20    116.    Plaintiffs repeat and re-allege each and every allegation contained above as if

21    fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the

22    Securities Act.

23    117.    This claim is brought against the Registrants and the Principal Investors Fund

24    pursuant to Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. §

25    240.10b-5) promulgated thereunder. The Registrants are sued as primary violators of Section

26    10(b) and Principal Investors Fund as successor in interest to the Registrants.

---

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 34
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

118.   During the Class Period, the Registrants carried out a plan, scheme and course of conduct which was intended to, and before, at least, March 1, 2005 did, deceive the investing public, including Plaintiffs and the Class as alleged herein, and caused Plaintiffs and the Class to purchase WAMU Funds containing improper fees, commissions and other charges, and to otherwise suffer damages. In furtherance of this unlawful scheme, plan and course of conduct, the Registrants took the actions set forth herein.

119.   The Registrants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue or misleading statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon purchasers of the WAMU Funds, including Plaintiffs and the Class, in an effort to enrich themselves through undisclosed manipulative tactics by which they wrongly dissipated the assets of the WAMU Funds in violation of Section 10(b) of the Exchange Act and Rule 10b-5. The Registrants are sued as primary participants of the wrongful and illegal conduct and scheme charged herein, and Principal Investors Fund is sued as the successor in interest to the Registrants.

120.   The Registrants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal the adverse material information about the improper Steering Programs the inherent conflicts of interest alleged herein.

121.   The Registrants employed devices and artifices to defraud and engaged in a course of conduct and scheme as alleged herein to unlawfully manipulate and profit from increased sales and/or commissions, fees or other charges paid to them as a result of its undisclosed Steering Programs described above and thereby engaged in transactions, practices and a course of conduct which operated as a fraud and deceit upon Plaintiffs and the Class.

122.   The Registrants had actual knowledge of the misrepresentations and omissions of material facts set forth above, or acted with reckless disregard for the truth in that they failed to



HAGENS BERMAN
SOBOL SHAPIRO llp
1301 Fifth Avenue, Suite 2900 ♦ Seattle, WA 98101
TELEPHONE (206) 623-7292 ♦ FACSIMILE (206) 623-0594

010074-11 258370 V1

1   ascertain and to disclose such facts, even though the facts were available to them. The

2   Registrants' material misleading statements and omissions were done knowingly or recklessly

3   and for the purpose and effect of concealing the truth.

4       123.   As a result of dissemination of the materially false and misleading information

5   and failure to disclose material facts, as set forth in paragraphs 31 through 42 above, the NAVs

6   for the WAMU Funds were diminished before, at least, March 1, 2005. In ignorance of the fact

7   that NAVs for the WAMU Funds were diminished, and relying directly or indirectly on the false

8   and misleading statements made by the Registrants, or upon the purported integrity of WAMU,

9   Inc., the Registrants, the WAMU Advisor, WAMU Distributor and WMFS, and/or on the public

10  absence of material adverse information that was known to or recklessly disregarded by the

11  Registrants but not disclosed in public statements by the Registrants before, at least, March 1,

12  2005, Plaintiffs and the Class paid fees, commissions, loads, and other charges to the Registrants,

13  the WAMU Advisor, WAMU Distributor and WMFS during the Class Period for the Steering

14  Programs and were damaged thereby.

15      124.   By virtue of the foregoing, the Registrants and Principal Investors Fund have

16  violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. §

17  240.10b-5) promulgated thereunder.

18      125.   As a direct and proximate result of the Registrants and Principal Investors Fund's

19  wrongful conduct, Plaintiffs and the Class suffered damages in connection with their respective

20  purchases and/or sales of WAMU Funds shares before, at least March 1, 2005.

21      126.   This claim was brought within the applicable statute of limitations.

## COUNT V
### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-10 Promulgated Thereunder Against WMFS

24      127.   Plaintiffs repeat and re-allege each and every allegation contained above as if

25  fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the

26  Securities Act.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 36
Case No.


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11  258370 V1

128.    This claim is brought against WMFS for violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-10 (17 C.F.R. § 240.10b-10) promulgated thereunder.

