HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUNE ROBINSON, by her attorney in fact,
LYNNE POLIQUIN, Individually and on
Behalf of all Others Similarly Situated,

                       Plaintiffs,

    v.

WM TRUST I, WM TRUST II, WM
STRATEGIC ASSET MANAGEMENT
PORTFOLIOS, LLC, WM ADVISORS, INC.,
WM FUNDS DISTRIBUTOR, INC.,
WILLIAM G. PAPESH, DANIEL L.
PAVELICH, RICHARD C. YANCY,
KRISTIANNE BLAKE, EDGE ASSET
MANAGEMENT, INC., PRINCIPAL
FINANCIAL GROUP, INC., PRINCIPAL
INVESTORS FUND, INC., PRINCIPAL
FUNDS DISTRIBUTOR, INC.,

                       Defendants.

No. C-08-1251 MJP

FIRST AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS

**JURY TRIAL DEMANDED**

    Plaintiff Lynne Poliquin as attorney in fact for June Robinson ("Plaintiffs"), by and

through counsel, allege the following based upon the investigation of counsel, which included,

inter alia, a review of United States Securities and Exchange Commission ("SEC") filings, other

regulatory filings, reports, and advisories, press releases, media reports, and about Principal

Financial Group, Inc. ("Principal") and its related entities also named herein as defendants.



1  Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set

2  forth herein after a reasonable opportunity for discovery.

3  ## I.    INTRODUCTION

4  1.    This is a federal class action that seeks to recover damages under the Securities

5  Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange

6  Act")[1] for defendants' failure to disclose payments by the WM Group of Funds'[2] investment

7  advisor to broker/dealers selling the WM Group of Funds' (the "WM Funds") as required by law.

8  Such undisclosed payments were part of a comprehensive "steering" program devised by

9  defendants' highest management that was intended to, and did, compromise the objectivity of

10  broker/dealers in their dealing with customers and created insurmountable, undisclosed conflicts

11  of interest.

12  2.    Defendants WM Trust I, WM Trust II, and WM Strategic Asset Management

13  Portfolios, LLC (collectively the "Registrants") are the issuers of the WM Funds.  Each year

14  during the relevant time period, the Registrants jointly filed a registration statement with the SEC

15  that failed to disclose the above payments and resulting conflicts of interest.

16

17

18  [1] Plaintiffs allege violations of Section 11 of the Securities Act (15 U.S.C. § 77k, *material misrepresentation or omission in registration statement*) against the Registrants and Principal

19  Investors Fund; Section 12(a) of the Securities Act (15 U.S.C. § 77l, *untrue statement or omission in prospectus*) against the Registrants, the WM Distributor, and Principal Defendants;

20  and Section 15 of the Securities Act (15 U.S.C. §  77o, *control person liability Securities Act*) against WM Advisor, Papesh, Pavelich, Yancey, and Blake.  Plaintiffs also allege violations of

21  Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5, *manipulative / deceptive artifice to defraud - false / misleading statement*) by the Registrants and

22  Principal Investors Fund; and violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t, *control person liability Exchange Act*), by the WM Advisor, WM Distributor, Papesh, Pavelich,

23  Yancey, and Blake.

24  [2] The WM Funds, as described in this complaint are: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap

25  Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal,

26  Growth, International Growth, Small Cap Growth, Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 2
Case No. 08-cv-1251-MJP

010074-11  264817 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

3.       Each month during the relevant time period, Plaintiffs and the Class[3] paid "management fees" that were debited from their investment principal in the WM Funds to the Funds' investment advisor, defendant WM Advisors, Inc. (the "WM Advisor").  Such "management fees" were ostensibly to compensate the WM Advisor for its expertise in making investment decisions for the WM Funds, and provide value to Plaintiffs and the Class by increasing investment returns. Undisclosed to Plaintiffs and the Class, from at least March 1, 2002 through December 31, 2006, greater than fifty percent of such "management fees" were then diverted from the WM Advisor to all broker/dealers (*i.e.*, "Brokers") to sell those WM Funds most profitable to the Advisor.

4.       The WM Advisor annually paid each respective Broker an undisclosed "Advisor Paid Fee" calculated as 75 basis points (0.75 percent) of such WM Funds' assets sold/managed by the particular Broker. Specifically, each Broker was paid 75 basis points ("BP") of such WM Fund assets sold in a particular year, plus a 75 BP residual commission of the *market value of* all such WM Fund assets sold in previous years.  The Advisor Paid Fee was paid to Brokers *in addition to* and *separate from* an ongoing 25 BP Rule 12b-1[4] commission. The resulting incentive was enormous and created undisclosed material conflicts of interest for the Registrants, the WM Advisor, and Brokers selling the WM Funds.

5.       The existence of the Advisor Paid Fee was highly material. For example, in fiscal year 2004 alone, the WM Advisor paid Brokers approximately $67,000,000 in Advisor Paid Fees for which Plaintiffs and the Class received no benefit.  If not improperly deducted from the WM

---

[3] As detailed in paragraph 94 of this Complaint, the Class is defined as: All persons or entities that purchased or otherwise acquired shares, units or like interests in any of the WM Funds (including through the reinvestment of Fund dividends), between March 1, 2002, through December 31, 2006, inclusive.

[4] A "12b-1 fee" is an extra fee charged mutual fund investors for marketing and selling fund shares, including compensating brokers and paying for advertising. 12b-1 fees are authorized by SEC Rule 12b-1, which provides that an investment company may "engage[] directly or indirectly in financing any activity which is primarily intended to result in the sale of shares" **only** pursuant to a Rule 12b-1 plan. 17 C.F.R. § 270.12b-1.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 3
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    Funds, the money representing the Advisor Paid Fee would have remained in the WM Funds'

2    respective investment pools to grow and compound over time.  Regardless of whether the WM

3    Funds increased or decreased in value, Plaintiffs and the Class' investment principal was

4    continuously drained to pay conflicted Brokers the Advisor Paid Fee.

5          6.      The Registrants' deceived Plaintiffs and the Class into believing that the

6    "management fees" paid to the WM Advisor were for actual investment advice or similar

7    valuable services.  In fact, such fees were merely a cover to funnel the Advisor Paid Fees to

8    incurably biased Brokers.  Absent the hundreds of millions of dollars in Advisor Paid Fees,

9    Plaintiffs and the Class' total amount of "management fees" deducted from their investment, and

10   thus the resulting diminution of the WM Funds' Net Asset Value ("NAV"), would have been

11   substantially less.

12         7.      In addition to the Advisor Paid Fee, the Registrants' relevant Prospectuses and

13   statements of additional information ("SAI") failed to disclose that the WM Advisor and/or

14   defendant WM Funds Distributor, Inc. (the "WM Distributor") paid Brokers to place the WM

15   Funds on "preferred list(s)" of mutual funds.  These "preferred list(s)" caused Brokers to

16   principally recommend to clients only those "preferred" funds, regardless of their

17   appropriateness or the availability of superior alternatives.

18         8.      The undisclosed Advisor Paid Fee and "preferred list(s)" (jointly the "Steering

19   Programs") caused Brokers to give predetermined, biased recommendations to the detriment of

20   Plaintiffs and the Class. The Registrants' hid the existence and true nature of the Steering

21   Programs, knowing that if the truth were revealed, no reasonable investor would invest in the

22   WM Funds.

23         9.      While promoting the WM Funds to Plaintiffs and the Class, Brokers benefitting

24   from the Steering Programs represented them as being better than other funds available.

25   Plaintiffs and the Class were led to believe that Brokers were recommending the WM Funds

26   based on objective criteria indicating that such Funds would perform better than other investment

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 4
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  alternatives. However, Brokers' advice and services relative to the WM Funds was neither

2  objective nor its basis properly disclosed.

3      10.    The Registrants' annual Prospectuses effective March 1, 2002 through December

4  31, 2006[5] failed to disclose that "management fees" deducted from all WM Funds were used to

5  pay Brokers the Advisor Paid Fee.  The Registrants' Prospectuses effective March 1, 2002

6  through December 31, 2006 also failed to disclose that "preferred lists" existed and were

7  similarly used to steer Plaintiffs and the Class into the WM Funds.  The relevant Prospectuses

8  provided inadequate, fragmentary and incomplete disclosure, representing only that unspecified

9  compensation "may," "from time to time" be made to Brokers.  In truth, the WM Advisor and

10  Distributor had *already* entered into formulated, specific, negotiated arrangements with Brokers

11  providing for payment of the Advisor Paid Fee and use of "preferred list(s)" that dated back to, at

12  least, the year 2000.

13      11.    Defendants' practices as described herein were particularly egregious given the

14  nature of clients that were defrauded.  A typical mutual fund investor is an unmarried, middle-

15  class individual in his or her forties with a median household income of $55,000.  Approximately

16  98% of mutual fund shareholders state their investments constitute their long-term savings and

17  about 77% cite retirement savings as their primary financial goal.[6]  **A 1% annual fee, by way of**

18  **example, reduces an ending account balance by 17% on an investment held for 20 years**.[7]

19  The Registrants duty to state *all* facts necessary to make their affirmative statements not

20  misleading was accordingly all the more compelling because the mutual fund market requires

21  very clear disclosure understandable to the layman.

