1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUE ELLEN DUMDIE, Individually and on
Behalf of all Others Similarly Situated,

                  Lead Plaintiff,

    v.

WM TRUST I, WM TRUST II, WM
STRATEGIC ASSET MANAGEMENT
PORTFOLIOS, LLC, WM ADVISORS, INC.,
WM FUNDS DISTRIBUTOR, INC.,
WILLIAM G. PAPESH, DANIEL L.
PAVELICH, RICHARD C. YANCEY,
KRISTIANNE BLAKE, EDGE ASSET
MANAGEMENT, INC., PRINCIPAL
FINANCIAL GROUP, INC., PRINCIPAL
INVESTORS FUND, INC., PRINCIPAL
FUNDS DISTRIBUTOR, INC.,

                  Defendants.

No. C-08-1251 MJP

SECOND AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS

**JURY TRIAL DEMANDED**

       Lead Plaintiff Sue Ellen Dumdie, by and through counsel, alleges the following based

upon the investigation of counsel, which included, *inter alia*, a review of United States Securities

and Exchange Commission ("SEC") filings, other regulatory filings, reports, advisories, press

releases, and media reports, about Principal Financial Group, Inc. ("Principal") and its related

entities also named herein as defendants.  Plaintiff believes that substantial additional evidentiary

support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 1
Case No. C-08-1251 MJP

010074-11  276810 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

## I.      INTRODUCTION

1.      This is a federal class action that seeks to recover damages under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act")[1] for defendants' failure to disclose payments by the WM Group of Funds'[2] investment advisor to broker/dealers selling the WM Group of Funds (the "WM Funds") as required by law. Such undisclosed payments were part of a comprehensive "steering" program devised by defendants' highest management that was intended to, and did, compromise the objectivity of broker/dealers in their dealing with customers and created insurmountable, undisclosed conflicts of interest.

2.      Defendants WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios, LLC (collectively the "Registrants") are the issuers of the WM Funds.  Each year during the relevant time period, the Registrants jointly filed a registration statement with the SEC that failed to disclose the above payments and resulting conflicts of interest.

---

[1] Plaintiff alleges violations of Section 11 of the Securities Act (15 U.S.C. § 77k, *material misrepresentation or omission in registration statement*) against the Registrants and Principal Investors Fund; Section 12(a) of the Securities Act (15 U.S.C. § 77(l), *untrue statement or omission in prospectus*) against the Registrants, the WM Distributor, and Principal Defendants; and Section 15 of the Securities Act (15 U.S.C. § 77o, *control person liability Securities Act*) against WM Advisor, Papesh, Pavelich, Yancey, and Blake.  Plaintiff also alleges violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5, *manipulative/deceptive artifice to defraud – false/misleading statement*) by the Registrants and Principal Investors Fund; and violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t, *control person liability Exchange Act*), by the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey, and Blake.

[2] The WM Funds, as described in this complaint are:  Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth, International Growth, Small Cap Growth, Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

---

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 2
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

3.      Each month during the relevant time period, Plaintiff and the Class[3] paid "management fees" that were debited from their investment principal in the WM Funds to the Funds' investment advisor, defendant WM Advisors, Inc. (the "WM Advisor"). These "management fees" were ostensibly to compensate the WM Advisor for its expertise in making investment decisions for the WM Funds and provide value to Plaintiff and the Class by increasing investment returns. Undisclosed to Plaintiff and the Class, from at least March 1, 2002, through December 31, 2006, more than fifty percent of such "management fees" were diverted from the WM Advisor to all broker/dealers (*i.e.*, "Brokers") to sell those WM Funds most profitable to the Advisor.

4.      The WM Advisor annually paid each respective Broker an undisclosed "Advisor Paid Fee" calculated as 75 basis points (0.75 percent) of such WM Funds' assets sold/managed by the particular Broker. Specifically, each Broker was paid 75 basis points ("BP") of such WM Fund assets sold in a particular year, plus a 75 BP residual commission of the *market value of* all such WM Fund assets sold in previous years. The Advisor Paid Fee was paid to Brokers *in addition to* and *separate from* an ongoing 25 BP Rule 12b-1[4] commission. The resulting incentive was enormous and created undisclosed material conflicts of interest for the Registrants, the WM Advisor, and Brokers selling the WM Funds.

5.      The existence of the Advisor Paid Fee was highly material. For example, in fiscal year 2004 alone, the WM Advisor paid Brokers approximately $67,000,000 in Advisor Paid Fees for which Plaintiff and the Class received no benefit. If not improperly deducted from the WM

---

[3] As detailed in paragraph 94 of this Complaint, the Class is defined as: All persons or entities that purchased or otherwise acquired shares, units or like interests in any of the WM Funds (including through the reinvestment of Fund dividends), between March 1, 2002, through December 31, 2006, inclusive.

[4] A "12b-1 fee" is an extra fee charged mutual fund investors for marketing and selling fund shares, including compensating brokers and paying for advertising. 12b-1 fees are authorized by SEC Rule 12b-1, which provides that an investment company may "engage[] directly or indirectly in financing any activity which is primarily intended to result in the sale of shares" *only* pursuant to a Rule 12b-1 plan. 17 C.F.R. § 270.12b-1.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 3
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

Funds, the money representing the Advisor Paid Fee would have remained in the WM Funds' respective investment pools to grow and compound over time.  Regardless of whether the WM Funds increased or decreased in value, Plaintiff and the Class's investment principal was continuously drained to pay conflicted Brokers the Advisor Paid Fee.

6.     The Registrants' deceived Plaintiff and the Class into believing that the "management fees" paid to the WM Advisor were for actual investment advice or similar valuable services.  In fact, such fees were merely a cover to funnel the Advisor Paid Fees to incurably biased Brokers.  Absent the hundreds of millions of dollars in Advisor Paid Fees, Plaintiff and the Class's total amount of "management fees" deducted from their investment, and thus the resulting diminution of the WM Funds' Net Asset Value ("NAV"), would have been substantially less.

7.     In addition to the Advisor Paid Fee, the Registrants' relevant Prospectuses and statements of additional information ("SAI") failed to disclose that the WM Advisor and/or defendant WM Funds Distributor, Inc. (the "WM Distributor") paid Brokers to place the WM Funds on "preferred list(s)" of mutual funds.  These "preferred list(s)" caused Brokers to principally recommend to clients only those "preferred" funds, regardless of their appropriateness or the availability of superior alternatives.

8.     The undisclosed Advisor Paid Fee and "preferred list(s)" (jointly the "Steering Programs") caused Brokers to give predetermined, biased recommendations to the detriment of Plaintiff and the Class.  The Registrants hid the existence and true nature of the Steering Programs, knowing that no reasonable investor would invest in the WM Funds if the truth were revealed.

9.     While promoting the WM Funds to Plaintiff and the Class, Brokers benefitting from the Steering Programs represented the Funds as superior to other available funds.  Plaintiff and the Class were led to believe that Brokers were recommending the WM Funds based on objective criteria indicating that such Funds would perform better than other investment

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 4
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

alternatives.  However, Brokers' advice and services relative to the WM Funds was neither objective nor its basis properly disclosed.

10.     The Registrants' annual Prospectuses effective March 1, 2002, through December 31, 2006,[5] failed to disclose that "management fees" deducted from all WM Funds were used to pay Brokers the Advisor Paid Fee.  The Registrants' Prospectuses effective March 1, 2002, through December 31, 2006, also failed to disclose that "preferred lists" existed and were similarly used to steer Plaintiff and the Class into the WM Funds.  The relevant Prospectuses provided inadequate, fragmentary and incomplete disclosure, representing only that unspecified compensation "may," "from time to time" be made to Brokers.  In truth, the WM Advisor and Distributor had *already* entered into formulated, specific, negotiated arrangements with Brokers providing for payment of the Advisor Paid Fee and use of "preferred list(s)" that dated back to, at least, the year 2000.

11.     Defendants' practices as described herein were particularly egregious given the nature of clients that were defrauded.  A typical mutual fund investor is an unmarried, middle-class individual in his or her forties with a median household income of $55,000.  Approximately 98% of mutual fund shareholders state their investments constitute their long-term savings and about 77% cite retirement savings as their primary financial goal.[6]  *A 1% annual fee, by way of example, reduces an ending account balance by 17% on an investment held for 20 years.*[7]  The Registrants duty to state *all* facts necessary to make their affirmative statements not misleading was accordingly all the more compelling because the mutual fund market requires very clear disclosure understandable to the layman.

---

[5] The relevant prospectuses had effective dates of March 1, 2002, March 1, 2003, March 1, 2004, March 1, 2005, and March 1, 2006 (collectively the "Prospectuses").

[6] David J. Carter, *Mutual Fund Board and Shareholder Action*, 3 VILL. J. & INV. MGM'T at 8.

[7] *Testimony of Arthur Levitt, Chairman U.S. Securities and Exchange Commission, before House Subcommittee on Finance and Hazardous Materials, Committee on Commerce, Concerning Transparency in the United States Debt Market and Mutual Fund Fees and Expenses,* Sept. 29, 1998, available at 1998 WL 717068, at 7.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 5
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

12.     The SEC has long recognized that partial or non-disclosure of incentive arrangements with Brokers for the sale of select mutual funds create conflicts of interest and violate the anti-fraud provisions of the federal securities laws.[8]  The Deputy Director of the SEC's Division of Enforcement recently stated that "undisclosed receipt of revenue sharing payments from a select group of mutual fund families create[s] a conflict of interest.  When customers purchase mutual funds, they should be told about the *full nature and extent* of any conflict of interest that may affect the transaction."[9]  (Emphasis added.)