129.    Before, at least, March 1, 2005, WMFS and its Salesmen effected transactions in the WAMU Funds for or with the account of Plaintiffs and members of the Class, and/or induced Plaintiffs and members of the Class to purchase the WAMU Funds.

130.    At or before completion of Class members' purchases of shares, units or other like interests in the WAMU Funds, WMFS failed to disclose the source and amount of remuneration WMFS and its Salesmen received from the WAMU Advisor and WAMU Distributor in connection with Class members' purchases of the WAMU Funds, as required by Rule 10b-10 (17 C.F.R. § 240.10b-10), promulgated under Section 10(b) of the Exchange Act.

131.    WMFS and its Salesmen knew of the limitation on broker commissions found in NASD Rule 2830(e), yet accepted the Advisor Paid Fee.

132.    The WAMU Advisor and WAMU Distributor's payment of such remuneration created insurmountable and undisclosed conflicts of interest for WMFS and its Salesmen. Plaintiffs and members of the Class were thus ignorant of the source and amount of remuneration WMFS and its Salesman received from the WAMU Advisor and WAMU Distributor and of the resulting conflicts of interest therein. Had Plaintiffs and members of the Class known of the source and amount of such remuneration and the resulting conflicts of interest, they would not have held, purchased or otherwise acquired shares of the WAMU Funds, and would not have paid any loads, commissions or fees paid as a result of their acquisitions of the WAMU Funds, and would not have paid the fees or costs associated with ownership of the WAMU Funds.

133.    As a direct and proximate result of WMFS's violations of Rule 10b-10, Plaintiffs and members of the Class suffered damages in connection with their respective purchases and/or sales of the WAMU Funds shares before, at least March 1, 2005.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

134.    At the time they purchased and/or sold the WAMU Funds shares traceable to the defective disclosures, Class members were without knowledge of the facts concerning the material false and misleading statements and omissions alleged herein and could not reasonably have possessed such knowledge.

135.    This claim was brought within the applicable statute of limitations.

## COUNT VI
### Against WAMU, Inc., the WAMU Advisor, WAMU Distributor for Violations of Section 20(a) of the Exchange Act

136.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

137.    This claim is brought pursuant to Section 20(a) of the Exchange Act (15 U.S.C. § 78t), against WAMU, Inc. as a control person of the Registrants and WMFS, and against the WAMU Advisor and WAMU Distributor as control persons of the Registrants. It is appropriate to treat these defendants as a group for pleading purposes and presume that the false, misleading, and incomplete information complained about herein are the collective actions of the Registrants, WMFS, the WAMU Advisor, WAMU Distributor, and WAMU, Inc.

138.    The Registrants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) by their acts, material false and misleading statements and omissions as alleged in this complaint. By virtue of their positions as controlling persons, WAMU, Inc. is liable pursuant to Section 20(a) of the Exchange Act.

139.    WMFS violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-10 (17 C.F.R. § 240.10b-10) by failing to disclose the source and amount of remuneration WMFS and its Salesmen received from the WAMU Advisor and WAMU Distributor in connection with Class members' purchases of the WAMU Funds, as alleged above. By virtue of their positions as controlling persons, WAMU, Inc., the WAMU Advisor, and WAMU Distributor are liable pursuant to Section 20(a) of the Exchange Act.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

140.    WAMU, Inc., the WAMU Advisor, and WAMU Distributor were "control persons" of the Registrants and WMFS within the meaning of Section 20 of the Exchange Act, by virtue of their positions of operational control and/or complete stock ownership in the Registrants and WMFS. At the time that the Registrants issued the Prospectuses, and separately, at the time WMFS sold one or more shares of the WAMU Funds to Plaintiffs and the Class – by virtue of their positions of control and authority over the Registrants and WMFS – WAMU, Inc., the WAMU Advisor, and WAMU Distributor directly and indirectly, had the power, authority, influence and control, and exercised same, over the decision making and actions of the Registrants and WMFS to engage in the wrongful conduct complained of herein. WAMU, Inc., the WAMU Advisor, and WAMU Distributor  had the ability to prevent the issuance of the statements alleged to be false and misleading registration statements or could have caused such statements to be corrected.