---

22

23  [5] The relevant prospectuses had effective dates of March 1, 2002; March 1, 2003; March 1, 2004, March 1, 2005, and March 1, 2006 (collectively the "Prospectuses").

24  [6] David J. Carter, *Mutual Fund Board and Shareholder Action*, 3 VILL. J. & INV. MGM'T at 8.

25  [7] *Testimony of Arthur Levitt, Chairman U.S. Securities and Exchange Commission, before House Subcommittee on Finance and Hazardous Materials, Committee on Commerce, Concerning Transparency in the United States Debt Market and Mutual Fund Fees and Expenses,* Sept. 29, 1998,  available at 1998 WL 717068 at 7.

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 5
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    12.    The SEC has long recognized that partial or non-disclosure of incentive

2    arrangements with Brokers for the sale of select mutual funds create conflicts of interest and

3    violate the anti-fraud provisions of the federal securities laws.[8]  The Deputy Director of the

4    SEC's Division of Enforcement recently stated that "undisclosed receipt of revenue sharing

5    payments from a select group of mutual fund families create[s] a conflict of interest.  When

6    customers purchase mutual funds, they should be told about the *full nature and extent* of any

7    conflict of interest that may affect the transaction."[9]  (Emphasis added.)

8                    **II.    SUBSTANTIVE ALLEGATIONS**

9    **A.    Rule 12b-1 Plans**

10    13.    Section 12(b) of the Investment Company Act of 1940 (the "1940 Act") outlawed

11    open-ended investment companies such as the Registrants from acting as their own broker-

12    dealers, but authorized the SEC to prescribe rules and regulations governing the circumstances

13    mutual funds may bear the expenses of selling, marketing and advertising shares. 15 U.S.C.

14    § 80a-12(b). By 1980, the mutual fund industry prevailed on the SEC to make an important

15    exception to this restriction, found in SEC Rule 12b-1. 17 C.F.R. § 270.12b-1.

16    14.    Rule 12b-1 reflected a sharp change in SEC policy by permitting mutual funds to

17    bear distribution-related expenses under *limited circumstances* provided certain conditions are

18    met.  The requirements of the Rule are triggered whenever a mutual fund engages in financing

19    "any activity which is primarily intended to result in the sale" of its shares, including

20    "advertising, **compensation of** underwriters, **dealers, and sales personnel**, the printing and

21    mailing of prospectuses to other than current shareholders, and the printing and mailing of sales

22    literature."  17 C.F.R. § 270.12b-1(a)(2) (emphasis added).

---

23    [8] *See* Confirmation Requirements and Point of Sale Disclosure Requirements for
24    Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation
      Requirement Amendments, and Amendments to the Registration Form for Mutual Funds, 69
25    Fed.Reg. 6438, at 6440 (Feb. 10, 2004).

26    [9] SEC Press Release, Edward Jones to Pay $75 Million to Settle Revenue Sharing Charges, at
      http://www.sec.gov/news/press/2004-177.htm.

15.    Rule 12b-1 allows distribution related expenses, *i.e.,* payments to Brokers, only pursuant to a "12b-1 Plan." Any other payments to Brokers are outlawed by Section 12(b) of the 1940 Act. The 12b-1 Plan must be written, and describe "all material aspects of the proposed financing and distribution" of the mutual fund's shares. 17 C.F.R. § 270.12b-1(b). Such Plan must be approved by a majority of the fund's board of directors, including a majority of the disinterested directors. *Id.* at § 270.12b-1(b), (c). The Plan must also be approved by a majority of the fund's outstanding voting shares. *Id.* The plan may be implemented or continued "only if the directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b)(15 U.S.C. 80a-35 (a) and (b)) of the [1940] Act, that there is a reasonable likelihood that the plan will benefit the company and its shareholders." *Id.* at § 270.12b-1(e).

16.    SEC Form N1-A sets forth the requirements for information that must be contained in offering prospectuses and statements of additional information. Form N1-A requires mutual fund companies to disclose in their prospectuses all fees paid pursuant to 12b-1 Plans, including a description of all principal activities for which payments are made, and an itemized list of amounts paid to Brokers. Form N1-A requires additional 12b-1 data to be supplied in a fund's SAI. Copies of 12b-1 Plans must be exhibits to the registration statements.

17.    Although Rule 12b-1 does not limit the amount that a fund's shareholders may be charged under such a plan, the National Association of Securities Dealers ("NASD", now the Financial Industry Regulatory Authority "FINRA") has limited Rule 12b-1 fees to a maximum of **one quarter of 1%** of a fund's average daily net assets per year. NASD Rule 2830(d)(5).

**B.    The Registrants' 12b-1 Plan**

18.    The Registrants enacted a 12b-1 Plan that continued from year to year. During the relevant time period, the Registrants' ratified the Plan on March 6, 2001, filed as an exhibit to the Registrants' December 28, 2001 registration statement, and again on February 20, 2003 as exhibit to the March 1, 2003 WM Funds' registration statement.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 7
Case No. 08-cv-1251-MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

19.     Pursuant to the 12b-1 Plan, the Registrants charged "12b-1 fees" against the assets of all WM Funds. The amount and purpose of such 12b-1 fees were listed in the WM Funds' Prospectuses and SAIs during all relevant times.

20.     Pursuant to the Registrants' 12b-1 Plan, the WM Distributor paid Brokers a 25 BP, 12b-1 commission (the *maximum allowed* by NASD Rule 2830(d)(5)) on all sales of the WM Funds, as well as a 25 BP residual 12b-1 commission on all past sales.

**C.     The Advisor Paid Fee**

21.     In addition to "12b-1 fees", Plaintiff and the Class had "management fees" and separately, "other expenses" charged against their interests in the WM Funds. However, neither the Registrants, nor the WM Advisor or Distributor could use such "management fees" or "other expenses" for compensation to Brokers without being in violation of Section 12(b) of the 1940 Act, because such fees were not within the scope of the Registrants' 12b-1 Plan. In addition, since the Registrants 12b-1 commissions to Brokers were already 25BP, no additional compensation could be paid to Brokers without being in violation of NASD Rule 2830(k).

22.     However, as detailed below, the Registrants, with material assistance from the WM Advisor and/or Distributor sought to, and did, circumvent the limitations of Section 12(b) of the 1940 Act, and Rule 12b-1 promulgated thereunder, by making payments to Brokers of 75 BP, *in addition to* and *separate* from the Registrants' 12b-1 Plan.

23.     During the relevant time period there were 24 WM Funds issued by the Registrants pursuant to joint Prospectuses. Registrants WM Trust I and WM Trust II issued 19 of the 24 WM Funds;[10]  Registrant WM Portfolio issued the remaining five (a subset of the WM

_____

[10] The 19 WM Funds issued by WM Trust I and WM Trust II are: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth, International Growth, Small Cap Growth.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 8
Case No. 08-cv-1251-MJP

010074-11  264817 V1

1 Funds denominated herein the "WM Portfolio Funds").[11]  The WM Portfolio Funds invest

2 exclusively in securities of the other 19 WM Funds. Mutual funds that invest in other mutual

3 funds are commonly called "fund-of-funds".

4     24.    Because the WM Portfolio Funds invest directly in other WM Funds, the WM

5 Advisor is essentially paid twice to do the same investment management. Specifically, the

6 Portfolio Funds' shareholders directly pay "management fees" (and other fees) to the WM

7 Advisor, and indirectly pay "management fees" against the underlying WM Funds comprising

8 the Portfolio. For the WM Portfolio Funds, the WM Advisor is permitted to "double-dip" on

9 fees, and investment in Portfolio Fund shares correspondingly increases investment in all WM

10 Funds.

11     25.    The WM Advisor paid the undisclosed 75BP Advisor Paid Fee to Brokers as

12 described above for selling WM *Portfolio* Funds because such Funds generated the most profit

13 for the WM Advisor, Distributor and ultimately, control person defendant WM Inc. However,

14 the Portfolio Funds paid *65* BP to the WM Advisor in "management fees", 10BP *less* than the

15 Advisor Paid Fee. In essence, the WM Advisor improperly inflated its "management fees" for *all*

16 WM Funds as a scheme to channel investors into the WM Portfolio Funds, increase assets under

17 management, and therefore increase fee income. Plaintiffs and the Class all paid inflated

18 "management fees" to the Advisor, and received nothing for their money.

19     26.    Payment of the Advisor Paid Fee was not made pursuant to the Registrants'

20 March 6, 2001, or February 20, 2003 12b-1 Plan even though such Advisor Paid Fee fell within

21 the scope of Rule 12b-1. In addition, payment of the Advisor Paid Fee was not "approved by a

22 vote of at least a majority of the outstanding voting securities" of the WM Funds. *See* 17 C.F.R.

23 § 270.12b-1(b)(1). **In short, the Advisor Paid Fee was illegal under Section 12(b) of the 1940**

24 **Act.**

25 _____

26     [11] The five WM Portfolio Funds issued by WM Portfolio are: Strategic Growth, Conservative
Growth, Balanced, Conservative Balanced, and Flexible Income.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 9
Case No. 08-cv-1251-MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

27.    The WM Advisor is responsible for formulating the WM Funds' investment policies, analyzing economic trends, monitoring each WM Fund's investment performance and reporting to the Registrants' common Board of Trustees. The Registrants authorized the WM Advisor to debit "management fees" from WM Funds assets, ostensibly for managing the day-to-day investment decisions of the WM Funds. However, the WM Advisor was merely a conduit for passing the preponderant part of such "management fees" to Brokers.