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to section 22 of the Securities Act (15 U.S.C. § 77v); section 27 of the Exchange Act (15 U.S.C. § 78aa); and 28 U.S.C. §§ 1331, 1337.

14.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391.  Substantial acts in furtherance of the alleged fraud, including the preparation and dissemination of materially false and misleading information, occurred within this District.  Defendants WM Advisor, and WM Distributor, at all relevant times were headquartered in Seattle, Washington.

15.     In connection with the acts alleged herein, Defendants directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.     PARTIES

16.     Lead Plaintiff Sue Ellen Dumdie ("Plaintiff" or "Dumdie") is, and at all relevant times was, a resident of the state of Washington.  Between March 1, 2002, through December 31,

---

[8] *See* Confirmation Requirements and Point of Sale Disclosure Requirements for Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement Amendments, and Amendments to the Registration Form for Mutual Funds, 69 Fed. Reg. 6438, at 6440 (Feb. 10, 2004).

[9] SEC Press Release, Edward Jones to Pay $75 Million to Settle Revenue Sharing Charges, at http://www.sec.gov/news/press/2004-177.htm.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 6
Case No. C-08-1251 MJP



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1   2006, Plaintiff made purchases and sales in the follwing WM Funds:  WM Money Market

2   (CCMXX), WM Equity Income (CMPBX), WM Growth & Income (CMPFX), WM West Coast

3   Equity (CMNWX), WM Mid Cap Stock (WMCAX), WM Growth (SRGFX), WM Small Cap

4   Stock (SREMX), WM SAM Conserv. Balanced (SAIPX), WM SAM Flexible Income (SAUPX),

5   WM SAM Conservative Growth (SAGPX), WM SAM Balanced (SABPX), and WM SAM

6   Strategic Growth (SACAX) in amounts and at times listed in Exhibit B hereto, with a total

7   cumulative investment in the WM Funds of $286,541.29.  Plaintiff paid "management fees"

8   debited from her shares of WM Funds that were diverted to fund the illegal Advisor Paid Fee and

9   was damaged thereby.

10          17.     Defendant WM Trust I is an open-end management investment company,

11  organized as a Massachusetts business trust.  WM Trust I issued the following WM Funds during

12  the Class Period:  Money Market, Tax-Exempt Money Market, U.S. Government Securities,

13  Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth &

14  Income, West Coast Equity, and Mid Cap Stock.

15          18.     Defendant WM Trust II is an open-end management investment company

16  organized as a Massachusetts business trust.  WM Trust II issued the following WM Funds

17  during the Class Period:  California Money, Short Term Income, California Municipal,

18  California Insured Intermediate Municipal, Growth, International Growth, and Small Cap

19  Growth.

20          19.     Defendant WM Strategic Asset Management Portfolios, LLC (the "WM

21  Portfolio") is an open-end management investment company, organized as a Massachusetts

22  limited liability company.  WM Portfolios issued the following WM Funds during the Class

23  Period:  Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible

24  Income.

25

26



1      20.    Defendant WM Advisors, Inc. ("WM Advisor") is a financial services company

2  organized as a Washington corporation, and during the Class Period, acted as the investment

3  advisor for the Registrants and the WM Funds.

4      21.    Defendant WM Funds Distributor, Inc. ("WM Distributor") is a financial services

5  company organized as a Washington corporation, and during the Class Period, acted as the

6  distributor for the Registrants and the WM Funds.

7      22.    Defendant William G. Papesh ("Papesh") was during all relevant times the

8  President, Chief Executive Officer and Director of WM Trust I, WM Trust II, WM Portfolios,

9  WM Advisor and Distributor, and a trustee on the Registrants' common Board of Trustees.

10  Papesh lives in Spokane, Washington.

11      23.    Defendant Daniel Pavelich ("Pavelich") was at all relevant times a trustee on the

12  WM Group of Funds' common Board of Trustees.  Pavelich served as Chairman of the WM

13  Funds Audit Committee.

14      24.    Defendant Richard Yancey ("Yancey") was at all relevant times Lead Trustee on

15  the WM Group of Funds' common Board of Trustees.  Yancey served as a trustee of the WM

16  Funds for over 30 years and is now a board member of defendant Principal Investors Fund.

17      25.    Defendant Kristianne Blake ("Blake") was at all relevant times a trustee on the

18  WM Group of Funds common Board of Trustees.  Defendant Blake chaired the WM Operations

19  and Distribution Committee.  Defendant Blake lives in Spokane, Washington.

20      26.    Defendant Principal Financial Group, Inc. ("Principal") is a financial services

21  company organized as a Delaware corporation that at all times material maintained its corporate

22  headquarters at Des Moines, Iowa.  As of January 2007, Principal acquired and became the

23  parent company of the WM Funds, now merged into Principal Investors Fund, Inc.

24      27.    Defendant Principal Investors Fund, Inc. ("Principal Investors Fund") is the

25  successor in interest to WM Trust I, WM Trust II, and WM Portfolios, registrants for the WM

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 8
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1     Funds.  Principal Investors Fund is a management investment company organized as a Maryland

2     corporation that at all times material maintained its corporate headquarters at Des Moines, Iowa.

3           28.      Defendant Edge Asset Management, Inc. ("Edge") is the successor in interest to

4     some or all of the liabilities of WM Advisor complained of herein and is investment advisor to

5     some or all of the former WM Funds in the Principal Investors Funds.  Edge is a financial

6     services company organized as a Washington corporation that at all times material maintained its

7     corporate headquarters at Seattle, Washington.

8           29.      Defendant Principal Funds Distributor, Inc. ("Principal Distributor") is the

9     successor in interest to some or all of the liabilities of the WM Distributor as complained of

10     herein and is the distributor for some or all of the former WM Funds in the Principal Investors

11     Funds.  Principal Distributor is organized as a Washington corporation with its principal place of

12     business in Sacramento County, California.

13           30.      Principal, Principal Investors Fund, Principal Distributor, and Edge are

14     collectively referred to herein as the "Principal Defendants."

### IV.      SUBSTANTIVE ALLEGATIONS

**A.     Rule 12b-1 Plans**

17           31.      Section 12(b) of the Investment Company Act of 1940 (the "1940 Act") outlawed

18     open-ended investment companies such as the Registrants from acting as their own broker-

19     dealers but authorized the SEC to prescribe rules and regulations governing the circumstances

20     mutual funds may bear the expenses of selling, marketing and advertising shares.  15 U.S.C.

21     § 80a-12(b).  By 1980, the mutual fund industry prevailed on the SEC to make an important

22     exception to this restriction, found in SEC Rule 12b-1.  17 C.F.R. § 270.12b-1.

23           32.      Rule 12b-1 reflected a sharp change in SEC policy by permitting mutual funds to

24     bear distribution-related expenses under *limited circumstances* provided certain conditions are

25     met.  The requirements of the Rule are triggered whenever a mutual fund engages in financing

26     "any activity which is primarily intended to result in the sale" of its shares, including

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 9
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

010074-11  276810 V1

1    "advertising, *compensation of* underwriters, *dealers, and sales personnel*, the printing and

2    mailing of prospectuses to other than current shareholders, and the printing and mailing of sales

3    literature."  17 C.F.R. § 270.12b-1(a)(2) (emphasis added).

4         33.    Rule 12b-1 allows distribution related expenses, *i.e.,* payments to Brokers, only

5    pursuant to a "12b-1 Plan."  Any other payments to Brokers are outlawed by Section 12(b) of the

6    1940 Act.  The 12b-1 Plan must be written and describe "all material aspects of the proposed

7    financing and distribution" of the mutual fund's shares.  17 C.F.R. § 270.12b-1(b).  Such Plan

8    must be approved by a majority of the fund's board of directors, including a majority of the

9    disinterested directors.  *Id*. at § 270.12b-1(b), (c).  The Plan must also be approved by a majority

10   of the fund's outstanding voting shares.  *Id*.  The plan may be implemented or continued "only if

11   the directors who vote to approve such implementation or continuation conclude, in the exercise

12   of reasonable business judgment and in light of their fiduciary duties under state law and under

13   sections 36(a) and (b) (15 U.S.C. 80a-35 (a) and (b)) of the [1940] Act, that there is a reasonable

14   likelihood that the plan will benefit the company and its shareholders."  *Id*. at § 270.12b-1(e).

15        34.    SEC Form N1-A sets forth the requirements for information that must be

16   contained in offering prospectuses and statements of additional information.  Form N1-A

17   requires mutual fund companies to disclose in their prospectuses all fees paid pursuant to 12b-1

18   Plans, including a description of all principal activities for which payments are made, and an

19   itemized list of amounts paid to Brokers.  Form N1-A requires additional 12b-1 data to be

20   supplied in a fund's SAI.  Copies of 12b-1 Plans must be exhibits to the registration statements.