141.    In particular, WAMU, Inc., the WAMU Advisor, and WAMU Distributor had direct supervisory involvement in the operations of the Registrants and WMFS, and are presumed to have had the power to control or influence the particular acts, misleading statements, and omissions giving rise to violations of the Exchange Act as alleged herein, and to have exercised same.

142.    As a direct and proximate result of WAMU, Inc., the WAMU Advisor, and WAMU Distributor's wrongful conduct, Plaintiffs and the Class suffered damages in connection with their purchases and/or sales of the WAMU Funds during the Class Period.

### **JURY TRIAL DEMAND**

143.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

### **PRAYER**

WHEREFORE, Plaintiffs and the Class pray for relief and judgement as follows:

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 39
Case No.

010074-11 258370 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1         1.       Judgment declaring that this action is properly maintained as a class action and

2 certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil

3 Procedure;

4         2.       Awarding compensatory damages in favor of Plaintiffs and the Class against

5 all defendants, jointly and severally, for all damages sustained as a result of defendants'

6 wrongdoing, in an amount to be proven at trial, including interest thereon;

7         3.       Awarding Plaintiffs and the Class recision of their contracts with the

8 defendants, including recovery of all fees which would otherwise apply and recovery of all fees

9 paid to the defendants pursuant to such agreements;

10         4.       Awarding Plaintiffs and the Class their reasonable costs and expenses incurred

11 in this action, including counsel fees and expert fees; and

12         5.       Such other and further relief as this Court may deem just and proper.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 40
Case No.

010074-11 258370 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    DATED: August 20, 2008      By: _____

2
                  Steve W. Berman
3            HAGENS BERMAN SOBOL SHAPIRO LLP
            1301 Fifth Avenue, Suite 2900
4            Seattle, Washington 98101
            Telephone:  (206) 623-7292
5            Facsimile:  (206) 624-0594

6            FINKELSTEIN & KRINSK LLP
            JEFFREY R. KRINSK
7            MARK L. KNUTSON
            WILLIAM R. RESTIS
8            501 West Broadway, Suite 1250
9            San Diego, CA  92101-3593
            Telephone:  (619) 238-1333
10           Facsimile:  (619) 238-5425
            Email: jrk@classactionlaw.com
11

12           Attorneys for Plaintiffs
            Lynne Poliquin as attorney in fact for
13           June Robinson

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS  - 41
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010074-11  258370 V1

## FINKELSTEIN & KRINSK LLP

### WM GROUP OF FUNDS

### CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

I, Lynne Poliquin, as attorney in fact for June Robinson ("Plaintiffs"), declare as to the claims asserted under the federal securities laws, that I have reviewed the Complaint and authorized its filing.

1.    Plaintiffs did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

2.    Plaintiffs are willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

3.    Plaintiffs' transactions in the securities that are the subject of this action during the Class Period are, at least, as follows:

| Fund Series | Quantity Purchased/(Sold) | Amount | Date |
|---|---|---|---|
| WM Tax Exempt Bond (CMTEX) | 3045.067 | $25,000.00 | 7/5/2005 |
| CMTEX | (3045.067) | $23,873.33 | 9/1/2005 |
| CMTEX | 2518.703 | $20,200.00 | 11/1/2005 |
| CMTEX | 635.91 | $5,100.00 | 11/25/2005 |

*If more purchases and/or sales were made, please attach a separate sheet of paper.*

4.    Plaintiffs have not sought to serve or served as representative parties for a class in a class action filed under the Securities Exchange Act of 1934 or Securities Act of 1933 within the last three years.

5.    Plaintiffs will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs' *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty or perjury that the foregoing is true and correct. Executed this 20th day of August, 2008, at _Indio_____, California.

_June Robinson by Lynne Poliquin, her attorney-in-fact_
Lynne Poliquin as attorney in fact for
June Robinson