28.    The WM Advisor owes fiduciary duties to Plaintiffs and the Class concerning the receipt of compensation from the WM Funds. This fiduciary duty requires, at least, that the WM Advisor not charge "management fees" to create a kickback slushfund that compromises Brokers' investment advice.

29.    Plaintiffs and each of the Class members purchased shares or other ownership units in the WM Funds pursuant to a registration statement and Prospectus. The registration statements and Prospectuses pursuant to which Plaintiffs and the other Class members purchased their shares or other ownership units in the WM Funds had effective dates of: March 1, 2002, March 1, 2003, March 1, 2004, March 1, 2005, and/or March 1, 2006.

**D.    Misleading Statements and Omissions**

30.    Prospectuses and their Statements of Additional Information ("SAI's) are required to disclose <u>all</u> material facts in order to provide investors with information that will assist them in making an informed decision about whether to invest in a mutual fund. The law requires that such disclosures be in straightforward and easy to understand language such that it is readily comprehensible to the average investor.

31.    In the March 1, 2002 and March 1, 2003 WM Funds Prospectuses, the Registrants made the following materially false and misleading statements:

> The Distributor <u>may</u>, <u>from time to time</u>, pay to other dealers, in connection with retail sales or the distribution of shares of a Portfolio or Fund, material compensation in the form of merchandise or trips. Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual),

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS - 10
Case No. 08-cv-1251-MJP

010074-11 264817 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

and any other person entitled to receive any compensation for selling or servicing Portfolio or Fund shares may receive different compensation with respect to one particular class of shares over another, and **may receive** **additional compensation or other incentives for selling Portfolio or Fund shares**.

(Emphasis added.)

32.    Plaintiffs and/or members of the Class were entitled to and did receive the Registrants' March 1, 2002 and March 1, 2003 Prospectuses, each of which failed to disclose the following material facts:

a.    The Registrants, the WM Advisor and WM Distributor had adopted the Steering Programs to incent Brokers to aggressively push the WM Funds on unsuspecting investors;

b.    the Steering Programs described herein created insurmountable <u>conflicts of interest</u> between Registrants, the WM Advisor and WM Distributor and Brokers;

c.    Brokers <u>in fact</u> received 75BP payments in the form of Advisor Paid Fees, and fees for placing the WM Funds on "preferred lists";

d.    the Advisor Paid Fee was paid not only when Brokers made an initial sale of the WM Portfolio Funds, but was paid every year as a residual commission on past sales as well;

e.    the "management fees" paid out of all WM Funds to the WM Advisor were the source of the Advisor Paid Fee;

f.    the Advisor Paid Fee was **illegal** under Section 12(b) of the 1940 Act because not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

g.    the Advisor Paid Fee was *three times* the allowable commission to Brokers under NASD Rule 2830(d)(5), and was in addition to the maximum 25 BP 12b-1 commission paid to Brokers;

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 11
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    h.  Brokers selling the WM Funds were <u>in fact</u> paid valuable consideration for

2 placing the WM Funds on "preferred lists";

3    i.  Brokers selling the WM funds were <u>in fact</u> paid valuable compensation

4 tied to the length of time Plaintiffs and the Class hold their WM Funds;

5    j.  the Steering Programs created undisclosed incentives to push shares or

6 other ownership units of the WM Funds to the exclusion of other investment alternatives;

7    k.  the only investment advantage associated with WM Funds was almost

8 always an advantage to the Registrants, the WM Advisor, WM Distributor and Brokers, all at the

9 expense of Plaintiffs and the Class; and

10    l.  pursuant to the wrongful Steering Programs described herein, defendants

11 benefitted financially at the expense of Plaintiffs and members of the Class.

12   33.  In the March 1, 2002, and March 1, 2003 WM Funds' Statement of Additional

13 Information, filed with the registration statement containing the March 1, 2002, and March 1,

14 2003 WM Funds' Prospectuses, the Registrants made the following materially false and

15 misleading statements:

16
    In **determining to approve the most recent annual extension of the Trusts' investment advisory agreement with the Advisor (the "Advisory Agreement") ... the Trustees met over the course of the Trusts' last fiscal year with the relevant investment advisory personnel and considered information** provided by the Advisor and the Sub-advisors relating to the education, experience and number of investment professionals and other personnel providing services under the Advisory Agreement and each Sub-advisory Agreement.

21           * * *

22
    The Trustees evaluated the records of the Advisor and Sub-advisors with respect to regulatory compliance and compliance with the investment policies of the Portfolios and Funds. **The Trustees also evaluated the procedures of the Advisor and each Sub-advisor designed to fulfill their fiduciary duties to the Portfolios and Funds with respect to possible conflicts of interest, including the codes of ethics of the Advisor** and each of the Sub-advisors (regulating the personal trading of its officers and employees (see "Codes of Ethics" above under "Management"))

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 12
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1   the procedures by which the Advisor allocates trades among its
2   various investment advisory clients, **the integrity of the systems
    in place to ensure compliance with the foregoing and the
3   record of the Adviser and the Sub-advisors in these matters**.

4                              * * *

5   **Based on the foregoing, the Trustees concluded that the fees to
    be paid the Advisor and the Sub-advisors under the Advisory
6   Agreement and each Sub-advisory Agreement were fair and
    reasonable**, given the scope and quality of the services rendered
    by the Advisor and the Sub-advisors.

7       34.    Plaintiffs and/or members of the Class were entitled to and did receive the

8   Registrants' March 1, 2002, and March 1, 2003 Prospectuses, each of which failed to disclose

9   the following material facts:

10          a.    The WM Advisor had material conflicts of interest with Plaintiffs and the

11  Class as to its receipt of "management fees" because such fees were used to fund the Advisor

12  Paid Fee;

13          b.    The Registrants' "evaluat[ion] of the procedures of the Advisor ...designed

14  to fulfill their fiduciary duties to the Portfolios and Funds with respect to possible conflicts of

15  interest" was inadequate, non-existent and/or contrived;

16          c.    The "fees paid to the Advisor ... under the Advisory agreement" were not

17  fair nor reasonable because such fees were materially inflated due to the Advisor's payment of

18  the illegal Advisor Paid Fee.

19      35.    In the March 1, 2004 WM Funds SAI, the Registrants made statements identical

20  to those described in paragraph 33 above, which were materially false and misleading because

21  they omitted the material facts described in paragraph 34 above. Plaintiffs and members of the

22  Class were entitled to and did receive the Registrants' March 1, 2004 WM Funds SAI.

23      36.    In the March 1, 2004 WM Funds Prospectus, the Registrants made the following

24  materially false and misleading statements:

25

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 13
Case No. 08-cv-1251-MJP

010074-11 264817 V1

**WM Advisors <u>may</u> make payments, <u>at its expense</u>, to dealers or other financial intermediaries at an annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios.**[ ¶ ]

The Distributor, <u>at its expense</u>, <u>may</u> provide additional compensation to dealers. These payments <u>generally</u> represent a percentage of a qualifying dealer's sales and/or the value of shares of the Portfolios or Funds within a qualifying dealer's client accounts. ... [¶]

Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person entitled to receive any compensation for selling or servicing Portfolio or Fund shares ... **<u>may</u> receive additional compensation or other incentives for selling Portfolio or Fund shares**. (Emphasis added.)

37.     Plaintiffs and/or members of the Class were entitled to and did receive the Registrants' March 1, 2004 Prospectus, which failed to disclose the following material facts:

a.     the Registrants, the WM Advisor and WM Distributor had adopted the Steering Programs to incent Brokers to aggressively push the WM Funds on unsuspecting investors;

b.     the Steering Programs described herein created insurmountable <u>conflicts of interest</u> between Registrants, the WM Advisor, WM Distributor and Brokers;

c.     the statement that Brokers received "up to 0.50% of the average daily net assets of shares of the Portfolios" was <u>false</u> as Brokers received **75BP** (0.75%) payments in the form of Advisor Paid Fees;

d.     the Advisor Paid Fee was paid not only when Brokers made an initial sale of the WM Portfolio Funds, but was paid every year as a residual commission on past sales as well;

e.     the "management fees" paid out of all WM Funds to the WM Advisor were the source of the Advisor Paid Fee;

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 14
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1      f.      the Advisor Paid Fee was **illegal** under Section 12(b) of the 1940 Act

2  because not authorized or paid for pursuant to the Registrants 12b-1 Plan (17 C.F.R. § 270.12b-

3  1);

4      g.      the Advisor Paid Fee was ***three times*** the allowable commission to

5  Brokers under NASD Rule 2830(d)(5)), and was in addition to the maximum 25 BP 12b-1

6  commission paid to Brokers;

7      h.      Brokers selling the WM Funds were <u>in fact</u> paid valuable consideration for

8  placing the WM Funds on "preferred lists";

9      i.      Brokers selling the WM funds were <u>in fact</u> paid valuable compensation

10  tied to the length of time Plaintiffs and the Class hold their WM Funds;

11      j.      the Steering Programs created undisclosed incentives to push shares or

12  other ownership units of the WM Funds to the exclusion of other investment alternatives;

13      k.      the only investment advantage associated with WM Funds was almost

14  always an advantage to the Registrants, the WM Advisor, WM Distributor and Brokers, all at the

15  expense of Plaintiffs and the Class; and

16      l.      pursuant to the wrongful Steering Programs described herein, defendants

17  benefitted financially at the expense of Plaintiffs and members of the Class.