21        35.    Although Rule 12b-1 does not limit the amount that a fund's shareholders may be

22   charged under such a plan, the National Association of Securities Dealers ("NASD," now the

23   Financial Industry Regulatory Authority "FINRA") has limited Rule 12b-1 fees to a maximum of

24   *one quarter of 1%* of a fund's average daily net assets per year.  NASD Rule 2830(d)(5).

25

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 10
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1  **B.      The Registrants' 12b-1 Plan**

2        36.      The Registrants enacted a 12b-1 Plan that continued from year to year.  During

3  the relevant time period, the Registrants' ratified the Plan on March 6, 2001, filed as an exhibit to

4  the Registrants' December 28, 2001, registration statement, and again on February 20, 2003, as

5  an exhibit to the WM Funds' March 1, 2003, registration statement.

6        37.      Pursuant to the 12b-1 Plan, the Registrants charged "12b-1 fees" against the assets

7  of all WM Funds.  The amount and purpose of such 12b-1 fees were listed in the WM Funds'

8  Prospectuses and SAIs during all relevant times.

9        38.      Pursuant to the Registrants' 12b-1 Plan, the WM Distributor paid Brokers a 25 BP

10  12b-1 commission (the *maximum allowed* by NASD Rule 2830(d)(5)) on all sales of the WM

11  Funds, as well as a 25 BP residual 12b-1 commission on all past sales.

12  **C.      The Advisor Paid Fee**

13        39.      In addition to "12b-1 fees," Plaintiff and the Class had "management fees" and,

14  separately, "other expenses" charged against their interests in the WM Funds.  However, neither

15  the Registrants nor the WM Advisor or Distributor could use such "management fees" or "other

16  expenses" for compensating Brokers without violating Section 12(b) of the 1940 Act because

17  such fees were not within the scope of the Registrants' 12b-1 Plan.  In addition, since the

18  Registrants 12b-1 commissions to Brokers were already 25 BP, no additional compensation

19  could be paid to Brokers without violating NASD Rule 2830(k).

20        40.      However, as detailed below, the Registrants, with material assistance from the

21  WM Advisor and/or Distributor, sought to, and did, circumvent the limitations of Section 12(b)

22  of the 1940 Act, and Rule 12b-1 promulgated thereunder, by making payments to Brokers of 75

23  BP, *in addition to* and *separate* from the Registrants' 12b-1 Plan.

24        41.      During the relevant time period there were 24 WM Funds issued by the

25  Registrants pursuant to joint Prospectuses.  Registrants WM Trust I and WM Trust II issued 19

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 11
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

of the 24 WM Funds;[10]  Registrant WM Portfolio issued the remaining five (a subset of the WM Funds denominated herein the "WM Portfolio Funds").[11]  The WM Portfolio Funds invest exclusively in securities of the other 19 WM Funds. Mutual funds that invest in other mutual funds are commonly called "fund-of-funds."

42.     Because the WM Portfolio Funds invest directly in other WM Funds, the WM Advisor is essentially paid twice to do the same investment management.  Specifically, the Portfolio Funds' shareholders directly pay "management fees" (and other fees) to the WM Advisor and indirectly pay "management fees" against the underlying WM Funds comprising the Portfolio.  For the WM Portfolio Funds, the WM Advisor is permitted to "double-dip" on fees, and investment in Portfolio Fund shares correspondingly increases investment in all WM Funds.

43.     The WM Advisor paid the undisclosed 75 BP Advisor Paid Fee to Brokers as described above for selling WM *Portfolio* Funds because such Funds generated the most profit for the WM Advisor and WM Distributor.  The WM Advisor improperly inflated its "management fees" for *all* WM Funds as a scheme to channel investors into the WM Portfolio Funds, increase assets under management, and therefore increase fee income.  Plaintiff and the Class all paid inflated "management fees" to the Advisor and received nothing for their money.

44.     Payment of the Advisor Paid Fee was not made pursuant to the Registrants' March 6, 2001, or February 20, 2003, 12b-1 Plan even though this Advisor Paid Fee fell within Rule 12b-1.  In addition, payment of the Advisor Paid Fee was not "approved by a vote of at least a majority of the outstanding voting securities" of the WM Funds.  *See* 17 C.F.R.

---

[10] The 19 WM Funds issued by WM Trust I and WM Trust II are:  Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth, International Growth, and Small Cap Growth.

[11] The five WM Portfolio Funds issued by WM Portfolio are:  Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 12
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    § 270.12b-1(b)(1).  *In short, the Advisor Paid Fee was illegal under Section 12(b) of the 1940*

2    *Act.*

3         45.    The WM Advisor is responsible for formulating the WM Funds' investment

4    policies, analyzing economic trends, monitoring each WM Fund's investment performance and

5    reporting to the Registrants' common Board of Trustees.  The Registrants authorized the WM

6    Advisor to debit "management fees" from WM Funds assets, ostensibly for managing the day-to-

7    day investment decisions of the WM Funds.  However, the WM Advisor was merely a conduit

8    for passing the preponderant part of such "management fees" to Brokers.

9         46.    The WM Advisor owes fiduciary duties to Plaintiff and the Class concerning the

10   receipt of compensation from the WM Funds.  This fiduciary duty requires, at least, that the WM

11   Advisor not charge "management fees" to create a kickback slush fund that compromises

12   Brokers' investment advice.

13        47.    Plaintiff and each of the Class members purchased shares or other ownership units

14   in the WM Funds pursuant to a registration statement and Prospectus.  The registration

15   statements and Prospectuses pursuant to which Plaintiff and the other Class members purchased

16   their shares or other ownership units in the WM Funds had effective dates of March 1, 2002,

17   March 1, 2003, March 1, 2004, March 1, 2005, and/or March 1, 2006.

18   **D.   Misleading Statements and Omissions**

19        48.    Prospectuses and their SAIs are required to disclose *all* material facts in order to

20   provide investors with information that will assist them in making an informed decision about

21   whether to invest in a mutual fund.  The law requires that such disclosures be in straightforward

22   and easy to understand language such that it is readily comprehensible to the average investor.

23        49.    In the March 1, 2002, and March 1, 2003, WM Funds Prospectuses, the

24   Registrants made the following materially false and misleading statements:

25            The Distributor *may, from time to time*, pay to other dealers, in
             connection with retail sales or the distribution of shares of a
26            Portfolio or Fund, material compensation in the form of

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 13
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

merchandise or trips.  Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person entitled to receive any compensation for selling or servicing Portfolio or Fund shares, may receive different compensation with respect to one particular class of shares over another, and *may receive additional compensation or other incentives for selling Portfolio or Fund shares.*

(Emphasis added.)

50.     Plaintiff and/or members of the Class were entitled to and did receive the Registrants' March 1, 2002, and March 1, 2003, Prospectuses, each of which failed to disclose the following material facts:

a.      The Registrants, the WM Advisor and WM Distributor were diverting "management fees" debited from Funds issued by WM Trust I and WM Trust II to finance the Advisor Paid Fee;

b.      the Steering Programs described herein created insurmountable *conflicts of interest* between Registrants, the WM Advisor and WM Distributor and Brokers;

c.      Brokers *in fact* received 75 BP payments in the form of Advisor Paid Fees, and fees for placing the WM Funds on "preferred lists";

d.      the Advisor Paid Fee was *illegal* under Section 12(b) of the 1940 Act because it was not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

e.      the Advisor Paid Fee was *three times* the allowable commission to Brokers under NASD Rule 2830(d)(5), and was in addition to the maximum 25 BP 12b-1 commission paid to Brokers;

f.      The Registrants, the WM Advisor and WM Distributor had adopted the Steering Programs to incent Brokers to aggressively push the WM Funds on unsuspecting investors;

g.      the Advisor Paid Fee was paid not only when Brokers made an initial sale of the WM Portfolio Funds, but was also paid every year as a residual commission on past sales;

SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS  - 14
Case No. C-08-1251 MJP

010074-11  276810 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1           h.      Brokers selling the WM Funds were *in fact* paid valuable consideration for

2 placing the WM Funds on "preferred lists";

3           i.      Brokers selling the WM funds were *in fact* paid valuable compensation

4 tied to the length of time Plaintiff and the Class hold their WM Funds;

5           j.      the Steering Programs created undisclosed incentives to push shares or

6 other ownership units of the WM Funds to the exclusion of other investment alternatives;

7           k.      the only investment advantage associated with WM Funds was almost

8 always an advantage to the Registrants, the WM Advisor, WM Distributor and Brokers, all at the

9 expense of Plaintiff and the Class; and

10           l.      pursuant to the wrongful Steering Programs described herein, defendants

11 benefitted financially at the expense of Plaintiff and members of the Class.

12      51.      In the March 1, 2002, and March 1, 2003, WM Funds' SAI, filed with the

13 registration statement containing the March 1, 2002, and March 1, 2003, WM Funds'

14 Prospectuses, the Registrants made the following materially false and misleading statements:

15            In determining to approve the most recent annual extension of the
Trusts' investment advisory agreement with the Advisor (the
16            "Advisory Agreement") ... the Trustees met over the course of the
Trusts' last fiscal year with the relevant investment advisory
17            personnel and considered information provided by the Advisor and
the Sub-advisors relating to the education, experience and number
18            of investment professionals and other personnel providing services
under the Advisory Agreement and each Sub-advisory Agreement.