18      38.     The disclosures above lead a reasonable investor to believe, at best, that the

19  Steering Programs *may* or *may not* exist, when in truth, the WM Advisor and/or WM Distributor

20  had *already* entered into pre-determined, specific, and negotiated arrangements with Brokers to

21  steer Plaintiffs and the Class into the WM Funds pursuant to the Advisor Paid Fee and "preferred

22  list(s)" in effect since at least the year 2000. The Registrants had the duty to state *all* facts that

23  were necessary to make their affirmative statements not misleading.

24      39.     The Registrants' March 1, 2005 prospectus filed with the SEC was unlike

25  previous years. The Registrants' March, 1, 2005 registration contained separate prospectuses for

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 15
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  the WM Portfolio Funds and other 19 WM Funds. The March 1, 2005 WM *Portfolio* Funds'

2  Prospectus stated:

> OTHER PAYMENTS TO INTERMEDIARIES. WM ADVISORS
> ALSO OFFERS <u>REVENUE SHARING PAYMENTS</u>,
> REFERRED TO AS "ADVISOR PAID FEES" TO ALL
> FINANCIAL INTERMEDIARIES WITH ACTIVE SELLING
> AGREEMENTS WITH THE DISTRIBUTOR. THE ADVISOR
> PAID FEES ARE PAID AT AN ANNUAL RATE OF <u>UP TO</u>
> <u>0.50%</u> OF THE AVERAGE NET ASSETS OF CLASS A AND
> CLASS B SHARES OF THE PORTFOLIOS SERVICED BY
> SUCH INTERMEDIARIES AND AN ANNUAL RATE OF UP
> TO 0.25% OF THE AVERAGE NET ASSETS OF CLASS C
> SHARES OF THE PORTFOLIOS SERVICED THROUGH
> SUCH INTERMEDIARIES. THESE PAYMENTS ARE <u>MADE</u>
> <u>FROM WM ADVISORS' PROFITS</u> AND <u>MAY</u> BE PASSED ON
> TO YOUR INVESTMENT REPRESENTATIVE AT THE
> DISCRETION OF HIS OR HER FINANCIAL INTERMEDIARY
> FIRM. THESE PAYMENTS <u>MAY</u> CREATE AN INCENTIVE
> FOR THE FINANCIAL INTERMEDIARIES AND/OR
> INVESTMENT REPRESENTATIVES TO RECOMMEND OR
> OFFER SHARES OF THE PORTFOLIOS OVER OTHER
> INVESTMENT ALTERNATIVES.

> ... In some cases, financial intermediaries will include the WM
> Group of Funds on a "preferred list." The Distributor's goals
> include making the Investment Representatives who interact with
> current and prospective investors and shareholders more
> knowledgeable about the WM Group of Funds so that they can
> provide suitable information and advice about the Portfolios and
> related investor services.

> IF ONE MUTUAL FUND SPONSOR MAKES GREATER
> DISTRIBUTION ASSISTANCE PAYMENTS THAN
> ANOTHER, YOUR INVESTMENT REPRESENTATIVE AND
> HIS OR HER FINANCIAL INTERMEDIARY <u>MAY</u> HAVE AN
> INCENTIVE TO RECOMMEND ONE FUND COMPLEX OVER
> ANOTHER. SIMILARLY, IF YOUR INVESTMENT
> REPRESENTATIVE OR HIS OR HER FINANCIAL
> INTERMEDIARY RECEIVES MORE DISTRIBUTION
> ASSISTANCE FOR ONE SHARE CLASS VERSUS ANOTHER,
> THEN THEY <u>MAY</u> HAVE AN INCENTIVE TO RECOMMEND
> THAT CLASS. (Emphasis added.)

40.    The Registrants' March 1, 2005 WM Funds registration statement did not contain

similar disclosures in the prospectus for the other 19 WM Funds issued by Registrants WM Trust

I and WM Trust II.  The registration statement failed to disclose the following material facts:



1        a.    the Advisor Paid Fee was not made from the WM Advisor's profits as the

2  inflated "management fees" paid out of **all** WM Funds were *actually* the source of the Advisor

3  Paid Fee;

4        b.    Brokers *actually* received 75 BP (not "UP TO 0.50%") in the form of

5  Advisor Paid Fee for sales of *all* WM Fund shares;

6        c.    the Steering Programs in fact created insurmountable conflicts of interest

7  between the Registrants, WM Advisor, WM Distributor and/or Brokers;

8        d.    The Advisor Paid Fee is **illegal** under Section 12(b) of the 1940 Act

9  because not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-

10  1);

11        e.    The Registrants did not amend their 12b-1 Plan to account for payment of

12  the Advisor Paid Fee;

13        f.    the Advisor Paid Fee was ***three times*** the allowable commission to

14  Brokers under NASD Rule 2830(d)(5)), and was in addition to the maximum 25 BP 12b-1

15  commission paid to Brokers;

16      41.    The Registrants' March 1, 2005 Portfolio Funds prospectus did not actually or

17  constructively put Plaintiffs or the Class on notice that the Registrants, the WM Advisor and

18  Distributor were *in the past* engaged in the Steering Programs, as purported "disclosures" prior

19  to March 1, 2005 were unclear and intended by the Registrants to be vague and ambiguous. The

20  March 1, 2005 *Portfolio* Funds prospectus in the March 1, 2005 registration statement made no

21  remedial disclosures of past activity, and contained no statement that its purported disclosures

22  applied retroactively to amend previous prospectuses, and Plaintiffs and the Class reasonably

23  believed that such purported disclosures represented a change in practice by the Registrants, the

24  WM Advisor and Distributor. In addition, the Registrants' March 1, 2005 prospectus for WM

25  Trust I and WM Trust II WM Funds did not have *any* disclosure relating to the Advisor Paid Fee

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 17
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  so as to alert shareholders of the 19 WM Funds issued by WM Trust I and WM Trust II that the

2  NAV of their funds was being depleted.

3      42.    The Registrants' registration statements after March 1, 2005, including the March

4  1, 2006 WM Funds registration statement, the Registrants made statements identical to those

5  described in paragraph 39 above, which were materially false and misleading because they

6  omitted, at least, the material facts described in paragraph 40 above. Plaintiffs and/or members of

7  the Class were entitled to and did receive the Registrants' March 1, 2006 WM Funds

8  Prospectus(es). The Registrants continued the Advisor Paid Fee until the sale of the WM Funds

9  (as well as the WM Advisor and WM Distributor) to the Principal Defendants. **However, while**

10 **the Advisor Paid Fee was discontinued for new sales, it was "grandfathered" to Brokers**

11 **with then existing arrangements to receive the Advisor Paid Fee.** Plaintiffs believe to be true

12 and believe there will be substantial evidentiary basis that the Principal Investors Fund continues

13 to pay such "grandfathered" Advisor Paid Fees for WM Fund Sales occurring up the WM Funds'

14 sale to the Principal Defendants.

15     43.    The Registrants, the WM Advisor and WM Distributor have not been the subject

16 of news reports concerning their Steering Programs, nor been publicly reprimanded by the SEC,

17 NASD/FINRA, or similar enforcement body for their concerted efforts to "steer" clients into the

18 WM Funds. Accordingly, Plaintiffs and members of the Class did not have actual or constructive

19 knowledge that the undisclosed activities complained of herein were taking place.

20     44.    The fact that the Advisor Paid Fee was 75 BP instead of the 50 BP as represented

21 by the Registrants in their March 1, 2005 and March 1, 2006 Prospectuses has never been

22 publicly disclosed by defendants. Plaintiffs (constructively) learned that the Advisor Paid Fee

23 was 75 BP when on or about December 20, 2007, as a result of ongoing investigation, Plaintiff's

24 counsel received a copy of a document distributed by defendant WM Distributor to Brokers

25 selling the WM Funds. The document, a true and correct copy of which is attached hereto as

26 Exhibit A, states that the Advisor Paid Fee was paid at "75 Bps. Total Fee Income." The

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 18
Case No. 08-cv-1251-MJP

010074-11 264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    document stated that it was "**For Broker/Dealer use only. Not for written or verbal**

2    **distribution to clients.**" Plaintiffs and the Class assert on information and belief that the

3    existence of amount of the Advisor Paid Fee uniformly was never disclosed to them by Brokers,

4    as intended by defendants herein.

5        45.    Plaintiffs are certain that, as the evidence develops, testimony from salespersons

6    at Brokers will confirm systematic inducements and rigid requirements that Salesmen neglect

7    their duties to clients, and instead sell proprietary products laden with excessive and improper

8    fees, commissions and other incentives.