19                                   * * *

20            The Trustees evaluated the records of the Advisor and Sub-
21            advisors with respect to regulatory compliance and compliance
with the investment policies of the Portfolios and Funds.  *The*
22            *Trustees also evaluated the procedures of the Advisor and each*
*Sub-advisor designed to fulfill their fiduciary duties to the*
23            *Portfolios and Funds with respect to possible conflicts of interest,*
*including the codes of ethics of the Advisor* and each of the Sub-
24            advisors (regulating the personal trading of its officers and
employees (see "Codes of Ethics" above under "Management"))
25            the procedures by which the Advisor allocates trades among its
various investment advisory clients, *the integrity of the systems in*

26

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

> *place to ensure compliance with the foregoing and the record of*
> *the Adviser and the Sub-advisors in these matters.*
>
> \* \* \*
>
> Based on the foregoing, the Trustees concluded that the fees to be
> paid the Advisor and the Sub-advisors under the Advisory
> Agreement and each Sub-advisory Agreement were fair and
> reasonable, given the scope and quality of the services rendered by
> the Advisor and the Sub-advisors.

52.     Plaintiff and/or members of the Class were entitled to and did receive the Registrants' March 1, 2002, and March 1, 2003, Prospectuses, each of which failed to disclose the following material facts:

a.      The WM Advisor had material conflicts of interest with Plaintiff and the Class as to its receipt of "management fees" because such fees were used to fund the Advisor Paid Fee;

b.      The Registrants' "evaluat[ion] of the procedures of the Advisor ... designed to fulfill their fiduciary duties to the Portfolios and Funds with respect to possible conflicts of interest" was inadequate, non-existent and/or contrived;

c.      The "fees paid to the Advisor ... under the Advisory agreement" were not fair or reasonable because such fees were materially inflated due to the Advisor's payment of the illegal Advisor Paid Fee.

53.     In the March 1, 2004, WM Funds SAI, the Registrants made statements identical to those described *supra* in paragraph 51, which were materially false and misleading because they omitted the material facts described *supra* in paragraph 52.  Plaintiff and members of the Class were entitled to and did receive the Registrants' March 1, 2004, WM Funds SAI.

54.     In the March 1, 2004, WM Funds Prospectus, the Registrants made the following materially false and misleading statements:

> WM Advisors may make payments, at its expense, to dealers or
> other financial intermediaries at an annual rate of up to 0.50% of
> the average daily net assets of shares of the Portfolios. [ ¶ ]

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 16
Case No. C-08-1251 MJP



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

The Distributor, *at its expense*, *may* provide additional compensation to dealers.  These payments *generally* represent a percentage of a qualifying dealer's sales and/or the value of shares of the Portfolios or Funds within a qualifying dealer's client accounts.... [¶]

Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person entitled to receive any compensation for selling or servicing Portfolio or Fund shares ... *may receive additional compensation or other incentives for selling Portfolio or Fund shares*. [Emphasis added.]

55.     Plaintiff and/or members of the Class were entitled to and did receive the Registrants' March 1, 2004, Prospectus, which failed to disclose the following material facts:

a.      The Registrants, the WM Advisor and WM Distributor were diverting "management fees" debited from Funds issued by WM Trust I and WM Trust II to finance the Advisor Paid Fee;

b.      the Steering Programs described herein created insurmountable *conflicts of interest* between Registrants, the WM Advisor and WM Distributor and Brokers;

c.      the statement that Brokers received "up to 0.50% of the average daily net assets of shares of the Portfolios" was *false* as Brokers received 75 BP payments in the form of Advisor Paid Fees;

d.      the Advisor Paid Fee was *illegal* under Section 12(b) of the 1940 Act because it was not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

e.      the Advisor Paid Fee was *three times* the allowable commission to Brokers under NASD Rule 2830(d)(5) and was in addition to the maximum 25 BP 12b-1 commission paid to Brokers;

f.      The Registrants, the WM Advisor and WM Distributor had adopted the Steering Programs to incent Brokers to aggressively push the WM Funds on unsuspecting investors;



1         g.    the Advisor Paid Fee was paid not only when Brokers made an initial sale

2   of the WM Portfolio Funds but was also paid every year as a residual commission on past sales;

3         h.    Brokers selling the WM Funds were *in fact* paid valuable consideration for

4   placing the WM Funds on "preferred lists";

5         i.    Brokers selling the WM funds were *in fact* paid valuable compensation

6   tied to the length of time Plaintiff and the Class hold their WM Funds;

7         j.    the Steering Programs created undisclosed incentives to push shares or

8   other ownership units of the WM Funds to the exclusion of other investment alternatives;

9         k.    the only investment advantage associated with WM Funds was almost

10  always an advantage to the Registrants, the WM Advisor, WM Distributor and Brokers, all at the

11  expense of Plaintiff and the Class;

12        l.    the WM Advisor and/or WM Distributor had *already* entered into pre-

13  determined, specific, and negotiated arrangements with Brokers to steer Plaintiff and the Class

14  into the WM Funds pursuant to the Advisor Paid Fee and "preferred list(s)" in effect since at

15  least the year 2000; and

16        m.    pursuant to the wrongful Steering Programs described herein, defendants

17  benefitted financially at the expense of Plaintiff and members of the Class.

18      56.    The Registrants' March 1, 2005, Prospectus filed with the SEC was unlike

19  previous years'.  The Registrants' March 1, 2005, registration contained separate Prospectuses

20  for the WM Portfolio Funds and other 19 WM Funds.  The March 1, 2005, WM *Portfolio* Funds'

21  Prospectus stated:

22          OTHER PAYMENTS TO INTERMEDIARIES.  WM
        ADVISORS ALSO OFFERS *REVENUE SHARING PAYMENTS*,

23          REFERRED TO AS "ADVISOR PAID FEES," TO ALL
        FINANCIAL INTERMEDIARIES WITH ACTIVE SELLING

24          AGREEMENTS WITH THE DISTRIBUTOR.  THE ADVISOR
        PAID FEES ARE PAID AT AN ANNUAL RATE OF *UP TO*

25          *0.50%* OF THE AVERAGE NET ASSETS OF CLASS A AND
        CLASS B SHARES OF THE PORTFOLIOS SERVICED BY

26          SUCH INTERMEDIARIES AND AN ANNUAL RATE OF UP



TO 0.25% OF THE AVERAGE NET ASSETS OF CLASS C
SHARES OF THE PORTFOLIOS SERVICED THROUGH
SUCH INTERMEDIARIES.  THESE PAYMENTS ARE *MADE
FROM WM ADVISORS' PROFITS* AND *MAY* BE PASSED ON
TO YOUR INVESTMENT REPRESENTATIVE AT THE
DISCRETION OF HIS OR HER FINANCIAL INTERMEDIARY
FIRM.  THESE PAYMENTS *MAY* CREATE AN INCENTIVE
FOR THE FINANCIAL INTERMEDIARIES AND/OR
INVESTMENT REPRESENTATIVES TO RECOMMEND OR
OFFER SHARES OF THE PORTFOLIOS OVER OTHER
INVESTMENT ALTERNATIVES.

... In some cases, financial intermediaries will include the WM
Group of Funds on a "preferred list."  The Distributor's goals
include making the Investment Representatives who interact with
current and prospective investors and shareholders more
knowledgeable about the WM Group of Funds so that they can
provide suitable information and advice about the Portfolios and
related investor services.

IF ONE MUTUAL FUND SPONSOR MAKES GREATER
DISTRIBUTION ASSISTANCE PAYMENTS THAN
ANOTHER, YOUR INVESTMENT REPRESENTATIVE AND
HIS OR HER FINANCIAL INTERMEDIARY *MAY* HAVE AN
INCENTIVE TO RECOMMEND ONE FUND COMPLEX OVER
ANOTHER.  SIMILARLY, IF YOUR INVESTMENT
REPRESENTATIVE OR HIS OR HER FINANCIAL
INTERMEDIARY RECEIVES MORE DISTRIBUTION
ASSISTANCE FOR ONE SHARE CLASS VERSUS ANOTHER,
THEN THEY *MAY* HAVE AN INCENTIVE TO RECOMMEND
THAT CLASS.  [Emphasis added.]