9    **E.    Scienter Allegations**

10        46.    The Registrants, WM Advisor and Distributor, led by William Papesh, instituted

11    the Advisor Paid Fee and "preferred list(s)" in 1997. Thereafter, in the Registrants' March 1998

12    prospectus, the Registrants' stated that the WM Distributor "may" pay "additional compensation

13    or other incentives for selling [WM Fund] shares." As demonstrated above, the Registrants

14    utilized essentially identical language through 2003, with minimal additional detail in 2004 and

15    2005. The Registrants' purported "disclosures" were not drafted in the abstract, but were created

16    in response to the Steering Programs. The fact that the disclosures came after the Steering

17    Programs were put in place, and evolution of the purported disclosures over time demonstrate

18    that the Registrants intentionally sought to disclose as little information as possible about the

19    Steering Programs.

20        47.    The prohibitions on payments to Brokers by Section 12(b) of the 1940 Act, as

21    well as the limitations on legitimate payments contained in SEC Rule 12b-1 are common

22    knowledge in the mutual fund industry. The Registrants' knowledge and/or reckless disregard of

23    these limitations as they relate to the Advisor Paid Fee raises a strong inference of scienter.

24    Defendant Papesh requested in approximately late 2003 to early 2004 that Cerulli Associates, a

25    Boston based consultancy that undertakes strategic research projects for the financial services

26    industry, analyze the advisability and potential exposure resulting from the Advisor Paid Fee,

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 19
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

and Cerulli issued a report on its findings (the "Cerulli Report").  The Cerulli Report allegedly

concludes that the Advisor Paid Fee was highly problematic and should be discontinued

immediately. However Mr. Papesh allegedly refused for a considerable time to act on the

recommendations of the Cerulli Report or issue corrective disclosures concerning the Advisor

Paid Fee. The Cerulli Report was distributed, reviewed and discussed by, at least, defendant

Papesh, and several other of defendants' highest executives.

48.    The Registrants' false statements that the "Advisor[] may make payments ... at an

annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios", when the

Registrants' that such payment was actually 75 BP (0.75%), raises a strong inference of scienter.

49.    The fact that the Registrants have the Steering Program(s) in place indicates that

the Registrants know and believe such Programs drive and increase sales. By virtue of the

descriptions of the Steering Program(s) contained in purported disclosures after March 1, 2005,

defendants recognized the existence and nature of such Program(s) to be material to a reasonable

investor. By virtue of the existence of the Steering Program(s), the Registrants' directors knew

about the already in place Advisor Paid Fee and "preferred list(s)," but drafted, authorized and

thereafter left in place intentionally vague disclosures. The Steering Programs are not analogous

to a financial result the existence or significance of which can be overlooked at the time of initial

disclosure, but were instead a deliberate *marketing program* orchestrated and executed for the

purpose of driving sales and increasing the WM Fund Companies' revenue to the detriment of

Plaintiff and the Class. Defendants cannot seriously contend they did not know what was going

on when they crafted the relevant registration statements/prospectuses.

50.    The fact that the Registrants' false statements in the March 1, 2005 and 2006

Prospectuses, including *inter alia*, that WM Advisor and WM Distributor make payments "at its

expense", when in reality those payments were derived directly from Plaintiffs and the Class'

"management fees", and "other expenses", indicates that the Registrants' knew the programs

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  were improper and were attempting to limit their exposure for engaging in the Shelf-Space

2  Programs.

3        51.    The Registrants', the WM Advisor and WM Distributor reaped huge profits from

4  the Steering Programs and had an incentive to keep them secret. Increasing sales of the WM

5  Funds infused more assets and therefore more fees to the WM Advisor and WM Distributor in

6  the form of "management fees", loads, commissions, and 12b-1 fees.

7        52.    The Registrants partially disclosed, but did not cease, the Steering Programs only

8  after the illegal activities and scandals in the mutual fund industry were finally revealed to the

9  public in 2004. The Registrants took these actions in a transparent and belated attempt to "clean

10  up" their disclosures and minimize their potential liability. The Registrants therefore knew the

11  Steering Programs regarding WM Fund sales were wrong and improper. In light of this

12  conscious strategy, the failure to disclose the full extent of the Steering Programs even in the

13  March 1, 2005 registration statement (and after) raises a strong inference of scienter.

14        53.    While the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78)

15  establishes a safe harbor to protect individuals and companies giving investment advice, the safe

16  harbor does not apply here.  The safe harbor provision does not apply where defendants, as here,

17  knew at the time they were issuing statements that the statements contained false and misleading

18  information and thus lacked any reasonable basis for making them.

19  **F.**    **Damages Allegations**

20        54.    A mutual fund company is very different from a traditional corporation, in that a

21  mutual fund is a mere shell, a pool of assets consisting mostly of portfolio securities that belongs

22  to the individual investors holding shares in the fund.  The management of this asset pool is

23  largely in the hands of an investment advisor, an independent entity which generally organizes

24  the fund and provides it with investment advice, management services, office space and staff.

25        55.    Unlike a traditional corporation, if those in charge of a mutual fund engage in

26  wrongful activities negatively impacting the mutual fund, investors are directly impacted because

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 21
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  a mutual fund is nothing more than a collection of the investors' money.  When a cost is imposed

2  on a traditional corporation, that cost impacts the book value of the corporation, but it does not

3  necessarily impact the market price of the corporation's shares.  Thus, there is no direct impact

4  of those costs on the shareholder.  In contrast, costs imposed on a mutual fund directly reduce the

5  price at which the fund's shares are bought and sold, and do directly and immediately impact

6  fund shareholders.

7      56.    In addition, mutual fund shares do not trade at a price set by the public market.

8  Rather, they are bought from, and sold back to the fund at net asset value ("NAV") per share in a

9  method provided by statute.  Opened ended mutual funds such as the WM Funds are required to

10  issue redeemable securities, which are defined as "any security... under the terms of which the

11  holder, upon its presentation to the issuer... is entitled... to receive approximately his

12  proportionate share of the issuer's current net assets, or the cash equivalent thereof."  15 U.S.C. §

13  80a-2(a)(32).  The value of an investor's mutual fund is determined by subtracting a fund's

14  liabilities from its assets to arrive at the fund's NAV. When paid, the undisclosed fees and

15  charges at issue here immediately reduced that WM Funds' NAV per share, decreasing the

16  amount for which Plaintiffs and the Class are entitled to redeem their shares.

17      57.    Although the various fees charged to mutual fund investors may seem small for

18  each individual investor, mutual funds are long-term investment vehicles where compounded

19  expenses have a significant impact on returns. Seemingly small, yet compounding, fees create

20  drastic erosion on returns over time.

21      58.    Plaintiffs and the Class accepted, as an integral aspect of purchasing shares of the

22  WM Funds, that they would be required to pay fees and expenses against their ownership

23  interests therein, with the understanding that those charges were legitimate outlays for services

24  that would benefit the Funds and contribute positively to their value.  In truth, a significant

25  portion of those expenses were not being used to provide the services promised, but rather to

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 22
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    increase the profits of the Registrants, the WM Advisor, WM Distributor and Brokers by

2    financing the Steering Programs challenged in this lawsuit.

3    59.    Plaintiffs and the Class assumed wrongly – as a direct and proximate result of the

4    Registrants' non-disclosure and misrepresentation – that they would be paying out of their

5    principal only fees for services that accrued to the benefit of Plaintiffs and members of the Class.

6    In reality, Plaintiffs and the Class' principal was funding the Steering Programs which were

7    being used to induce Plaintiffs and the Class members to hold their shares of the WM Funds,

8    purchase additional shares of the WM Funds, and induce third parties to purchase shares of the

9    WM Funds, all of which provided no benefit to Plaintiffs and the Class, and in fact actually

10    dissipated the NAV of their assets in the WM Funds.

11    60.    The Steering Programs system of payments caused Plaintiffs and the Class an

12    economic loss: absent those payments, Plaintiffs and the Class' total amount of fees, and thus the

13    resulting diminution of their investment's NAV, would have been smaller.

14    61.    The Registrants did not adequately disclose the Steering Programs as such, nor

15    did their disclosure state sufficient facts about such Programs for Plaintiffs and the Class to

16    appreciate the dimension of the conflicts of interest inherent in them. Plaintiffs and members of

17    the Class would not have purchased the WM Funds, nor paid the related commissions and fees

18    used to finance the Steering Programs had the existence or nature of the Steering Programs been

19    disclosed.

20    62.    As a result of the Registrants' conduct alleged above, Plaintiffs and the Class have

21    suffered damages.  The damages suffered by Plaintiffs and the Class were a foreseeable

22    consequence of the Registrants' misleading statements, omissions and misconduct.  By investing

23    in the WM Funds, Plaintiffs and the Class received a return on their investment that was

24    substantially less than the return on investment they would have received had the Registrants,

25    WM Advisor and Distributor not engaged in the asset dissipating Steering Programs.

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 23
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

63.     Plaintiffs and the Class have also suffered damages through commissions paid by them for their purchase of WM Funds shares.  Had Plaintiffs and the Class known about the practices alleged above, they would not have paid such commissions.  Plaintiffs and the Class' damages as a result of the commissions, fees and other charges paid for shares of the WM Funds were a foreseeable consequence of Defendants' false and misleading statements and omissions.

**G.     Unity of Interest Between the Registrants, WM Advisor, and WM Distributor.**

64.     The Registrants, the WM Advisor, and WM Distributor have ownership, management and operation that are inextricably intertwined giving such entities a unity of interest for purposes of liability as alleged herein.