57.    The Registrants' March 1, 2005, WM Funds registration statement did not contain

similar disclosures in the Prospectus for the other 19 WM Funds issued by Registrants WM

Trust I and WM Trust II.  The registration statement failed to disclose the following material

facts:

a.    the Advisor Paid Fee was not made from the WM Advisor's profits as the

inflated "management fees" paid out of *all* WM Funds were *actually* the source of the Advisor

Paid Fee;

b.    The Registrants, the WM Advisor and WM Distributor were diverting

"management fees" debited from Funds issued by WM Trust I and WM Trust II to finance the

Advisor Paid Fee;

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 19
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

c.      Brokers *actually* received 75 BP (not "UP TO 0.50%") in the form of Advisor Paid Fee for sales of *all* WM Fund shares;

d.      the Steering Programs *in fact* created insurmountable conflicts of interest between the Registrants, WM Advisor, WM Distributor and/or Brokers;

e.      The Advisor Paid Fee is *illegal* under Section 12(b) of the 1940 Act because not authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

f.      The Registrants did not amend their 12b-1 Plan to account for payment of the Advisor Paid Fee;

g.      the Advisor Paid Fee was *three times* the allowable commission to Brokers under NASD Rule 2830(d)(5), and was in addition to the maximum 25 BP 12b-1 commission paid to Brokers;

58.      The Registrants' March 1, 2005, Portfolio Funds prospectus did not actually or constructively put Plaintiff or the Class on notice that the Registrants, the WM Advisor and Distributor were *in the past* engaged in the Steering Programs, as purported "disclosures" prior to March 1, 2005, were unclear and intended by the Registrants to be vague and ambiguous.  The March 1, 2005, *Portfolio* Funds prospectus in the March 1, 2005, registration statement made no remedial disclosures of past activity and contained no statement that its purported disclosures applied retroactively to amend previous prospectuses, and Plaintiff and the Class reasonably believed that such purported disclosures represented a change in practice by the Registrants, the WM Advisor and Distributor.  In addition, the Registrants' March 1, 2005, prospectus for WM Trust I and WM Trust II WM Funds did not have *any* disclosure relating to the Advisor Paid Fee so as to alert shareholders of the 19 WM Funds issued by WM Trust I and WM Trust II that the NAV of their funds was being depleted by diverting "management fees" to pay the Advisor Paid Fee.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 20
Case No. C-08-1251 MJP

010074-11 276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

59.     The Registrants' registration statements after March 1, 2005, including the March 1, 2006, WM Funds registration statement, the Registrants made statements identical to those described *supra* in paragraph 56, which were materially false and misleading because they omitted, at least, the material facts described *supra* in paragraph 57.  Plaintiff and/or members of the Class were entitled to and did receive the Registrants' March 1, 2006, WM Funds Prospectus(es).  The Registrants continued the Advisor Paid Fee until the sale of the WM Funds (as well as the WM Advisor and WM Distributor) to the Principal Defendants.  *However, while the Advisor Paid Fee was discontinued for new sales, it was "grandfathered" to Brokers with then-existing arrangements to receive the Advisor Paid Fee.*  Plaintiff believe to be true and believe there will be substantial evidentiary basis that the Principal Investors Fund continues to pay such "grandfathered" Advisor Paid Fees for WM Fund Sales occurring up the WM Funds' sale to the Principal Defendants.

60.     The Registrants, the WM Advisor and WM Distributor have not been the subject of news reports concerning their Steering Programs, nor been publicly reprimanded by the SEC, NASD/FINRA, or similar enforcement body for their concerted efforts to "steer" clients into the WM Funds.  Accordingly, Plaintiff and members of the Class did not have actual or constructive knowledge that the undisclosed activities complained of herein were taking place.

61.     Defendants have never publicly disclosed the fact that the Advisor Paid Fee was 75 BP instead of the 50 BP as represented by the Registrants in their March 1, 2005, and March 1, 2006, Prospectuses.  Plaintiff (constructively) learned that the Advisor Paid Fee was 75 BP when on or about December 20, 2007, as a result of ongoing investigation, Plaintiff's counsel received a copy of a document distributed by defendant WM Distributor to Brokers selling the WM Funds.  The document, a true and correct copy of which is attached hereto as Exhibit A, states that the Advisor Paid Fee was paid at "75 Bps. Total Fee Income."  The document stated that it was "*For Broker/Dealer use only.  Not for written or verbal distribution to clients.*"

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 21
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    Plaintiff and the Class assert on information and belief that, as intended by defendants, the

2    Brokers never disclosed to them the existence or amount of the Advisor Paid Fee.

3    **E.    Scienter Allegations**

4    62.    The Registrants, WM Advisor and Distributor, led by William Papesh, instituted

5    the Advisor Paid Fee and "preferred list(s)" in 1997.  Thereafter, in the Registrants' March 1998

6    prospectus, the Registrants stated that the WM Distributor "may" pay "additional compensation

7    or other incentives for selling [WM Fund] shares."  As demonstrated above, the Registrants

8    utilized essentially identical language through 2003, with minimal additional detail in 2004 and

9    2005.  The Registrants' purported "disclosures" were not drafted in the abstract, but were created

10   in response to the Steering Programs.  The fact that the disclosures came after the Steering

11   Programs were put in place and evolution of the purported disclosures over time demonstrate that

12   the Registrants intentionally sought to disclose as little information as possible about the Steering

13   Programs.

14   63.    The prohibitions on payments to Brokers by Section 12(b) of the 1940 Act, as

15   well as the limitations on legitimate payments contained in SEC Rule 12b-1 are common

16   knowledge in the mutual fund industry.  The Registrants' knowledge and/or reckless disregard of

17   these limitations as they relate to the Advisor Paid Fee raises a strong inference of scienter.

18   Defendant Papesh requested sometime in late 2003 to early 2004 that Cerulli Associates, a

19   Boston-based consultancy that undertakes strategic research projects for the financial services

20   industry, analyze the advisability and potential exposure resulting from the Advisor Paid Fee.

21   Cerulli Associates did so and issued a report on its findings (the "Cerulli Report").  The Cerulli

22   Report allegedly concludes that the Advisor Paid Fee was highly problematic and should be

23   discontinued immediately.  However, Mr. Papesh allegedly refused for a considerable time to act

24   on the Cerulli Report's recommendations or issue corrective disclosures concerning the Advisor

25   Paid Fee.  The Cerulli Report was distributed, reviewed and discussed by, at least, defendant

26   Papesh, and several other of defendants' highest executives.  The existence or contents of the

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 22
Case No. C-08-1251 MJP



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    Cerulli Report have not been made public other than through Plaintiff's complaint in this action

2    and in a March 5, 2008, motion to lift the PSLRA discovery stay in the *Zapien* Action (*see infra*

3    paragraphs 86-90).

4         64.    The Registrants' false statements that the "Advisor[] may make payments ... at an

5    annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios," when the

6    Registrants knew that such payment was actually 75 BP (0.75%), raises a strong inference of

7    scienter.

8         65.    The fact that the Registrants have the Steering Program(s) in place indicates that

9    the Registrants know and believe such Programs drive and increase sales.  By virtue of the

10   descriptions of the Steering Program(s) contained in purported disclosures after March 1, 2005,

11   defendants recognized the existence and nature of such Program(s) to be material to a reasonable

12   investor.  By virtue of the existence of the Steering Program(s), the Registrants' directors knew

13   about the *already-in-place* Advisor Paid Fee and "preferred list(s)," but drafted, authorized and

14   thereafter left in place intentionally vague disclosures.  The Steering Programs are not analogous

15   to a financial result the existence or significance of which can be overlooked at the time of initial

16   disclosure, but were instead a deliberate *marketing program* orchestrated and executed for the

17   purpose of driving sales and increasing the WM Fund Companies' revenue to the detriment of

18   Plaintiff and the Class.

19        66.    The fact that the Registrants' false statements in the March 1, 2005 and 2006

20   Prospectuses, including *inter alia*, that WM Advisor and WM Distributor make payments "at its

21   expense," when in reality those payments were derived directly from Plaintiff and the Class's

22   "management fees" and "other expenses" indicates that the Registrants knew the programs were

23   improper and were attempting to limit their exposure for engaging in the Shelf-Space Programs.

24        67.    The Registrants, the WM Advisor and WM Distributor reaped huge profits from

25   the Steering Programs and had an incentive to keep them secret.  Increasing sales of the WM

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 23
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1   Funds infused more assets and therefore more fees to the WM Advisor and WM Distributor in

2   the form of "management fees," loads, commissions, and 12b-1 fees.

3         68.    The Registrants partially disclosed, but did not end, the Steering Programs only

4   after the illegal activities and scandals in the mutual fund industry were finally revealed to the

5   public in 2004.  The Registrants took these actions in a transparent and belated attempt to "clean

6   up" their disclosures and minimize their potential liability.  The Registrants therefore knew the

7   Steering Programs regarding WM Fund sales were wrong and improper.  In light of this

8   conscious strategy, the failure to disclose the full extent of the Steering Programs even in the

9   March 1, 2005, registration statement (and after) raises a strong inference of scienter.

10         69.    The Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78) safe

11   harbor protecting individuals and companies giving investment advice does not apply here.  The

12   safe harbor provision does not apply where defendants, as here, knew at the time they were

13   issuing statements that the statements contained false and misleading information and thus

14   lacked any reasonable basis for making them.

15   **F.**    **Damages Allegations**

16         70.    A mutual fund company is very different from a traditional corporation, in that a

17   mutual fund is a mere shell, a pool of assets consisting mostly of portfolio securities that belong

18   to the individual investors holding shares in the fund.  The management of this asset pool is

19   largely in the hands of an investment advisor, an independent entity that generally organizes the

20   fund and provides it with investment advice, management services, office space and staff.

21         71.    Unlike a traditional corporation, if those in charge of a mutual fund engage in

22   wrongful activities that injure the mutual fund, investors are directly injured because a mutual

23   fund is nothing more than a collection of the investors' money.  When a cost is imposed on a

24   traditional corporation, that cost impacts the corporation's book value  but does not necessarily

25   impact the market price of the corporation's shares.  Those costs thus do not directly impact the

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 24
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    shareholder.  In contrast, costs imposed on a mutual fund directly reduce the price at which the

2    fund's shares are bought and sold, and do directly and immediately impact fund shareholders.