65.     The Registrants (WM Trust I, WM Trust II, and WM Portfolios) are governed by a common Board of Trustees that oversees the Registrants' activities. The officers of the Registrants are also officers and/or employees of the WM Advisor and/or WM Distributor.

66.     For example, the Chairman of the Registrants' common Board of Trustees, Defendant William G. Papesh ("Papesh"), was, during all relevant times, also the President, Chief Executive Officer ("CEO") and Director of WM Trust I, WM Trust II, WM Portfolios, WM Advisor and Distributor. Monte D. Calvin, who served as First Vice President ("VP"), Chief Financial Officer ("CFO") and Treasurer of the Registrants during all relevant times, also served as First VP and Director of the WM Advisor and Distributor. Sandy Cavanaugh served as Senior VP to the Registrants and President, Director and Senior VP to the WM Distributor and Director of the WM Advisor at all relevant times. Alex Ghazanfari served as VP and Assistant Compliance Officer to the Registrants and VP and the Distributor at all relevant times. Sharon L. Howells served as First VP of the Registrants and First VP, Secretary and Director of the WM Advisor and Distributor at all relevant times.  Gary J. Pokrzywinski at all relevant times, served as First VP and VP of the Registrants, and First VP of the WM Advisor. Stephen Q. Spencer served as First VP of the Registrants and First VP to the WM Advisor at all relevant times. John Q. West at all relevant times served as First VP, Secretary and Officer of the Registrants and

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 24
Case No. 08-cv-1251-MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

010074-11  264817 V1

1    First VP of the WM Advisor and Distributor. Randall L. Yokum served as Senior VP and First

2    VP of the Registrants and Senior VP, Chief Investment Strategist and Director of the WM

3    Advisor and Director of the Distributor at all relevant times.

4    **H.    Successor Liability for the Principal Defendants**

5            67.    On July 25, 2006, Principal and its subsidiary, Principal Management Corporation

6    entered into an agreement to acquire all of the outstanding stock of the following entities: WM

7    Advisor, WM Distributor, and WM Shareholder Services, Inc. (the "Acquisition"). On August

8    11, 2006, the Registrants' common Board of Trustees approved the proposed Acquisition

9    pursuant to which each of the WM Funds would combine with and into the corresponding

10   separate acquiring fund of Principal Investors Fund (the "Acquiring Funds"). The Acquisition

11   was approved by the WM Fund shareholders on December 15, 2006. By January 2007, the

12   Acquisition was instantiated.

13           68.    Under the Acquisition, (i) all the assets and certain stated liabilities of the WM

14   Funds were transferred to its corresponding Acquiring Fund in exchange for Class A, Class B,

15   Class C and Institutional Class ("Class I") shares of the Acquiring Fund; (ii) holders of Class A,

16   Class B, Class C and Class I shares of the WM Funds received, respectively, that number of

17   Class A, Class B, Class C and Class I shares of the corresponding Acquiring Fund equal in value

18   at the time of the exchange to the value of the holder's WM Fund shares; and (iii) the WM Funds

19   were liquidated and dissolved.

20           69.    The WM Advisor became investment advisor to the Principal Investors Fund.

21   WM Advisor was renamed defendant Edge Asset Management, Inc. ("Edge"), but remains in

22   Seattle and employs many of WM Advisor's officers and employees listed in paragraph 66,

23   above.  The officers and employees of WM Funds Distributor formed the management and staff

24   of Principal Funds Distributor, the distributor to the Principal Investors Fund. Four members of

25   the Board of Trustees for the Registrants were elected to the board of Principal Investors Fund.

26   This group includes Richard Yancey, Daniel Pavelich, Kristianne Blake and William G. Papesh.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 25
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

70.    The Principal Defendants and the Registrants, WM Advisor and WM Distributor thus share a unity of interest with respect to the issues of this lawsuit and are the alter ego of their corresponding WM entity.  Such unity dictates that the Principal defendants be held jointly and severably liable for the misconduct of the WM entities as alleged in this complaint.  The Principal entities have acquired the WM entities liabilities for the conduct as alleged in this lawsuit. The Registrants' board members are now board members of Principal Investors Fund.

**I.    Tolling Allegations**

71.    On February 28, 2007, plaintiff Luz M. Zapien filed a class action lawsuit in the United States District Court for the Southern District of California (3:07-cv-00385-DMS-CAB), against defendants Washington Mutual, Inc., WM Trust I, WM Trust II, WM Strategic Asset Management Portfolios, LLC, WM Financial Services, Inc., WM Advisors, Inc., WM Funds Distributor, Inc., Edge Asset Management, Inc., Principal Financial Group, Inc., Principal Investors Fund, Inc., and Principal Funds Distributor, Inc., alleging violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), Section 15 of the Securities Act, 15 U.S.C. § 77o, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5,  and Rule 10b-10, 17 C.F.R. § 240.10b-10, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t (the "Zapien Action").

72.    The Zapien Action alleged, *inter alia*, that defendants herein had

undisclosed "preferred list" and similarly misleading disclosures regarding their revenue-sharing, kickback and other cash and non-cash incentive programs designed to improperly incent its broker/dealers to push WAMU's proprietary group of funds, the WM Group of Funds (the "Proprietary Funds") and thereby drive sales, regardless of their appropriateness or superior alternatives for the individual retail investor

related to same disclosures in the WM Funds March 1, 2004 Prospectus at issue in this lawsuit. On August 24, 2007, the plaintiff in the Zapien Action filed a first amended complaint specifically identifying that the revenue sharing and kickback programs identified in the original complaint were tied to the Advisor Paid Fee at issue herein. The first amended complaint in the

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 26
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

Zapien Action alleged that the Registrants' Prospectuses dated March 1, 2000, March 1, 2001, March 1, 2002, March 1, 2003, March 1, 2004, and/or March 1, 2005 were false and misleading for their failure to disclose the existence and or details surrounding the Advisor Paid Fee at issue herein.

73.     On August 19, 2008, the court in the Zapien Action issued its final order denying the named plaintiffs motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and 60(b) of the court's June 17, 2008 granting of defendants' motion to dismiss and entry of judgement thereon. This action was filed on August 20, 2008.

74.     The court in the Zapien Action made no rulings on the merits, and dismissal was based on the named plaintiff's lack of standing as a "purchaser" under the federal securities laws. No motion for class certification was made or ruled upon in the Zapien Action, and the existence and limits of the class of plaintiffs represented in the Zapien Action was not established. Plaintiffs Robinson and Poliquin and the Class members herein relied on the filing of the Zapien Action to protect their rights. Plaintiffs Robinson and Poliquin and/or the Class herein were members of the class or classes represented in the Zapien Action had the Zapien Action been permitted to continue as a class action.

75.     On September 11, 2008, plaintiffs in the Zapien Action filed their notice of appeal to the Ninth Circuit Court of Appeals challenging the district court's decision on the issue of standing. No other issues, including merits issues, are presented to the Ninth Circuit in the Zapien Action.

### III.    JURISDICTION AND VENUE

76.     This Court has jurisdiction over the subject matter of this action pursuant to section 22 of the Securities Act (15 U.S.C. § 77v); section 27 of the Exchange Act (15 U.S.C. § 78aa); and 28 U.S.C. §§ 1331, 1337.

77.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged fraud,

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 27
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  including the preparation and dissemination of materially false and misleading information,

2  occurred within this District. Defendants WM Advisor, and WM Distributor, at all relevant times

3  were headquartered in Seattle Washington.

4        78.    In connection with the acts alleged herein, Defendants directly or indirectly, used

5  the means and instrumentalities of interstate commerce, including but not limited to the mails,

6  interstate telephone communications, and the facilities of the national securities markets.

7  **IV.    PARTIES**

8        79.    Plaintiff Lynne Poliquin is the daughter and attorney-in-fact for Plaintiff June

9  Robinson. Plaintiff Poliquin has durable power of attorney for Plaintiff Robinson, which confers

10  upon Plaintiff Poliquin all legal and beneficial rights of ownership and control in Plaintiff

11  Robinson's WM Funds, including all rights to sue on her mother's behalf in the instant lawsuit.

12  Plaintiffs are, and at all relevant times were, residents of the state of Washington.  Plaintiff

13  Poliquin made at least the following transactions in the WM Tax Exempt Bond Fund (CMTEX)

14  issued by defendant WM Trust I: Purchased 3045.067 shares on 7/5/2005; Sold 3045.067 shares

15  on 9/1/2005; Purchased 2518.703 shares on 11/1/2005; and Purchased 635.91 shares on

16  11/25/2005. Plaintiffs paid "management fees" debited from their shares of WM Funds that were

17  diverted to fund the illegal Advisor Paid Fee and were damaged thereby.