3          72.    In addition, mutual fund shares do not trade at a price set by the public market.

4    Rather, they are bought from and sold back to the fund at net asset value ("NAV") per share in a

5    method provided by statute.  Opened-ended mutual funds such as the WM Funds are required to

6    issue redeemable securities, which are defined as "any security... under the terms of which the

7    holder, upon its presentation to the issuer ... is entitled ... to receive approximately his

8    proportionate share of the issuer's current net assets, or the cash equivalent thereof."  15 U.S.C.

9    § 80a-2(a)(32).  The value of a mutual fund is determined by subtracting a fund's liabilities from

10   its assets to arrive at the fund's NAV.  When paid, the undisclosed fees and charges at issue here

11   immediately reduced that WM Funds' NAV per share, decreasing the amount for which Plaintiff

12   and the Class are entitled to redeem their shares.

13         73.    Although the various fees charged to mutual fund investors may seem small for

14   each individual investor, mutual funds are long-term investment vehicles where compounded

15   expenses have a significant impact on returns.  Nominally small, yet compounding, fees

16   materially erode cumulative returns over time.

17         74.    Plaintiff and the Class accepted as an integral aspect of purchasing shares of the

18   WM Funds that they would be required to pay fees and expenses against their ownership

19   interests therein, with the understanding that those charges were legitimate outlays for services

20   that would benefit the Funds and contribute to their value.  In truth, a significant portion of those

21   expenses were being used, not to provide the promised services, but to increase the profits of the

22   Registrants, the WM Advisor, WM Distributor and Brokers by financing the Steering Programs

23   challenged in this lawsuit.

24         75.    The Registrants' non-disclosures and misrepresentations indicated to Plaintiff and

25   the Class that they would pay out of their principal only fees for services that benefited Plaintiff

26   and the Class.  In reality, Plaintiff and the Class's principal was funding the Steering Programs,



1   which were being used to induce Plaintiff and the Class members to hold their shares of the WM

2   Funds, purchase additional shares of the WM Funds, and induce third parties to purchase shares

3   of the WM Funds, none of which benefited Plaintiff and the Class and instead diminished the

4   NAV of their WM Funds shares.

5         76.    The Steering Programs system of payments caused Plaintiff and the Class an

6   economic loss:  absent those payments, Plaintiff and the Class's deductions for fees, and thus the

7   resulting diminution of their investments' NAV, would have been smaller.

8         77.    The Registrants did not adequately disclose the Steering Programs as such, nor

9   did their disclosure state sufficient facts about these Programs for Plaintiff and the Class to

10  understand the extent of the conflicts of interest inherent in them.  Plaintiff and members of the

11  Class would not have purchased the WM Funds or paid the related commissions and fees used to

12  finance the Steering Programs had the existence or nature of the Steering Programs been

13  disclosed.

14        78.    Plaintiff and the Class have suffered damages as a result of the Registrants'

15  conduct alleged above.  The damages suffered by Plaintiff and the Class were a foreseeable

16  consequence of the Registrants' misleading statements, omissions and misconduct.  By investing

17  in the WM Funds, Plaintiff and the Class received a return on their investment that was

18  materially less than their return had the Registrants, WM Advisor and Distributor not engaged in

19  the costly Steering Programs.

20  **G.     Unity of Interest Between the Registrants, WM Advisor, and WM Distributor**

21        79.    The Registrants, the WM Advisor, and WM Distributor have ownership,

22  management and operation that are inextricably intertwined giving such entities a unity of

23  interest for purposes of liability as alleged herein.

24        80.    A common Board of Trustees governs the Registrants and oversees their

25  activities.  The Registrants' officers are also officers and/or employees of the WM Advisor

26  and/or WM Distributor.



81.     For example, the Chairman of the Registrants' common Board of Trustees, Defendant William G. Papesh ("Papesh"), was, during all relevant times, also the President, Chief Executive Officer ("CEO") and Director of WM Trust I, WM Trust II, WM Portfolios, WM Advisor and Distributor.  Monte D. Calvin, who served as First Vice President ("VP"), Chief Financial Officer ("CFO") and Treasurer of the Registrants during all relevant times, also served as First VP and Director of the WM Advisor and Distributor.  Sandy Cavanaugh served as Senior VP to the Registrants and President, Director and Senior VP to the WM Distributor and Director of the WM Advisor at all relevant times.  Alex Ghazanfari served as VP and Assistant Compliance Officer to the Registrants and VP and the Distributor at all relevant times.  Sharon L. Howells served as First VP of the Registrants and First VP, Secretary and Director of the WM Advisor and Distributor at all relevant times.  Gary J. Pokrzywinski served as First VP and VP of the Registrants, and First VP of the WM Advisor at all relevant times.  Stephen Q. Spencer served as First VP of the Registrants and First VP to the WM Advisor at all relevant times.  John Q. West at all relevant times served as First VP, Secretary and Officer of the Registrants and First VP of the WM Advisor and Distributor.  Randall L. Yokum served as Senior VP and First VP of the Registrants and Senior VP, Chief Investment Strategist and Director of the WM Advisor and Director of the Distributor at all relevant times.

## H.     Successor Liability for the Principal Defendants

82.     On July 25, 2006, Principal and its subsidiary, Principal Management Corporation, entered into an agreement to acquire all of the outstanding stock of the following entities:  WM Advisor, WM Distributor, and WM Shareholder Services, Inc. (the "Acquisition").  On August 11, 2006, the Registrants' common Board of Trustees approved the proposed Acquisition pursuant to which each of the WM Funds would merge into the corresponding separate acquiring fund of Principal Investors Fund (the "Acquiring Funds").  WM Fund shareholders approved the Acquisition on December 15, 2006.  By January 2007, the Acquisition was consummated.



83.     Under the Acquisition, (i) all the assets and certain stated liabilities of the WM Funds were transferred to its corresponding Acquiring Fund in exchange for Class A, Class B, Class C and Institutional Class ("Class I") shares of the Acquiring Fund; (ii) holders of Class A, Class B, Class C and Class I shares of the WM Funds received, respectively, that number of Class A, Class B, Class C and Class I shares of the corresponding Acquiring Fund equal in value at the time of the exchange to the value of the holder's WM Fund shares; and (iii) the WM Funds were liquidated and dissolved.

84.     The WM Advisor became investment advisor to the Principal Investors Fund. WM Advisor was renamed defendant Edge Asset Management, Inc. ("Edge"), but remains in Seattle and employs many of WM Advisor's officers and employees listed *supra* in paragraph 81.  The officers and employees of WM Funds Distributor formed the management and staff of Principal Funds Distributor, the distributor to the Principal Investors Fund.  Four members of the Board of Trustees for the Registrants were elected to the board of Principal Investors Fund.  This group includes Richard Yancey, Daniel Pavelich, Kristianne Blake and William G. Papesh.

85.     The Principal Defendants and the Registrants, WM Advisor and WM Distributor thus share a unity of interest with respect to the issues of this lawsuit and are the alter ego of their corresponding WM entity.  Such unity dictates that the Principal Defendants be held jointly and severably liable for the misconduct of the WM entities as alleged in this complaint.  The Principal entities have acquired the WM entities liabilities for the conduct as alleged in this lawsuit.  The Registrants' board members are now board members of Principal Investors Fund.

**I.      Tolling Allegations**

86.     On February 28, 2007, plaintiff Luz M. Zapien filed a class action lawsuit in the United States District Court for the Southern District of California (3:07-cv-00385-DMS-CAB), against defendants Washington Mutual, Inc., WM Trust I, WM Trust II, WM Strategic Asset Management Portfolios, LLC, WM Financial Services, Inc., WM Advisors, Inc., WM Funds Distributor, Inc., Edge Asset Management, Inc., Principal Financial Group, Inc., Principal



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

Investors Fund, Inc., and Principal Funds Distributor, Inc., alleging violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), Section 15 of the Securities Act, 15 U.S.C. § 77o, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and Rule 10b-10, 17 C.F.R. § 240.10b-10, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t (the "*Zapien* Action").

87.     The *Zapien* Action alleged, *inter alia*, that defendants herein had an undisclosed "preferred list" and similarly misleading disclosures regarding their revenue-sharing, kickback and other cash and non-cash incentive programs designed to improperly incent broker/dealers to push the WM Funds and thereby drive sales, regardless of their appropriateness or superior alternatives for the individual retail investor.  These disclosures relate to the same disclosures in the WM Funds March 1, 2004, Prospectus at issue in this lawsuit.  On August 24, 2007, the plaintiff in the *Zapien* Action filed a first amended complaint specifically identifying that the revenue sharing and kickback programs identified in the original complaint were tied to the Advisor Paid Fee at issue herein.  The first amended complaint in the *Zapien* Action alleged that the Registrants' Prospectuses dated March 1, 2000, March 1, 2001, March 1, 2002, March 1, 2003, March 1, 2004, and/or March 1, 2005 were false and misleading for their failure to disclose the existence and/or details surrounding the Advisor Paid Fee at issue herein.