18        80.    Defendant WM Trust I is an open-end management investment company,

19  organized as a Massachusetts business trust. WM Trust I issued the following WM Funds during

20  the Class Period: Money Market, Tax-Exempt Money Market, U.S. Government Securities,

21  Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth &

22  Income, West Coast Equity, and Mid Cap Stock.

23        81.    Defendant WM Trust II is an open-end management investment company

24  organized as a Massachusetts business trust. WM Trust II issued the following WM Funds

25  during the Class Period: California Money, Short Term Income, California Municipal, California

26  Insured Intermediate Municipal, Growth, International Growth, and Small Cap Growth.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 28
Case No. 08-cv-1251-MJP

010074-11 264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

82.     Defendant WM Strategic Asset Management Portfolios, LLC (the "WM Portfolio") is an open-end management investment company, organized as a Massachusetts limited liability company. WM Portfolios issued the following WM Funds during the Class Period: Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

83.     Defendant WM Advisors, Inc. ("WM Advisor") is a financial services company organized as a Washington corporation, and during the Class Period, acted as the investment advisor for the Registrants and the WM Funds.

84.     Defendant WM Funds Distributor, Inc. ("WM Distributor") is a financial services company organized as a Washington corporation, and during the Class Period, acted as the distributor for the Registrants and the WM Funds.

85.     Defendant William G. Papesh ("Papesh"), was during all relevant times the President, Chief Executive Officer and Director of WM Trust I, WM Trust II, WM Portfolios, WM Advisor and Distributor, and a trustee on the Registrants' common Board of Trustees. Papesh lives in Spokane Washington.

86.     Defendant Daniel Pavelich ("Pavelich"), was at all relevant times a trustee on the WM Group of Funds' common Board of Brustees. Pavelich served as Chairman of the WM Funds Audit Committee.

87.     Defendant Richard Yancy ("Yancy"), was at all relevant times Lead Trustee on the WM Group of Funds' common Board of Trustees. Yancy served as a trustee of the WM Funds for over 30 years and is now a board member of defendant Principal Investors Fund.

88.     Defendant Kristianne Blake ("Blake"), was at all relevant times a trustee on the WM Group of Funds common Board of Trustees. Defendant Blake chaired the WM Operations and Distribution Committee. Defendant Blake lives in Spokane Washington.

89.     Defendant Principal Financial Group, Inc., ("Principal") is a financial services company organized as a Delaware corporation, that at all times material maintained its corporate

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  headquarters at Des Moines, Iowa. As of January 2007, Principal acquired and became the parent

2  company of the WM Funds, now merged into Principal Investors Fund, Inc.

3      90.     Defendant Principal Investors Fund, Inc. ("Principal Investors Fund") is the

4  successor in interest to WM Trust I, WM Trust II, and WM Portfolios, registrants for the WM

5  Funds. Principal Investors Fund is a management investment company organized as a Maryland

6  corporation, that at all times material maintained its corporate headquarters at Des Moines, Iowa.

7      91.     Defendant Edge Asset Management, Inc. ("Edge") is the successor in interest to

8  some or all of the liabilities of WM Advisor complained of herein and is investment advisor to

9  some or all of the former WM Funds in the Principal Investors Funds. Edge is a financial

10  services company organized as a Washington corporation, that at all times material maintained

11  its corporate headquarters at Seattle, Washington.

12      92.     Defendant Principal Funds Distributor, Inc. ("Principal Distributor") is the

13  successor in interest to some or all of the liabilities of the WM Distributor as complained of

14  herein, and is the distributor for some or all of the former WM Funds in the Principal Investors

15  Funds. Principal Distributor is organized as a Washington corporation, with its principal place of

16  business in Sacramento County California.

17      93.     Principal, Principal Investors Fund, Principal Distributor, and Edge are

18  collectively referred to herein as the "Principal Defendants."

19                      **V.      CLASS ALLEGATIONS**

20      94.     Plaintiffs bring this action as a class-action pursuant to Federal Rules of Civil

21  Procedure 23 on behalf of a Class consisting of: All persons or entities that purchased or

22  otherwise acquired shares, units or like interests in any of the WM Funds (including through the

23  reinvestment of Fund dividends) between March 1, 2002, through December 31, 2006, inclusive.

24  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other

25  entity related to or affiliated with any defendant.

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 30
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

95.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by defendants, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

96.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct complained of herein in violation of federal law. Plaintiffs do not have interests adverse to the Class.

97.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

98.     Common questions of law and fact exist as to all members of the Class and predominate over any questions wholly affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether statements made by the Registrants to the investing public between March 1, 2002 and December 31, 2006, inclusive, concerning the existence of, source of funding for, purpose and effect of the Steering Programs misstated, omitted or concealed material facts;

b.      whether the Registrants' false and misleading statements and omissions are material as a matter of law;

c.      whether Plaintiffs and the Class' WM Funds assets were dissipated by the Steering Programs and the fees deducted therefore;

d.      whether the Registrants acted with scienter when issuing the false and misleading statements and omissions;

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 31
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

e.    whether the Steering Programs created insurmountable conflict(s) of interest for the Registrants, the WM Advisor, WM Distributor and/or Brokers;

f.    whether the federal securities laws were violated by defendants' acts as alleged herein; and

g.    to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

99.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

100.    Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### COUNT I

#### Against the Registrants and Principal Investors Fund
#### For Violations Of Section 11 Of The Securities Act

101.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

102.    This claim is brought pursuant to Section 11 of the Securities Act (15 U.S.C. § 77k) against the Registrants and Principal Investors Fund on behalf of Plaintiffs and the Class.

103.    The Registrants were the registrant(s), and Principal Investors Fund is the successor in interest to the Registrants, for one or more of the respective WM Funds' shares sold

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 32
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    to Plaintiffs and the Class.  The Registrants issued, caused to be issued and participated in the

2    issuance of the materially false and misleading written statements and/or omissions of material

3    fact that were contained in the respective Prospectus(es) and are statutorily liable under Section

4    11.

5          104.     Prior to purchasing ownership units of the WM Funds, Plaintiffs were provided

6    the appropriate Prospectus(es) and, similarly, prior to purchasing the ownership units of each of

7    the other WM Funds, all Class members likewise received the appropriate Prospectus(es).

8    Plaintiffs and other Class members purchased shares of the WM Funds traceable to the false and

9    misleading Prospectus(es).

10         105.     As set forth above, the statements contained in the Prospectuses were materially

11    false and misleading for a number of reasons, including that they failed to disclose, and actively

12    concealed, that it was the practice of the Registrants, the WM Advisor and Distributor to reward

13    Brokers for selling the WM Funds, while discouraging selling products offered by competitors

14    not on the "preferred list" or otherwise participating in the Steering Programs. The Prospectuses

15    failed to disclose and misrepresented material and adverse facts as described in paragraphs 31

16    through 42 of this complaint.

17         106.     Plaintiffs and the Class have sustained damages as a result of the Registrants'

18    violations.

19         107.     At the time they purchased the WM Funds shares traceable to the defective

20    Prospectuses, Plaintiffs and the Class were without knowledge of the facts concerning the false

21    and misleading statements or omissions alleged herein and could not reasonably have possessed

22    such knowledge.

23         108.     This claim was brought within the applicable statute of limitations.

24

25

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 33
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1

## COUNT II

**Against the Registrants, the WM Distributor, and Principal Defendants
For Violations of Section 12(a) Of The Securities Act**

109.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

110.    This claim is brought pursuant to Section 12(a) of the Securities Act (15 U.S.C. § 77l(a)), against the Registrants, and the WM Distributor, for their failure to disclose the Steering Programs that created insurmountable conflicts of interest and the Principal Defendants as successors in interest to the Registrants and the WM Distributor.

111.    The Registrants and the WM Distributor, were the "offeror" and/or "seller," and the Principal Defendants are the successor in interest to the "offeror" and/or "seller," within the meaning of the Securities Act, for one or more of the respective WM Fund shares sold to Plaintiffs and the Class members because they either:  (a) transfer title to shares of the WM Funds to members of the Class; (b) transfer title to shares of the WM Funds to the WM Funds distributors that in turn sold shares of the WM Funds as agent for the Registrants; and/or (c) solicited the purchase of shares in the WM Funds by members of the Class, motivated in part by payment of the monies pursuant to the Steering Programs to the detriment of Plaintiffs and the Class.

112.    Between March 1, 2002 and December 31, 2006, the Registrants and the WM Distributor failed to disclose the existence and amount of the Steering Programs payments Brokers received in exchange for pushing clients into the WM Funds.  These incentives created insurmountable conflicts of interest that were never disclosed to Plaintiffs and the Class.

113.    The WM Fund Companies also caused to be issued to members of the Class the Prospectuses that failed to disclose that fees, commissions, and other charges from the purchase

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 34
Case No. 08-cv-1251-MJP

010074-11 264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

and maintenance of the WM Funds were used to pay Brokers for directing Plaintiffs and the Class into the WM Funds, and the existence of the conflicts of interest described herein for Brokers including Broker's salespersons.

114.    As set forth above, when they became effective, the WM Funds' Prospectuses were misleading as they omitted or insufficiently disclosed the material facts alleged in, at least, paragraphs 31 through 42 of this complaint.

115.    Plaintiffs and the other members of the Class have sustained damages as a result of the Registrants, WM Distributor and Principal Defendants' violations.

116.    At the time they purchased the WM Fund shares traceable to the defective Prospectuses, Plaintiffs and the Class were without knowledge of the facts concerning the material misleading statements and omissions alleged herein and could not reasonably have possessed such knowledge.