88.     On August 19, 2008, the court in the *Zapien* Action issued its final order denying the named plaintiff's motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and 60(b) of the court's June 17, 2008, order granting defendants' motion to dismiss and entry of judgment thereon.  This action was filed on August 20, 2008.

89.     The court in the *Zapien* Action made no rulings on the merits, and dismissal was based on the named plaintiff's lack of standing as a "purchaser" under the federal securities laws. No motion for class certification was made or ruled upon in the *Zapien* Action, and the existence and limits of the class of plaintiffs represented in the *Zapien* Action was not established. Plaintiff and the Class members herein relied on the filing of the *Zapien* Action to protect their

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 29
Case No. C-08-1251 MJP

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

010074-11  276810 V1

1    rights.  Plaintiff and/or the Class herein were members of the class or classes represented in the

2    *Zapien* Action had the *Zapien* Action been permitted to continue as a class action.

3          90.     On September 11, 2008, plaintiff in the *Zapien* Action filed a notice of appeal to

4    the Ninth Circuit Court of Appeals challenging the district court's decision on the issue of

5    standing.  The Zapien Action presented no other issues, including merits issues, to the Ninth

6    Circuit.

7                      **V.**       **CLASS ALLEGATIONS**

8          91.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

9    Procedure 23 on behalf of a Class consisting of:  All persons or entities that purchased or

10    otherwise acquired shares, units or like interests in any of the WM Funds (including through the

11    reinvestment of Fund dividends) between March 1, 2002, through December 31, 2006, inclusive.

12    Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other

13    entity related to or affiliated with any defendant.

14          92.     The members of the Class are so numerous that joinder of all members is

15    impracticable.  While the exact number of Class members is unknown to Plaintiff at this time

16    and can only be ascertained through appropriate discovery, Plaintiff believes that there are

17    thousands of members in the proposed Class.  Record owners and other members of the Class

18    may be identified from records maintained by defendants, and may be notified of the pendency

19    of this action by mail, using the form of notice similar to that customarily used in securities class

20    actions.

21          93.     Plaintiff's claims are typical of the claims of the members of the Class as all

22    members of the Class are similarly affected by Defendants' wrongful conduct complained of

23    herein in violation of federal law.  Plaintiff does not have interests adverse to the Class.

24          94.     Plaintiff will fairly and adequately protect the Class members' interests and has

25    retained counsel competent and experienced in class action and securities litigation.

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 30
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

95.     Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members.  Among the questions of law and fact common to the Class are:

(a)     whether statements made by the Registrants to the investing public between March 1, 2002, and December 31, 2006, inclusive, concerning the existence of, source of funding for, purpose and effect of the Steering Programs misstated, omitted or concealed material facts;

(b)     whether the Registrants' false and misleading statements and omissions are material as a matter of law;

(c)     whether Plaintiff and the Class's WM Funds' assets were diminished by the Steering Programs and the fees deducted therefore;

(d)     whether the Registrants acted with scienter when issuing the false and misleading statements and omissions;

(e)     whether the Steering Programs created insurmountable conflict(s) of interest for the Registrants, the WM Advisor, WM Distributor and/or Brokers;

(f)     whether Defendants' acts as alleged herein violated the federal securities laws; and

(g)     to what extent Plaintiff and Class members have sustained damages and the proper measure of damages.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually redress the wrongs done to them.  There will be no difficulty in managing this action as a class action.

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 31
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

97.     Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Against The Registrants And Principal Investors Fund
### For Violations Of Section 11 Of The Securities Act

98.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, such as paragraphs 62-69.

99.     This claim is brought pursuant to Section 11 of the Securities Act (15 U.S.C. § 77k) against the Registrants and Principal Investors Fund on behalf of Plaintiff and the Class.

100.    The Registrants were the registrant(s), and Principal Investors Fund is the successor in interest to the Registrants, for one or more of the respective WM Funds' shares sold to Plaintiff and the Class.  The Registrants issued, caused to be issued and participated in the issuance of the materially false and misleading written statements and/or omissions of material fact that were contained in the respective Prospectus(es) and are statutorily liable under Section 11.

101.    Prior to purchasing ownership units of the WM Funds, Plaintiff was provided the appropriate Prospectus(es) and, similarly, prior to purchasing the ownership units of each of the other WM Funds, all Class members likewise received the appropriate Prospectus(es).  Plaintiff and other Class members purchased shares of the WM Funds traceable to the false and misleading Prospectus(es).

102.    As set forth above, the statements contained in the Prospectuses were materially false and misleading for a number of reasons, including that they failed to disclose, and actively concealed, that it was the practice of the Registrants, the WM Advisor and Distributor to reward



1   Brokers for selling the WM Funds, while discouraging selling products offered by competitors

2   not on the "preferred list" or otherwise participating in the Steering Programs.  The Prospectuses

3   failed to disclose and misrepresented material and adverse facts as described *supra* in paragraphs

4   49-59.

5       103.    Plaintiff and the Class have sustained damages as a result of the Registrants'

6   violations.

7       104.    At the time they purchased the WM Funds' shares traceable to the defective

8   Prospectuses, Plaintiff and the Class were without knowledge of the facts concerning the false

9   and misleading statements or omissions alleged herein and could not reasonably have possessed

10   such knowledge.

11       105.    This claim was brought within the applicable statute of limitations.

## COUNT II

### Against The Registrants, The WM Distributor, And Principal Defendants For Violations Of Section 12(A) Of The Securities Act

13
14       106.    Plaintiff repeats and realleges each and every allegation contained above as if

15   fully set forth herein, except that for purposes of this claim, Plaintiff expressly excludes and

16   disclaims any allegation that could be construed as alleging fraud or intentional or reckless

17   misconduct, such as paragraphs 62-69.

18       107.    This claim is brought pursuant to Section 12(a) of the Securities Act (15 U.S.C.

19   § 77l(a)), against the Registrants, and the WM Distributor, for their failure to disclose the

20   Steering Programs that created insurmountable conflicts of interest and the Principal Defendants

21   as successors in interest to the Registrants and the WM Distributor.

22       108.    The Registrants and the WM Distributor,  were the "offeror" and/or "seller," and

23   the Principal Defendants are the successor in interest to the "offeror" and/or "seller," within the

24   meaning of the Securities Act, for one or more of the respective WM Fund shares sold to

25   Plaintiff and the Class members because they either:  (i) transferred title to shares of the WM

26



1   Funds to members of the Class; (ii) transferred title to shares of the WM Funds to the WM Funds

2   distributors that in turn sold shares of the WM Funds as agent for the Registrants; and/or

3   (iii) solicited the purchase of shares in the WM Funds by members of the Class, motivated in part

4   by payment of the monies pursuant to the Steering Programs to the detriment of Plaintiff and the

5   Class.

6      109. Between March 1, 2002, and December 31, 2006, the Registrants and the WM

7   Distributor failed to disclose the existence and amount of the Steering Programs payments

8   Brokers received in exchange for pushing clients into the WM Funds.  These incentives created

9   insurmountable conflicts of interest that were never disclosed to Plaintiff and the Class.

10      110. The WM Fund Companies also caused to be issued to Plaintiff and Class

11   members the Prospectuses that failed to disclose that fees, commissions, and other charges from

12   the purchase and maintenance of the WM Funds were used to pay Brokers for directing Plaintiff

13   and the Class into the WM Funds, and the existence of the conflicts of interest described herein

14   for Brokers including Broker's salespersons.

15      111. As set forth above, when they became effective, the WM Funds' Prospectuses

16   were misleading as they omitted or insufficiently disclosed the material facts alleged in, at least,

17   paragraphs 49-59 of this complaint.

18      112. Plaintiff and the other members of the Class have sustained damages as a result of

19   the Registrants, WM Distributor and Principal Defendants' violations.

20      113. At the time they purchased the WM Fund shares traceable to the defective

21   Prospectuses, Plaintiff and the Class were without knowledge of the facts concerning the

22   material misleading statements and omissions alleged herein and could not reasonably have

23   possessed such knowledge.

24      114. This claim was brought within the applicable statute of limitations.

25

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 34
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1

## COUNT III

2

### Against Wm Advisor, Papesh, Pavelich, Yancey And Blake
### For Violation Of Section 15 Of The Securities Act

3

115.     Plaintiff repeats and realleges each and every allegation contained above as if

4

fully set forth herein, except that for purposes of this claim, Plaintiff expressly excludes and

5

disclaims any allegation that could be construed as alleging fraud or intentional or reckless

6

misconduct, such as paragraphs 62-69.

7

116.     This claim is brought pursuant to Section 15 of the Securities Act (15 U.S.C.

8

§ 77o), against WM Advisor, Papesh, Pavelich, Yancey and Blake as control persons of the

9

Registrants, and the WM Distributor.  It is appropriate to treat these defendants as a group for

10

pleading purposes and presume that the false, misleading, and incomplete information

11

complained about herein are the collective actions of the WM Advisor, Papesh, Pavelich,

12

Yancey, Blake, Registrants, and WM Distributor.