117.    This claim was brought within the applicable statute of limitations.

<u>**COUNT III**</u>

**Against WM Advisor, Papesh, Pavelich, Yancey and Blake
for Violation of Section 15 of the Securities Act**

118.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

119.    This claim is brought pursuant to Section 15 of the Securities Act (15 U.S.C. § 77o), against WM Advisor, Papesh, Pavelich, Yancey and Blake as control persons of the Registrants, and the WM Distributor.  It is appropriate to treat these defendants as a group for pleading purposes and presume that the false, misleading, and incomplete information complained about herein are the collective actions of the WM Advisor, Papesh, Pavelich, Yancey, Blake, Registrants, and WM Distributor.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 35
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

120.    The Registrants violated Section 11 of the Securities Act. And the Registrants and the WM Distributor violated Section 12(a) of the Securities Act by their acts and omissions as alleged in this complaint.  By virtue of their positions as controlling persons the WM Advisor, Papesh, Pavelich, Yancey and Blake are liable pursuant to Section 15 of the Securities Act.

121.    The WM Advisor, Papesh, Pavelich, Yancey and Blake are and were "control person(s)" of the Registrants, and the WM Distributor within the meaning of Section 15 of the Securities Act, by virtue of their positions of operational control in the Registrants, and the WM Distributor.  At the time the Registrants and the WM Distributor sold one or more shares of the WM Funds to Plaintiffs and the Class – by virtue of their positions of control and authority over the Registrants and the WM Distributor the WM Advisor, Papesh, Pavelich, Yancey and Blake directly and indirectly, had the power, authority, influence and control, and exercised same, over the decision making and actions of the Registrants, and the WM Distributor to engage in the wrongful conduct complained of herein.  The WM Advisor, Papesh, Pavelich, Yancey and Blake had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

122.    As a direct and proximate result of the WM Advisor, Papesh, Pavelich, Yancey and Blake's wrongful conduct, Plaintiffs and the Class suffered damages in connection with their purchases and/or sales of interests in the WM Funds between March 1, 2002 and December 31, 2006.

## COUNT IV

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against the Registrants and Principal Investors Fund

123.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

124.    This claim is brought against the Registrants and the Principal Investors Fund pursuant to Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder.  The Registrants are sued as primary violators of Section 10(b) and Principal Investors Fund as successor in interest to the Registrants.

125.    During the Class Period, the Registrants carried out a plan, scheme and course of conduct which was intended to, and between March 1, 2002 and December 31, 2006 did, deceive the investing public, including Plaintiffs and the Class as alleged herein, and caused Plaintiffs and the Class to purchase WM Funds containing improper fees, commissions and other charges, and to otherwise suffer damages.  In furtherance of this unlawful scheme, plan and course of conduct, the Registrants took the actions set forth herein.

126.    The Registrants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue or misleading statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon purchasers of the WM Funds, including Plaintiffs and the Class, in an effort to enrich themselves through undisclosed manipulative tactics by which they wrongly dissipated the assets of the WM Funds in violation of Section 10(b) of the Exchange Act and Rule 10b-5. The Registrants are sued as primary participants of the wrongful and illegal conduct and scheme charged herein, and Principal Investors Fund is sued as the successor in interest to the Registrants.

127.    The Registrants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal the adverse material information about the improper Steering Programs  the inherent conflicts of interest alleged herein.

128.    The Registrants employed devices and artifices to defraud and engaged in a course of conduct and scheme as alleged herein to unlawfully manipulate and profit from increased sales and/or commissions, fees or other charges paid to them as a result of its

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 37
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    undisclosed Steering Programs described above and thereby engaged in transactions, practices

2    and a course of conduct which operated as a fraud and deceit upon Plaintiffs and the Class.

3          129.    The Registrants had actual knowledge of the misrepresentations and omissions of

4    material facts set forth above, or acted with reckless disregard for the truth in that they failed to

5    ascertain and to disclose such facts, even though the facts were available to them.  The

6    Registrants' material misleading statements and omissions were done knowingly or recklessly

7    and for the purpose and effect of concealing the truth.

8          130.    As a result of dissemination of the materially false and misleading information

9    and failure to disclose material facts, as set forth in paragraphs 31 through 42 above, the NAVs

10   for the WM Funds were diminished between March 1, 2002 and December 31, 2006.  In

11   ignorance of the fact that NAVs for the WM Funds were diminished, and relying directly or

12   indirectly on the false and misleading statements made by the Registrants, or upon the purported

13   integrity of the Registrants, the WM Advisor, and WM Distributor and/or on the public absence

14   of material adverse information that was known to or recklessly disregarded by the Registrants

15   but not disclosed in public statements by the Registrants between March 1, 2002 and December

16   31, 2006, Plaintiffs and the Class paid fees, commissions, loads, and other charges to the

17   Registrants, the WM Advisor, and the WM Distributor during the Class Period for the Steering

18   Programs and were damaged thereby.

19         131.    By virtue of the foregoing, the Registrants and Principal Investors Fund have

20   violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R.

21   § 240.10b-5) promulgated thereunder.

22         132.    As a direct and proximate result of the Registrants and Principal Investors Fund's

23   wrongful conduct, Plaintiffs and the Class suffered damages in connection with their respective

24   purchases and/or sales of WM Funds shares between March 1, 2002 and December 31, 2006.

25         133.    This claim was brought within the applicable statute of limitations.

26

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 38
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1

## COUNT V

2

**Against the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey, and Blake
for Violations of Section 20(a) of the Exchange Act**

3

4

134.    Plaintiffs repeat and re-allege each and every allegation contained above as if

5

fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the

6

Securities Act.

7

135.    This claim is brought pursuant to Section 20(a) of the Exchange Act (15 U.S.C.

8

§ 78t), against the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake as control

9

persons of the Registrants.  It is appropriate to treat these defendants as a group for pleading

10

purposes and presume that the false, misleading, and incomplete information complained about

11

herein are the collective actions of the Registrants, the WM Advisor, WM Distributor, Papesh,

12

Pavelich, Yancey and Blake.

13

136.    The Registrants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b))

14

and Rule 10b-5 (17 C.F.R. § 240.10b-5) by their acts, material false and misleading statements

15

and omissions as alleged in this complaint.  By virtue of their positions as controlling persons,

16

the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake are liable pursuant to

17

Section 20(a) of the Exchange Act.

18

137.    The WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake were

19

"control persons" of the Registrants within the meaning of Section 20 of the Exchange Act, by

20

virtue of their positions of operational control of the Registrants.  At the time that the Registrants

21

issued the Prospectuses – by virtue of their positions of control and authority over the Registrants

22

– the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake directly and indirectly,

23

had the power, authority, influence and control, and exercised same, over the decision making

24

and actions of the Registrants to engage in the wrongful conduct complained of herein. The WM

25

Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake had the ability to prevent the

26

1   issuance of the statements alleged to be false and misleading registration statements or could

2   have caused such statements to be corrected.

3       138.    In particular the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and

4   Blake had direct supervisory involvement in the operations of the Registrants and are presumed

5   to have had the power to control or influence the particular acts, misleading statements, and

6   omissions giving rise to violations of the Exchange Act as alleged herein, and to have exercised

7   same.

8       139.    As a direct and proximate result of the WM Advisor, WM Distributor, Papesh,

9   Pavelich, Yancey and Blake's wrongful conduct, Plaintiffs and the Class suffered damages in

10  connection with their purchases and/or sales of the WM Funds during the Class Period.

11                          **JURY TRIAL DEMAND**

12      140.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

13  a trial by jury of all of the claims asserted in this Complaint so triable.

14                              **PRAYER**

15      WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

16      1.      Judgment declaring that this action is properly maintained as a class action and

17  certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil

18  Procedure;

19      2.      Awarding compensatory damages in favor of Plaintiffs and the Class against all

20  defendants, jointly and severally, for all damages sustained as a result of defendants'

21  wrongdoing, in an amount to be proven at trial, including interest thereon;

22      3.      Awarding Plaintiffs and the Class rescission of their contracts with the

23  defendants, including recovery of all fees which would otherwise apply and recovery of all fees

24  paid to the defendants pursuant to such agreements;

25      4.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in

26  this action, including counsel fees and expert fees; and

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 40
Case No. 08-cv-1251-MJP

010074-11  264817 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1     5.     Such other and further relief as this Court may deem just and proper.

2

3                                        HAGENS BERMAN SOBOL SHAPIRO LLP

4

DATED: September 26, 2008              By:     /s/ Steve W. Berman
5                                              Steve W. Berman, WSBA #12536
                                        1301 Fifth Avenue, Suite 2900
6                                       Seattle, Washington 98101
                                        Telephone:  (206) 623-7292
7                                       Facsimile:   (206) 624-0594
                                        Email:  steve@hbsslaw.com
8

9                                       FINKELSTEIN & KRINSK LLP
                                        JEFFREY R. KRINSK
10                                      MARK L. KNUTSON
                                        WILLIAM R. RESTIS
11                                      501 West Broadway, Suite 1250
                                        San Diego, CA  92101-3593
12                                      Telephone:  (619) 238-1333
                                        Facsimile:   (619) 238-5425
13                                      Email:  jrk@classactionlaw.com

14

15                                      Attorneys for Plaintiffs
                                        Lynne Poliquin as attorney in fact for
16                                      June Robinson

17

18

19

20

21

22

23

24

25

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594