13

117.     The Registrants violated Section 11 of the Securities Act and the Registrants and

14

the WM Distributor violated Section 12(a) of the Securities Act by their acts and omissions as

15

alleged in this complaint.  By virtue of their positions as controlling persons the WM Advisor,

16

Papesh, Pavelich, Yancey and Blake are liable pursuant to Section 15 of the Securities Act.

17

118.     The WM Advisor, Papesh, Pavelich, Yancey and Blake are and were "control

18

person(s)" of the Registrants, and the WM Distributor within the meaning of Section 15 of the

19

Securities Act, by virtue of their positions of operational control in the Registrants, and the WM

20

Distributor.  At the time the Registrants and the WM Distributor sold one or more shares of the

21

WM Funds to Plaintiff and the Class, by virtue of their positions of control and authority over the

22

Registrants and the WM Distributor, the WM Advisor, Papesh, Pavelich, Yancey and Blake

23

directly and indirectly, had the power, authority, influence and control, and exercised same, over

24

the decision making and actions of the Registrants and the WM Distributor to engage in the

25

wrongful conduct complained of herein.  The WM Advisor, Papesh, Pavelich, Yancey and Blake

26

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 35
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

119.    As a direct and proximate result of the WM Advisor, Papesh, Pavelich, Yancey and Blake's wrongful conduct, Plaintiff and the Class suffered damages in connection with their purchases and/or sales of interests in the WM Funds between March 1, 2002, and December 31, 2006.

## COUNT IV

**Violation Of Section 10(B) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against The Registrants And Principal Investors Fund**

120.    Plaintiff repeat and reallege each and every allegation contained above as if fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

121.    This claim is brought against the Registrants and the Principal Investors Fund pursuant to Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder.  The Registrants are sued as primary violators of Section 10(b) and Principal Investors Fund as successor in interest to the Registrants.

122.    During the Class Period, the Registrants carried out a plan, scheme and course of conduct that was intended to, and between March 1, 2002, and December 31, 2006, did, deceive the investing public, including Plaintiff and the Class as alleged herein, and caused Plaintiff and the Class to purchase WM Funds containing improper fees, commissions and other charges, and to otherwise suffer damages.  In furtherance of this unlawful scheme, plan and course of conduct, the Registrants took the actions set forth herein.

123.    The Registrants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue or misleading statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon purchasers of the WM Funds, including Plaintiff



1    and the Class, in an effort to enrich themselves through undisclosed manipulative tactics by

2    which they wrongly diminished the assets of the WM Funds in violation of Section 10(b) of the

3    Exchange Act and Rule 10b-5.  The Registrants are sued as primary participants of the wrongful

4    and illegal conduct and scheme charged herein, and Principal Investors Fund is sued as the

5    successor in interest to the Registrants.

6           124.    The Registrants, individually and in concert, directly and indirectly, by the use,

7    means or instrumentalities of interstate commerce and/or of the mails, engaged and participated

8    in a continuous course of conduct to conceal the adverse material information about the improper

9    Steering Programs and the inherent conflicts of interest alleged herein.

10          125.    The Registrants employed devices and artifices to defraud and engaged in a

11   course of conduct and scheme as alleged herein to unlawfully manipulate and profit from

12   increased sales and/or commissions, fees or other charges paid to them as a result of its

13   undisclosed Steering Programs described above and thereby engaged in transactions, practices

14   and a course of conduct that operated as a fraud and deceit upon Plaintiff and the Class.

15          126.    The Registrants had actual knowledge of the misrepresentations and omissions of

16   material facts set forth above, or acted with reckless disregard for the truth in that they failed to

17   ascertain and to disclose such facts, even though the facts were available to them.  The

18   Registrants' materially misleading statements and omissions were done knowingly or recklessly

19   and for the purpose and effect of concealing the truth.

20          127.    As a result of disseminating the materially false and misleading information and

21   failure to disclose material facts, as set forth *supra* in paragraphs 49-59, the WM Funds' NAVs

22   were diminished between March 1, 2002, and December 31, 2006.  In ignorance of the fact that

23   the WM Funds' NAVs were diminished, and relying directly or indirectly on the false and

24   misleading statements made by the Registrants, or upon the Registrants' purported integrity, the

25   WM Advisor, and WM Distributor and/or on the public absence of material adverse information

26   that was known to or recklessly disregarded by the Registrants but not disclosed in public state-

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 37
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

ments by the Registrants between March 1, 2002, and December 31, 2006, Plaintiff and the Class paid fees, commissions, loads, and other charges to the Registrants, the WM Advisor, and the WM Distributor during the Class Period for the Steering Programs and were damaged thereby.

128.    By virtue of the foregoing, the Registrants and Principal Investors Fund have violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder.

129.    As a direct and proximate result of the Registrants' and Principal Investors Fund's wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases and/or sales of WM Funds shares between March 1, 2002, and December 31, 2006.

130.    This claim was brought within the applicable statute of limitations.

## COUNT V

### Against The WM Advisor, WM Distributor, Papesh, Pavelich, Yancey, And Blake For Violations Of Section 20(A) Of The Exchange Act

131.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

132.    This claim is brought pursuant to Section 20(a) of the Exchange Act (15 U.S.C. § 78t), against the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake as control persons of the Registrants.  It is appropriate to treat these defendants as a group for pleading purposes and presume that the false, misleading, and incomplete information complained about herein are the collective actions of the Registrants, the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake.

133.    The Registrants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) by their acts, material false and misleading statements and omissions as alleged in this complaint.  By virtue of their positions as controlling persons,



the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake are liable pursuant to Section 20(a) of the Exchange Act.

134.    The WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake were "control persons" of the Registrants within the meaning of Section 20 of the Exchange Act, by virtue of their positions of operational control of the Registrants.  At the time that the Registrants issued the Prospectuses, by virtue of their positions of control and authority over the Registrants, the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake directly and indirectly had the power, authority, influence and control, and exercised same, over the Registrants' decision making and actions to engage in the wrongful conduct complained of herein.  The WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake had the ability to prevent the issuance of the statements alleged to be false and misleading registration statements or could have caused such statements to be corrected.

135.    In particular the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake had direct supervisory involvement in the operations of the Registrants and are presumed to have had the power to control or influence the particular acts, misleading statements, and omissions giving rise to violations of the Exchange Act as alleged herein, and to have exercised same.

136.    As a direct and proximate result of the WM Advisor, WM Distributor, Papesh, Pavelich, Yancey and Blake's wrongful conduct, Plaintiff and the Class suffered damages in connection with their purchases and/or sales of the WM Funds during the Class Period.

**JURY TRIAL DEMAND**

137.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

**PRAYER**

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 39
Case No. C-08-1251 MJP

010074-11  276810 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1      1.      Judgment declaring that this action is properly maintained as a class action and

2  certifying Plaintiff as Class representatives under Rule 23 of the Federal Rules of Civil

3  Procedure;

4      2.      Awarding compensatory damages in favor of Plaintiff and the Class against all

5  Defendants, jointly and severally, for all damages sustained as a result of Defendants'

6  wrongdoing, in an amount to be proven at trial, including interest thereon;

7      3.      Awarding Plaintiff and the Class rescission of their contracts with the Defendants,

8  including recovery of all fees that would otherwise apply and recovery of all fees paid to the

9  defendants pursuant to such agreements;

10     4.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

11  this action, including counsel fees and expert fees; and

12     5.      Such other and further relief as this Court may deem just and proper.

13  DATED:  December 12, 2008              HAGENS BERMAN SOBOL SHAPIRO LLP

14

15                                          By:  ____/s/ Steve W. Berman_____
                                                 Steve W. Berman, WSBA #12536
16                                          1301 Fifth Avenue, Suite 2900
                                            Seattle, Washington 98101
17                                          Telephone:  (206) 623-7292
                                            Facsimile:  (206) 624-0594
18                                          Email:  steve@hbsslaw.com

19                                          *Liaison Counsel for Lead Plaintiff*

20                                          FINKELSTEIN & KRINSK LLP
21                                          JEFFREY R. KRINSK
                                            MARK L. KNUTSON
22                                          WILLIAM R. RESTIS
                                            501 West Broadway, Suite 1250
23                                          San Diego, CA  92101-3593
                                            Telephone:  (619) 238-1333
24                                          Facsimile:  (619) 238-5425
25                                          Email:  jrk@classactionlaw.com

26                                          *Lead Counsel for Lead Plaintiff*

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 40
Case No. C-08-1251 MJP



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 Fifth Avenue, Suite 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

010074-11  276810 V1

## <u>CERTIFICATE OF SERVICE</u>

On December 12, 2008, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Arthur Clary Claflin, aclaflin@hallzan.com

Andrew R. Escobar, aescobar@omm.com

Spencer Hall, shall@hallzan.com

Phillip Kaplan,  pkaplan@omm.com

Mark L. Knutson, mlk@classactionlaw.com

Jeffrey R. Krinsk, jrk@classactionlaw.com

Randall M. Lending,  rlending@vedderprice.com

William R. Restis, wrr@classactionlaw.com

Michael J. Waters, mwaters@vedderprice.com


DATED:  December 12, 2008.

HAGENS BERMAN SOBOL SHAPIRO LLP


By:  s/ Steve W. Berman
    Steve W. Berman, WSBA #12536
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS  - 41
Case No. C-08-1251 MJP

010074-11  276810 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594